UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
JUAN FRANCISCO GONZALES NIEVES, AS :
TRUSTEE OF THE GONZALES CORONADO
TRUST, Individually and on Behalf of All Others :
Similarly Situated,
                                                    :
            Plaintiff,                        Case No. 16 Civ. 3591 (GHW)
     v.                                          :

PERFORMANCE SPORTS GROUP LTD.,
KEVIN DAVIS, MARK VENDETTI, AND      :
AMIR ROSENTHAL,
                                                    :
            Defendants.
------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLUMBERS AND
PIPEFITTERS NATIONAL PENSION FUND FOR APPOINTMENT AS
<u>LEAD PLAINTIFF AND APPOINTMENT OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

                               **Page**

I.   INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND ............................................................................................................... 2

III.  ARGUMENT ..................................................................................................................... 4
    A.   Movant Satisfies the Procedural Requirements for Appointment as Lead Plaintiff .................................................................................................. 4
    B.   Movant Satisfies the Legal Prerequisites for Appointment as Lead Plaintiff .................................................................................................................. 5
       1.   Movant Is Presumptively the Most Adequate Plaintiff ......................... 5
       2.   Movant Satisfies the Requirements of Rule 23 ....................................... 7
    C.   The Court Should Appoint Cohen Milstein as Lead Counsel ........................... 9

IV.  CONCLUSION ................................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albert Fadem Trust v. Citigroup Inc.*,
 239 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................................................ 7, 9

*Chisholm v. TranSouth Fin. Corp.*,
 184 F.R.D. 556 (E.D. Va. 1999) ............................................................................................ 7

*In re Crayfish Co. Sec. Litig.*,
 No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 4,
 2002) ..................................................................................................................................... 7

*In re Drexel Burnham Lambert Group, Inc.*,
 960 F.2d 285 (2d Cir. 1992) .................................................................................................. 7

*In re Elan Corp. Sec. Litig.*,
 No. 02 Civ. 865 (WK)(FM), 2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3,
 2002) ..................................................................................................................................... 7

*Fields v. Biomatrix, Inc.*,
 198 F.R.D. 451 (D.N.J. 2000) ............................................................................................... 7

*In re Olsten Corp. Sec. Litig.*,
 3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................. 7, 8

*Weltz v. Lee*,
 199 F.R.D. 129 (S.D.N.Y. 2001) ...................................................................................... 7, 8

**STATUTES**

15 U.S.C. § 78u-4 ................................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ............................................................................................................ 6, 7, 8

H.R. Conf. Rep. No. 104-369 (1995) ....................................................................................... 8

## I. INTRODUCTION

Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), at 15 U.S.C. § 78u-4, and for the reasons set forth below, Plumbers & Pipefitters National Pension Fund ("Plumbers & Pipefitters," the "Fund," or "Movant") respectfully moves this Court for an Order appointing Plumbers & Pipefitters as Lead Plaintiff on behalf of itself and all others similarly situated who purchased Performance Sports Group Ltd. ("PSG" or the "Company") securities between January 15, 2015 and March 14, 2016, inclusive (the "Class Period"). Plumbers & Pipefitters also seeks appointment of the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel.

The above-captioned action (the "Action") has been filed against PSG; its former Chief Executive Officer ("CEO"), Kevin Davis; its current Chief Financial Officer ("CFO"), Mark Vendetti; and its CFO until December 2015, Amir Rosenthal. The Action is predicated on Defendants' misrepresentation of the Company's financial condition.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). As such, the Court is required to determine which movant or group of movants has the "largest financial interest" in the relief sought by the Class in this litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Plumbers & Pipefitters' losses[1] amount to approximately $928,077.31 during the Class Period as a result of Defendants' conduct. Plumbers & Pipefitters is unaware at this time of any other movant with a greater loss. Thus,

---

[1] Movant's losses, as detailed herein, are not the same as legally compensable damages, measurement of which is often a complex legal question that generally cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the executed certifications required under Section 21D of the Exchange Act, and based upon reference to information concerning the market for PSG securities. *See* Decl. of S. Douglas Bunch in Supp. of Mot. of Plumbers & Pipefitters Nat'l Pension Fund ("Bunch Decl."), at Exs. B and C.

1

Plumbers & Pipefitters is presumptively the "most adequate plaintiff" and should be appointed as lead plaintiff because it has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Movant is represented in this action by Cohen Milstein, which is seeking appointment as lead counsel and is eminently qualified to prosecute securities class actions such as this one.

## II. BACKGROUND

PSG, together with its subsidiaries, designs, manufactures, and distributes sports equipment, apparel, and accessories. Its primary sports are hockey and baseball/softball, but the Company also focuses on lacrosse and soccer. PSG sells products in the U.S., Canada, and Europe under the brand names Bauer, Easton, Mission, Maverik, Cascade, Inaria, and Combat. The Company is expanding into Eastern Europe, Russia, and Japan.

On August 27, 2015, the Company released its Q4 2015 financial results. The Company reported fourth quarter revenue up 31 percent to $147.6 million. PSG attributed growth in North America to its acquisition of Easton Baseball, while revenue outside North America consisted almost entirely of hockey sales. During an earnings call to discuss results, the Company highlighted (1) the opening of its first Bauer Hockey Own the Moment retail store, (2) the integration of Easton Baseball into PSG, (3) the impact of changes in foreign currency rates on its business, and (4) new bat standards for youth baseball taking effect in 2018.

At the same time, PSG issued financial guidance for fiscal year 2016, projecting, among other things, income to fall within a range of $0.70 to $0.73 per share.

On October 14, 2015, the Company released its Q1 2016 financial results. The Company reported that first quarter revenue decreased 11 percent to $175 million compared to the same quarter a year prior. During its earnings call on October 15, PSG highlighted: (1) the effect of product launch timing and foreign currency exchange rates on first quarter revenues, (2) growth

2

in sales of Easton batting helmets and Easton and Combat bats, (3) growth in its lacrosse business and soccer apparel, (4) new bat standards for youth baseball, and (5) new products and technology. PSG also responded to analysts' questions concerning challenges to PSG's market share from the consolidation of the U.S. hockey retail market.

On January 14, 2016, the Company released its Q2 2016 financial results. The Company reported that second quarter revenue decreased 11 percent to $153 million compared to the same quarter a year prior. PSG attributed the revenue decline to multiple factors, including retailer consolidation in the U.S. In addition, the Company revised its fiscal 2016 guidance due to the weakening Canadian dollar. PSG now projected income to fall within a range of $0.66 to $0.69 per share.

During its earnings call held the same day, PSG highlighted (1) the opening of its second Own the Moment Store, (2) baseball sales growth from Easton's non-bat business, (3) impacts from a weak Canadian dollar, (4) the acquisition of Easton Hockey, (5) expected impact on sales in 2017 due to new bat standards for youth baseball, (6) rumors about bids for the Company, and (7) the Board's support for the Company's strategic direction including the Own the Moment stores. The Company also addressed consolidation in the U.S. hockey retail market, noting that although consolidation was impacting hockey revenue, PSG expected an uptick in sales once the consolidation was completed.

Two months later, on March 8, 2016 before the market opened, PSG drastically lowered its fiscal year 2016 guidance by approximately $0.55 to $0.12 to $0.14 per share from prior guidance of $0.66 to $0.69 per share. According to PSG:

> "The second half of fiscal 2016 has been impacted by adverse market conditions and related customer credit issues," said Kevin Davis, CEO, Performance Sports Group. "The baseball/softball market is experiencing an unexpected significant downturn in retail sales, including in our important bat category. This weakening of consumer demand, coupled with the chapter 11 filing by one of the largest U.S.

3

national sporting goods retailers, is reducing our sales for baseball and softball products. Additionally, the consolidation of hockey retail in the U.S. has reduced our customers' demand for products more than we previously anticipated as they continue to reduce their inventory levels."

Specifically, PSG reduced its guidance based on three factors:

• a write down of the receivable balance from a U.S. national sporting goods retailer (The Sports Authority Inc.) that filed under chapter 11 and related anticipated loss of sales ($0.09 per share);

• an anticipated reduction in sales, particularly due to weakness in the baseball/softball market ($0.31 per share); and

• additional bad debt reserves primarily for certain U.S. hockey customers and the related anticipated loss of sales from such customers ($0.19 per share).

This news caused PSG's stock price to plummet from $8.66 on March 7, 2016 to $2.91 on March 8, 2016.

Subsequently, on March 14, 2016, *The New York Post* published an article entitled, "Bauer's parent company questioned about misdating earnings." The article raised issues about PSG's manipulation of timing of sales. On this news, shares of PSG fell $0.41 per share to close at $3.55 per share on March 15, 2016.

### III. ARGUMENT

As discussed below, Plumbers & Pipefitters satisfies each of the requirements of the PSLRA and is therefore qualified for appointment as Lead Plaintiff. Additionally, Plumbers & Pipefitters seeks appointment of Cohen Milstein as Lead Counsel for the Class.

### A. Movant Satisfies the Procedural Requirements for Appointment as Lead Plaintiff

The Exchange Act, 15 U.S.C. § 78u-4, establishes a procedure for the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of

filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on March 18, 2016 (*see* Bunch Decl., Ex. A).

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on May 17, 2016. Plumbers & Pipefitters has moved within the statutory 60-day time period. Its motion contains the required certification setting forth, *inter alia*, its transactions in PSG securities during the Class Period, and indicates that Plumbers & Pipefitters has reviewed a complaint filed in the case and is willing to serve as a representative party on behalf of the Class. *See* Bunch Decl., Ex. B. In addition, Plumbers & Pipefitters has selected and retained competent and experienced counsel, as set forth in counsel's resume. *See* Cohen Milstein resume at Bunch Decl., Ex. D. As demonstrated in its resume, Cohen Milstein has developed an excellent reputation for successfully prosecuting federal securities law claims, including in this District.

### B. Movant Satisfies the Legal Prerequisites for Appointment as Lead Plaintiff

#### 1. Movant Is Presumptively the Most Adequate Plaintiff

The PSLRA sets forth procedures for the appointment of a lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(1). The PSLRA provides that this Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the

interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating this motion, the Court must be guided by a presumption that the most adequate plaintiff is the person or group of persons who (a) filed the complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23 and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Plumbers & Pipefitters is qualified for appointment as lead plaintiff. During the Class Period, Plumbers & Pipefitters suffered losses of approximately $928,077.31[2] from its purchases of PSG securities. The Fund suffered these losses when it was revealed that the Company's financial condition was not as portrayed. It is not aware of any other movant with a larger financial interest in the relief sought by the Class.

Because Plumbers & Pipefitters believes it possesses the most significant interest in the outcome of this litigation, it is presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Further, Plumbers & Pipefitters is both qualified to represent the Class and willing to serve as a representative party. Finally, Plumbers & Pipefitters has selected counsel that is highly experienced in prosecuting securities class actions such as this one. Accordingly, the Fund satisfies the requirements for appointment as Lead Plaintiff under the PSLRA and the instant motion for appointment should be granted.

---

[2] A copy of Plumbers & Pipefitters' certification is attached as Exhibit B to the Bunch Decl. and a copy of its loss calculation is attached as Exhibit C.

## 2. Movant Satisfies the Requirements of Rule 23

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. June 4, 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) and *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim will meet the typicality requirement if 'each class member's claim arises from the same course of conduct, and each class member makes similar legal arguments to prove the defendants' liability.'" *Olsten*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *Id.* As one court has noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims constituting each individual action is not required." *Chisholm v. TranSouth*

7

*Fin. Corp.,* 184 F.R.D. 556, 563-64 (E.D. Va. 1999) (internal citation omitted). The typicality requirement is plainly satisfied in the instant case, where Plumbers & Pipefitters seeks the same relief and advances the same legal theories as class members.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz*, 199 F.R.D. at 133 (citing *Olsten*, 3 F. Supp. 2d at 296).

Plumbers & Pipefitters is an adequate representative for the class. The Fund purchased PSG securities during the Class Period and, like other putative class members, suffered a loss in the form of diminution of the value of its securities upon disclosure of the fraud. Additionally, Plumbers & Pipefitters is a pension fund – precisely the type of institutional investor Congress envisioned serving as lead plaintiff when it enacted the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995) ("The Conference Committee believes that increasing the role of institutional investors … will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Indeed, Plumbers & Pipefitters is a capable, proven fiduciary. The Fund is a Taft-Hartley, multiemployer pension fund with assets in excess of $5.9 billion. Finally, Plumbers & Pipefitters has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### C. The Court Should Appoint Cohen Milstein as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb the lead plaintiff's selection of counsel unless such interference is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Movant has selected Cohen Milstein to serve as Lead Counsel, and appointing Cohen Milstein as Lead Counsel would be prudent to protect the interests of the class.

As detailed in its firm resume, Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.[3] Thus, the Court may be confident that the class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA and Exchange Act. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Albert Fadem Trust*, 239 F. Supp. 2d at 348 (approving as lead counsel law firm with "substantial experience and success in prosecuting securities fraud actions").

### IV. CONCLUSION

Based on the foregoing, Movant respectfully requests that the Court: (i) appoint Plumbers & Pipefitters National Pension Fund as Lead Plaintiff; (ii) appoint Cohen Milstein as Lead Counsel; and (iii) grant such other relief as the Court may deem to be just and proper.

---

[3] A copy of Cohen Milstein's firm resume is attached to the Bunch Decl. as Ex. D.

| Dated: May 17, 2016 | Respectfully submitted, |
|---|---|
| | COHEN MILSTEIN SELLERS & TOLL PLLC |
| | /s/   S. Douglas Bunch |
| | Carol V. Gilden
190 S. LaSalle St.
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369 |
| | - and - |
| | Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
Times Wang
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699 |
| | - and - |
| | Michael Eisenkraft
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745 |
| | ***Attorneys for Movant Plumbers & Pipefitters National Pension Fund and Proposed Lead Counsel for the Class*** |
| | James R. O'Connell
Mark W. Kunst
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
Telephone: (202) 362-0041
Facsimile: (202) 362-2640 |
| | ***Additional Attorneys for the Plumbers & Pipefitters National Pension Fund*** |