# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PLUMBERS & PIPEFITTERS NATIONAL
PENSION FUND and JUAN FRANCISCO
NIEVES, as Trustee of the Gonzalez
Coronado Trust, Individually and on Behalf of
All Others Similarly Situated,

                     Plaintiffs,

    v.

KEVIN DAVIS and AMIR ROSENTHAL,

                   Defendants.

Case No.: 1:16-CV-3591-GHW

**LEAD PLAINTIFF'S MEMORANDUM
OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO
EXCLUDE CHAD COFFMAN'S
OPINION REGARDING DAMAGES**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARD.................................................................................................... 2

ARGUMENT ............................................................................................................... 4

I.      Mr. Coffman Is Well-Qualified to Offer an Opinion on Damages. ................................... 4

      A.     Mr. Coffman's Record as an Expert Witness and His Background Support
the Admissibility of His Opinion. .......................................................... 4

      B.     Defendants' Attacks on Mr. Coffman's Credibility Miss the Mark. ..................... 7

II.     Mr. Coffman's Methodology for Calculating Out-of-Pocket Damages Is Reliable........ 10

      A.     Mr. Coffman's Damages Method Is Widely Accepted as Satisfying the
Requirements of *Comcast* and Applying on a Class-wide Basis. ....................... 11

      B.     Mr. Coffman Adequately Identifies a Reliable Methodology for
Measuring Class-wide Damages Consistent with Plaintiff's Theory of
Liability............................................................................................ 15

III.    Mr. Coffman's Methodology for Calculating Out-of-Pocket Damages Is Relevant
to This Case....................................................................................................... 17

      A.     Mr. Coffman's Opinion Aligns with Plaintiff's Theory of Liability. .................. 18

      B.     The Artificial Inflation Valuation Techniques Discussed by Mr. Coffman
Are Relevant to This Straightforward Section 10(b) Fraud Case. ...................... 21

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)................................................................................14

*In re Allergan PLC Sec. Litig.*,
   No. 18-CIV-12089 (CM) (GWG), 2020 WL 5796763 (S.D.N.Y. Sept. 29,
   2020) ................................................................................................9

*In re Aluminum Warehousing Antitrust Litig.*,
   336 F.R.D. 5 (S.D.N.Y. 2020) ...................................................................3

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)..................................................................2, 3

*Baker v. SeaWorld Ent., Inc.*,
   No. 14CV2129-MMA (AGS), 2017 WL 5885542 (S.D. Cal. Nov. 29, 2017).......................20

*In re Barrick Gold Sec. Litig.*,
   314 F.R.D. 91 (S.D.N.Y. 2016) .......................................................1, 4, 14, 20

*In re BP P.L.C. Sec. Litig.*,
   No. 10-MD-2185, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013).............................18

*In re BP P.L.C. Sec. Litig.*,
   No. 10-MD-2185, 2014 WL 2112823 (S.D. Tex. May 20, 2014)...........................6, 19

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ..................................................... *passim*

*In re Celestica Inc. Sec. Litig.*,
   No. 07-cv-312, 2014 WL 4160216 (S.D.N.Y. Aug. 20, 2014).................................5

*In re CenturyLink Sales Practices & Sec. Litig.*,
   337 F.R.D. 193 (D. Minn. 2020)................................................................23

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.,
   HQ*,
   322 F. Supp. 3d 676 (D. Md. 2018) ...........................................................20

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
   No. 17-CV-00554-YGR, 2018 WL 4931543 (N.D. Cal. Oct. 11, 2018).......................7, 14

ii

*Comcast Corp. v Behrend*,
    569 U.S. 27 (2013) ................................................................................................... *passim*

*In re Connetics Sec. Litig.*,
    257 F.R.D. 572 (N.D. Cal. 2009) ............................................................................. 5

*Cosby v. KPMG, LLP*,
    No. 3:16-cv-121-TAV-DCP, 2020 WL 3548653 (E.D. Tenn. June 29, 2020) ................... 5, 14

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ................................................................................ 1, 3, 4, 15

*Deora v. Nanthealth, Inc.*,
    No. CV 17-01825 TJH, 2019 WL 7865185 (C.D. Cal. July 30, 2019) ..................... 4

*Di Donato v. Insys Therapeutics, Inc.*,
    333 F.R.D. 427 (D. Ariz. 2019) ............................................................................. 5

*Dougherty v. Esperion Therapeutics, Inc.*,
    No. 16-10089, 2020 WL 6793326 (E.D. Mich. Nov. 19, 2020) ......................... 5, 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    309 F.R.D. 251 (N.D. Tex. 2015) ......................................................................... 4

*In re Glob. Brokerage, Inc. f/k/a FXCM Inc. Sec. Litig.*,
    No. 17-CV-916 (RA) (BCM), 2021 WL 1105367 (S.D.N.Y. Mar. 23, 2021) ...................... 24

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    Civ. No. 10-3461, 2015 WL 5613150 (S.D.N.Y. Sept. 24, 2015) ......................... 24

*Hatamian v. Advanced Micro Devices, Inc.*,
    No. 14-CV-00226 YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ............... 20

*Howard v. Liquidity Servs. Inc.*,
    322 F.R.D. 103 (D.D.C. 2017) ....................................................................... 18, 20

*In re JPMorgan Chase & Co. Sec. Litig.*,
    No. 12-CV-03852 (GBD), 2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ......................... 24

*Keippel v. Health Ins. Innovations, Inc.*,
    No. 8:19-cv-00421-WFJ-CPT (M.D. Fla. Aug. 28, 2020) ....................................... 4

*Levy v. Gutierrez*,
    448 F. Supp. 3d 46 (D.N.H. 2019) ................................................................... 5, 20

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) .............................................................................. 19

*McIntire v. China MediaExpress Holdings, Inc.*,
     38 F. Supp. 3d 415 (S.D.N.Y. 2014)..........................................................................7

*Milbeck v. TrueCar, Inc.*,
     No. 18-cv-2612, 2019 WL 2353010 (C.D. Cal. May 24, 2019) ................................10, 16, 18

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
     278 F.R.D. 454 (D. Minn. 2011)..............................................................................5

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*
     32 F.R.D. 370 (N.D. Ga. 2019).............................................................................17

*Nimely v. City of New York*,
     414 F.3d 381 (2d Cir. 2005)............................................................................3, 18

*In re Novo Nordisk Sec. Litig.*,
     No. 3:17-CV-00209 (BRM) (LHG), 2020 WL 502176 (D.N.J. Jan. 31, 2020) ....................17

*Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
     No. 4:08-cv-0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)................................17

*In re Perrigo Co. PLC Sec. Litig.*,
     No. 19-cv-70 (DLC), 2020 WL 5701823 (S.D.N.Y. Sept. 24, 2020).............................4

*Pirnik v. Fiat Chrysler Auto., N.V.*,
     327 F.R.D. 38 (S.D.N.Y. 2018) ...........................................................................16

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
     No. C 19-04744 WHA, 2021 WL 229310 (N.D. Cal. Jan. 21, 2021)............................14

*Pope v. Navient Corp.*,
     No. 17-8373, 2021 WL 926611 (D.N.J. Mar. 11, 2021) .........................................4

*Public Emps.' Ret. Sys. of Miss. v. TreeHouse Foods Inc.*,
     No. 16-cv-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020) ...........................6, 10, 17

*Roofer's Pension Fund v. Papa*,
     333 F.R.D. 66 (D.N.J. 2019)...............................................................................20

*Rougier v. Applied Optoelectronics, Inc.*,
     No. 17-CV-02399, 2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ............................14

*In re SanDisk LLC Sec. Litig.*,
     No. 15-cv-01455-VC, 2018 WL 4293336 (N.D. Cal. Sept. 4, 2018).........................10

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
     No. 08-cv-397, 2012 WL 4482032 (D.N.J. Sept. 25, 2012)....................................5

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    335 F.R.D. 276, 288 (N.D. Cal. 2020) ...................................................................................8

*Sec. & Exch. Comm'n v. Dean*,
    No. 17 Civ. 139 (GHW), 2019 WL 8683369 (S.D.N.Y. June 7, 2019)...................................2

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 16-CV-6728 (CM) (RWL), 2019 WL 3001084 (S.D.N.Y. July 10, 2019).....................14

*In re Term Commodities Cotton Futures Litig.*,
    No. 12-CV-5126 (ALC), 2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020) ................................3

*In re Teva Sec. Litig.*,
    No. 3:17-cv-558 (SRU), 2021 WL 872156 (D. Conn. Mar. 9, 2021)............................1, 3, 13

*In re VHS of Mich., Inc.*,
    601 F. App'x. 342 (6th Cir. 2015) ......................................................................................13

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    No. 15-cv-1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017) .................................................4

*Ward v. Apple Inc.*,
    784 F. App'x 539 (9th Cir. 2019) .......................................................................................17

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
    No. 15-CV-3187, 2018 WL 1535156 (N.D. Ill. Mar. 29, 2018).......................................16, 20

*Weiner v. Snapple Beverage Corp.*,
    No. 07 CIV. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ..............................17

*Weiner v. Tivity Health, Inc.*,
    334 F.R.D. 123 (M.D. Tenn. 2020) ..........................................................................5, 14, 20

*Weiner v. Tivity Health, Inc.*,
    No. 3:17-cv-01469, 2021 WL 1099507 (M.D. Tenn. Mar. 23, 2021) .....................................5

*In re Willis Towers Watson PLC Proxy Litig.*,
    No. 117-CV-1338 (AJT) (JFA), 2020 WL 5361582 (E.D. Va. Sept. 4, 2020)......................24

*Wilson v. LSB Indus., Inc.*,
    No. 15-CIV-7614 (RAG) (WG), 2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .............16, 18

## OTHER AUTHORITIES

Federal Rule of Evidence 702................................................................................... *passim*

Rule 23 ................................................................................................................. *passim*

## INTRODUCTION

Lead Plaintiff Plumbers & Pipefitters National Pension Fund's ("Plaintiff") expert on market efficiency and damages, Chad Coffman, CFA, is well-qualified as an expert. He has over 25 years of experience conducting market efficiency[1] and damages analyses in securities fraud class actions just like this one, and numerous courts – including ones in this Circuit – have regularly accepted his testimony. *See, e.g.*, *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91 (S.D.N.Y. 2016). Courts have nearly universally held, moreover, that the out-of-pocket damages methodology he proposes in this case is reliable and relevant. Indeed, it is the same one employed by experts and credited by courts to certify securities class actions throughout the country.

Despite this long and credible record, Defendants assert that certain of Mr. Coffman's opinions are unsupported and so flawed that this Court should take the drastic measure of excluding his testimony on damages under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In fact, "[d]efendants' *Daubert* motion is essentially duplicative of their opposition to class certification," *In re Teva Sec. Litig.*, No. 3:17-cv-558 (SRU), 2021 WL 872156, at *36 (D. Conn. Mar. 9, 2021),[2] and is undoubtedly an effort to have the last word on class certification. As in their Memorandum of Law in Opposition to Class Certification ("Opp.") (Dkt. No. 215), Defendants' arguments here are meritless and conflict with well-established law, for the reasons set forth herein and more fully in Plaintiffs' Reply in Further Support of Motion for Class Certification ("Reply") (Dkt. No. 228).

The purpose of evaluating an expert's testimony is to ensure that it is based on "scientific,

---

[1] Defendants Kevin Davis and Amir Rosenthal ("Defendants") do not challenge Mr. Coffman's opinion that Performance Sports Group Ltd.'s ("PSG") common stock traded in an efficient market. *See* Memorandum of Law in Support of Motion to Exclude Chad Coffman's Opinion Regarding Damages ("Mot."), Dkt. No. 218, at 1 n.2.

[2] Citations, alterations, and internal quotations are omitted from quoted authority unless otherwise indicated.

technical, or other specialized knowledge" and would be helpful to the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. But criticisms that focus on the substance of the expert's conclusions are not the proper basis for moving to exclude expert testimony. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). "[E]vidence should only be excluded 'if the flaw is large enough that the expert lacks good grounds for his or her conclusions.'" *Sec. & Exch. Comm'n v. Dean*, No. 17 Civ. 139 (GHW), 2019 WL 8683369, at *15 (S.D.N.Y. June 7, 2019). Here, if anyone lacks a solid basis for their conclusions, it is Defendants, who premise their arguments on the notion that the well-established method used by Mr. Coffman is not a "methodology" and on a mischaracterization of Plaintiff's theory of liability. *See* Reply at 10 n.12, 14-15; Rebuttal Rep. ¶¶ 21, 30-43.[3]

Defendants have not presented any legitimate fact or argument demonstrating that Mr. Coffman's opinions do not meet every requirement for admissibility under Federal Rule of Evidence 702 or the caselaw interpreting its application. To the contrary, Mr. Coffman's well-established and widely accepted damages methodology, which applies class-wide and raises no significant issues subject to individualized proof, provides a reliable foundation on which his testimony is based and aligns with the facts of this case. It is also capable of addressing any supposed concerns raised by Defendants. *See* Rebuttal Rep. ¶¶ 15-17, 29-65. Accordingly, Defendants' motion to exclude should be denied.

## LEGAL STANDARD

Pursuant to Federal Rule of Evidence 702, a proposed expert's opinion is admissible so

---

[3] This brief refers to several additional materials filed in this case, including the Third Amended Complaint ("TAC") (Dkt. No. 148); this Court's Memorandum Opinion and Order denying and granting Defendants' motion to dismiss ("Order") (Dkt. No. 159); the Expert Report of Chad Coffman, CFA ("Rep.") (Dkt. No. 204-1, Ex. A); the Deposition Transcript of Chad Coffman ("Coffman Tr.") (Dkt. No. 216-2, Ex. B); the Expert Report of Dr. Douglas Skinner ("Skinner Rep.") (Dkt. No. 216-1, Ex. A); the Expert Rebuttal Report of Chad Coffman, CFA ("Rebuttal Rep.") (Dkt. No. 229-1, Ex. A); and the Deposition Transcript of Dr. Douglas Skinner ("Skinner Tr.") (Dkt. No. 229-2, Ex. B).

long as it satisfies three requirements. "[A] court must conclude that (1) a witness is 'qualified as an expert'; (2) the witness's testimony is based on reliable data and methodology; and (3) the testimony will 'assist the trier of fact.'" *In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126 (ALC), 2020 WL 5849142, at *11-12 (S.D.N.Y. Sept. 30, 2020) (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)). If an expert is sufficiently qualified, "a district court determines 'whether the reasoning and methodology underlying the testimony is scientifically valid' and 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *In re Teva*, 2021 WL 872156, at *10 (quoting *Daubert*, 509 U.S. at 592-93). "[T]he scope of the *Daubert* analysis is cabined by its purpose at this [the class certification] stage: the inquiry is limited to whether or not the expert reports are admissible to establish the requirements of Rule 23." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020).

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions . . . ." *Nimely*, 414 F.3d at 395; *see also In re Term Commodities*, 2020 WL 5849142, at *11 ("There is a presumption of admissibility of expert evidence and the rejection of expert testimony is the exception rather than the rule."). "In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos*, 303 F.3d at 266. Arguments by the party seeking to exclude that "reduce to the contention that their experts did better and more persuasive work" are "not grounds for exclusion." *In re Aluminum Warehousing*, 336 F.R.D. at 34 (holding that opinion was admissible for the purpose of class certification motion).

The proponent of the expert must establish by a preponderance of the evidence that these requirements are satisfied. *Daubert*, 509 U.S. at 592 n.10. Plaintiff has amply done so here,

3

demonstrating that Mr. Coffman has proffered a well-established method of measuring damages that is adequate to support his expert opinion that damages in this case can be calculated on a class-wide basis in accordance with Plaintiff's theory of liability.

## ARGUMENT

## I.    MR. COFFMAN IS WELL-QUALIFIED TO OFFER AN OPINION ON DAMAGES.

### A.    Mr. Coffman's Record as an Expert Witness and His Background Support the Admissibility of His Opinion.

A proposed expert witness's qualifications must be based on his or her knowledge, skill, experience, training, or education, which in turn should accord with the subject matter of the proffered testimony. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 75 (S.D.N.Y. 2015). Defendants have not claimed, nor could they, that Mr. Coffman does not possess the requisite qualifications to be deemed an expert in this matter for the purpose of opining on a damages methodology, as he readily meets the requirements of Rule 702.

*First*, Mr. Coffman's qualifications, opinions, and methodology for calculating damages have been accepted by courts – including ones in this Circuit – in dozens of securities fraud class actions alleging Plaintiff's same theory of liability: specifically, where the defendants were alleged to be liable under Section 10(b) of the Securities Exchange Act for making false and misleading statements and omissions that artificially inflated and/or maintained a company's stock price across the market.[4] *See, e.g.*, *In re Barrick Gold*, 314 F.R.D. at 105-06 ("[A]s required by *Comcast*,

---

[4] Mr. Coffman's out-of-pocket damages method has also been accepted in numerous cases where it has gone unchallenged. *See Pope v. Navient Corp.*, No. 17-8373 (RBK/AMD), 2021 WL 926611 (D.N.J. Mar. 11, 2021); *In re Perrigo Co. PLC Sec. Litig.*, No. 19-cv-70 (DLC), 2020 WL 5701823 (S.D.N.Y. Sept. 24, 2020); *Keippel v. Health Ins. Innovations, Inc.*, No. 8:19-cv-00421-WFJ-CPT (M.D. Fla. Aug. 28, 2020); *Deora v. Nanthealth, Inc.*, No. CV 17-01825 TJH (MRWx), 2019 WL 7865185 (C.D. Cal. July 30, 2019); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15-cv-1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017); *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251 (N.D. Tex. 2015); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-cv-397, 2012 WL 4482032 (D.N.J. Sept. 25, 2012) (decided before *Comcast*); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 278 F.R.D. 454

plaintiffs' actual theory of damages (out-of-pocket damages) is entirely consistent with their theory of Section 10(b) liability and would be measurable on a class-wide basis. This is evidenced by the fact that securities class actions routinely seek out-of-pocket damages for fraudulent misrepresentations."); *see also Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 WL 6793326, at *6 (E.D. Mich. Nov. 19, 2020) ("Measuring damages using 'the artificial inflation per share at the time of purchase less the artificial inflation at the time of sale' [as proposed by Mr. Coffman] matches precisely with Plaintiffs' out-of-pocket theory of liability."); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 448 (D. Ariz. 2019) (agreeing with Mr. Coffman that questions about putatively confounding information and calculation of inflation per share requires a detailed loss causation analysis that was not required for class certification); *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 64-65 (D.N.H. 2019) ("[T]he 'out-of-pocket' methodology proposed by Coffman satisfies the criteria set by *Comcast* as applied to the plaintiffs' Section 10(b) claims."); *Cosby v. KPMG, LLP*, No. 3:16-cv-121-TAV-DCP, 2020 WL 3548653 (E.D. Tenn. June 29, 2020) (denying motion to exclude Mr. Coffman's opinion that out-of-pocket damages could be calculated on a class-wide basis); *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 137-38 (M.D. Tenn. 2020) (finding that the "'out-of-pocket' damages model proposed by Coffman [that sought] to 'measure damages as the artificial inflation per share at the time of purchase less the artificial inflation at the time of the sale'" was "entirely consistent with [plaintiff's] theory of Section 10(b) liability and [damages] would be measurable on a class-wide basis"), *leave to appeal denied sub. nom. In re Tivity Health, Inc.*, No. 20-0501, 2020 WL 4218743 (6th Cir. Jul. 23, 2020); *Weiner v. Tivity Health, Inc.*, No. 3:17-cv-01469, 2021 WL 1099507 (M.D. Tenn. Mar. 23, 2021) (denying motion to decertify

---

(D. Minn. 2011) (same); *In re Connetics Sec. Litig.*, 257 F.R.D. 572 (N.D. Cal. 2009) (same); *see also In re Celestica Inc. Sec. Litig.*, No. 07-cv-312, 2014 WL 4160216 (S.D.N.Y. Aug. 20, 2014) (denying motion for summary judgment as to loss causation).

class); *Public Emps.' Ret. Sys. of Miss. v. TreeHouse Foods Inc.*, No. 16-cv-10632, 2020 WL 919249, at *8-10 (N.D. Ill. Feb. 26, 2020) (finding that Mr. Coffman's proposed "out-of-pocket method" was sufficient under *Comcast* despite defendants' claims that model was impermissibly "nonspecific" and could not disaggregate potentially confounding news); Exhibit A (appendix of additional cases wherein Mr. Coffman's damages methodology was approved).[5]

*Second*, Mr. Coffman's educational background and nearly 25 years of experience in complex financial analysis are directly relevant to the topic to which his expert report pertains: damages. Mr. Coffman has a bachelor's degree in Economics with Honors from Knox College and a master's degree in Public Policy from the University of Chicago. Rep. ¶ 3. He has earned the prestigious designation of Chartered Financial Analyst, a designation awarded to individuals who have sufficient practical experience and complete a series of three rigorous exams over the course of three years covering a variety of topics, including financial statement analysis and valuation. *Id*. Additionally, Mr. Coffman founded Global Economics Group in 2008, which provides independent economic analysis pertaining to, among other things, market efficiency and damages in legal, regulatory, and policy matters throughout the world, and prior to that was employed for over twelve years by Chicago Partners LLC, during which time he was responsible for conducting and managing analysis in several areas, including securities valuation and damages matters. *Id*. ¶ 4. Courts routinely deem Mr. Coffman's educational background and experience sufficient to qualify him as an expert witness on damages, and Defendants do not challenge his qualifications as to his

---

[5] In *In re BP P.L.C. Sec. Litig.*, No. 10-MD-2185, 2014 WL 2112823, at *12-13 (S.D. Tex. May 20, 2014), Mr. Coffman's out-of-pocket damages methodology was also accepted by the court and a class was certified as to "post-explosion" investors. There was a sub-class of "pre-explosion" investors who sought to recover *consequential* damages related to the post-explosion stock price decline. *Id.* at *11. With regard to the pre-explosion class, the *BP* plaintiffs "'***expressly eschew[ed]'*** the traditional out-of-pocket damages method advanced by Plaintiff here, because the *BP* plaintiffs were seeking consequential damages. *See id.*; Reply at 15 n.18. Accordingly, Defendants' reliance on this case (*see* Mot. at 13-14) to challenge Mr. Coffman's report and testimony is misplaced. *See also infra* at 18-19.

opinion about market efficiency.[6]

In short, Mr. Coffman's academic background, training, credentials, and vast experience serving as a credible expert in securities class actions, whether taken together or separately, demonstrate that he is not only well-qualified as an expert here, but that the damages methodology he has identified is well-accepted by federal courts. That is why his description of it in his reports, notwithstanding Defendants' criticism, does not change materially from case to case, where those cases involve similar claims under Section 10(b) that false and misleading statements and omissions artificially inflated a company's share price and then caused losses when the truth was revealed (as nearly all Section 10(b) cases do). *See* TAC ¶ 206; Coffman Tr. at 77:17-78:23, 159:5-160:23; *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, No. 17-CV-00554-YGR, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (court noting that defendants' assertion that expert could replace company's name in his report with another company and come to the same conclusion "seems to reflect the fact that securities fraud cases fit Rule 23 like a glove, rather than suggest that class treatment is inappropriate").

### B.   Defendants' Attacks on Mr. Coffman's Credibility Miss the Mark.

Defendants' criticisms of Mr. Coffman, whose record is untarnished, and his out-of-pocket damages methodology, which has been universally accepted by courts, are baseless and do nothing to tip the scales toward inadmissibility. Mr. Coffman's significant experience providing reliable testimony in securities class actions lies in stark contrast to that of Defendant's purported expert, Dr. Douglas Skinner. None of Dr. Skinner's experience involves having actually measured damages in securities fraud class actions, except for the two occasions on which he testified that

---

[6] *See supra* at pages 4-5; Rep. at App. B. *See also McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 428 (S.D.N.Y. 2014) (finding plaintiff's expert with an "MBA in Finance and a Chartered Financial Analyst (CFA) designation, and her 20 years of industry experience" qualified).

he had done some calculations in response to the plaintiffs' calculations at the merits stage. Skinner

Tr. at 47:8-48:18. Nor does Dr. Skinner know what "predominance" means in the context of class

certification or *Comcast*. Skinner Tr. at 63:7-23. He did not take any steps to evaluate whether

common issues of damages predominated in this case. *Id.* at 63:24-64:10. And when asked whether

this case involved "any individual issues of damages," he testified that he has a "limited

understanding of the specifics [] of the law and legalities around this case." *Id.* at 64:11-65:9.[7]

Despite his nonexistent understanding of the predominance requirement of Rule 23(b)(3)

and *Comcast*, Dr. Skinner has attacked multiple plaintiffs' experts' out-of-pocket damages

methodologies as failing under those standards. In at least five recent cases besides this one, Dr.

Skinner has argued on behalf of the defendants that four different experts (and now a fifth, Mr.

Coffman) did not put forth a methodology that was capable of measuring class-wide damages

attributable to the plaintiffs' liability theories under Section 10(b). Skinner Tr. at 196:7-198:12

(listing cases and titles of sections in Dr. Skinner's expert reports). Of the two courts to have opined

so far on his go-to argument, neither has agreed with him.

In the first, *SEB Inv. Mgmt. AB v. Symantec Corp.* ("*Symantec*"), the defendants, through

Dr. Skinner, argued, as they do here (Mot. at 15, 18), that the plaintiff had not demonstrated that

it could use an event study to "disaggregate the artificial inflation from confounding events." 335

F.R.D. 276, 288 (N.D. Cal. 2020). Dr. Skinner opined: "There is simply no economic basis for an

assertion that any price impact of a disclosure that actually occurred is equivalent to the price

impact of some entirely different 'truth' (or 'truths') that allegedly should have been disclosed

earlier in the but-for world" and the "proposed methodology is wholly incapable of measuring

---

[7] When pressed to identify any individual issues of damages, Dr. Skinner mischaracterized Mr. Coffman's testimony about a potential structural break (*see* Reply at 3 n.4) and could only say that after March 8, 2016, there may be "some issues related to common interests of class members and so on." *Id.* 65:23-66:13.

class-wide damages attributable to Plaintiff's liability theories." Gilden Decl. Ex. B at ¶¶ 113, 115 (Skinner *Symantec* Expert Report). The *Symantec* court disagreed, explaining that defendants' argument was "an inquiry into loss causation and loss causation need not be analyzed at the class certification stage." *Symantec*, 335 F.R.D. at 288. And contrary to Dr. Skinner's opinion, the court found that the plaintiff's expert's "proposed 'out of pocket' damages methodology" was "widely accepted for calculating damages for a class of stockholders" and "[did] not involve any individualized issues." *Id.*

Even more recently, in *In re Allergan PLC Sec. Litig.*, a case that involved corrective disclosures that constituted materialization of risk, Dr. Skinner again attempted precisely the same arguments he makes here.[8] Although the court denied the plaintiff's first motion for class certification on the grounds that the then-class counsel was inadequate, in so doing Chief Judge McMahon explained that she would grant class certification upon class counsel being replaced: "There is absolutely no question that this action should proceed as a class action. It is a garden-variety securities fraud suit, a type of action particularly well suited to class treatment." *In re Allergan PLC Sec. Litig.*, No. 18-CIV-12089 (CM) (GWG), 2020 WL 5796763, at *1 (S.D.N.Y. Sept. 29, 2020). The plaintiff's second motion for class certification is pending, but according to the court, the defendants' (and Dr. Skinner's) arguments are still destined to fail. *See id.*, Dkt. No. 195 (Dec. 15, 2020) (letter endorsement from Chief Judge McMahon noting: "I have already

---

[8] First, Dr. Skinner opined that the proposed damages methodology could not reliably measure inflation across the class period, in part because "the same information could not necessarily have been disclosed by Allergan earlier in the Proposed Class Period." *Compare* Gilden Decl. Ex. C (Skinner *Allergan* Expert Report) at ¶ 24(b) *with* Skinner Rep. ¶¶ 64, 77. Second, he opined that "the price decline following the materialization of any risk (when the risk becomes a certainty) necessarily overstates inflation from a prior failure to disclose the risk (when it is not certain)" and, therefore, "the stock price decline following [the corrective disclosure] cannot and does not provide a reliable measure of inflation from Allergan's purported undisclosed risk at earlier points in time during the Proposed Class Period." *Compare* Ex. C at ¶ 24(c) *with* Skinner Rep. ¶¶ 62, 64, 65, 107. Third, he opined that the expert "fails to present a methodology that could reliably apportion any associated price decline to each of Plaintiff's different liability theories . . . or provide a way to properly translate those amounts into daily measures of price inflation during the Proposed Class Period." *Compare* Ex. C at ¶ 24(d) *with* Skinner Rep. ¶¶ 108-09.

indicated pretty clearly that a class will be certified in this case").

To the extent Defendants challenge Mr. Coffman's report, and indirectly his qualifications, by questioning Mr. Coffman's use of the word "methodology" to describe the out-of-pocket damages method (Mot. at 9-10), the amount of time he spent on the damages portion of his report (Mot. at 1, 10), and that he has used the same language to describe the out-of-pocket method in other cases (Mot. at 1, 14-15), those attacks are meritless and not grounds for disqualification. The first, which is a matter of semantics, has no support in the case law construing *Comcast*. *See* Reply at 10 n.12; Rebuttal Rep. ¶¶ 20-22. The others have not gained traction in other courts and should not be given any weight here. *See, e.g.*, *Dougherty*, 2020 WL 6793326, at *6 ("According to Defendants, Plaintiffs' proposed model fails to satisfy *Comcast* because it measures damages that are attributable to 'confounding information' and uses 'copied-and-pasted' language. These arguments are unpersuasive."); *TreeHouse Foods*, 2020 WL 919249, at *9 ("Defendants complain that Coffman has proposed 'the same nonspecific theory at least five times in the past four years,' but do not cite a single case where this nonspecific theory was rejected."); *Milbeck v. TrueCar, Inc.*, No. 18-cv-2612, 2019 WL 2353010, at *4 (C.D. Cal. May 24, 2019) ("Various courts have considered the same Coffman report as that offered in this case and have found it sufficient."); *In re SanDisk LLC Sec. Litig.*, No. 15-cv-01455-VC, 2018 WL 4293336, at *2 (N.D. Cal. Sept. 4, 2018) ("The admittedly short portion of the Coffman report addressing [the out-of-pocket] damages methodology, coupled with its general acceptance, suffices . . . for class certification purposes . . . ."). As Mr. Coffman puts it: "I use the same language to describe the out-of-pocket damages methodology because the methodology is not in dispute." Rebuttal Rep. ¶ 27. Defendants' credibility arguments are "grasping at straws." *Dougherty*, 2020 WL 6793326, at *7.

## II.   MR. COFFMAN'S METHODOLOGY FOR CALCULATING OUT-OF-POCKET DAMAGES IS RELIABLE.

10

To assess reliability, courts consider whether the expert's testimony is based upon sufficient facts or data, whether the testimony is the product of reliable principles and methods, and whether the witness has reliably applied the principles and methods to the facts of the case. *Carpenters Pension Tr. Fund*, 310 F.R.D. at 75. As described herein, many courts have found Mr. Coffman's out-of-pocket damages method reliable. Unable to cite any on-point authority to the contrary, Defendants proclaim that at least in this case, Mr. Coffman has produced no "methodology" at all, according to their own hyper-technical interpretation of that term. *See* Mot. at 7-10. Or, they argue, even if it is a "methodology," Mr. Coffman's description is so vague that this Court cannot conclude that it is consistent with Plaintiff's theory of liability. *See* Mot. at 10-13. These points are repetitive of Defendants' class certification merits arguments, *see* Opp. at 22-25, and fail in this context as well as in that one.

### A.  Mr. Coffman's Damages Method Is Widely Accepted as Satisfying the Requirements of *Comcast* and Applying on a Class-wide Basis.

Defendants' protracted argument about "methodology" versus "measure" and integral calculus and heartrates (Mot. at 7-10) can be distilled to this: it is an attempt to persuade the Court to focus on how Mr. Coffman refers to his damages model rather than on what he says the damages model does. And as to what the model does, contrary to Defendants' insistence that Mr. Coffman "tells the Court nothing at all" (Mot. at 8), Mr. Coffman is clear.

Damages in this case can be measured class-wide by subtracting the artificial inflation per share at the time of sale from the artificial inflation per share at the time of purchase. Rep. ¶ 80; Rebuttal Rep. ¶ 39. Quantifying the inputs to this equation – the inflation per share on each day during the Class Period, subject to the Private Securities Litigation Reform Act of 1995's 90-day lookback provision – "requires a detailed loss causation analysis." Rep. ¶¶ 80-82; *see also* Rebuttal Rep. ¶¶ 16-17, 21 ("Dr. Skinner is conflating two concepts: the damages formula and the inputs to

the damages formula."). Mr. Coffman explains that at a later stage of the case, with the benefit of full discovery, several techniques could be used to quantify artificial inflation, beginning with "an event study that measures price reactions to disclosures that revealed the relevant truth concealed by the alleged material omissions and/or misrepresentations." Rep. ¶ 83; *see also* Rebuttal Rep. ¶¶ 16; 22; 38-42; 47-57; Coffman Tr. at 149:6-13 ("An event study analysis would be part of a loss causation analysis in this case."). Mr. Coffman explains that it will be necessary to disaggregate the price impact of confounding information and to analyze variations in inflation per share over the Class Period. Rep. ¶¶ 83, 84. The valuation techniques used to determine artificial inflation, Mr. Coffman further explains, "are class-wide in nature and do not depend on the identity or circumstance of any specific investor." *Id.* ¶ 84. *See also* Rebuttal Rep. ¶¶ 26, 28, 35, 37, 39. Once inflation per share is quantified for each day during the Class Period (commonly represented as an "inflation ribbon," *see* Coffman Tr. at 149:20-154:9), "the computation of damages for each class member is formulaic based upon information collected in the claims process." Rep. ¶ 81; *see also* Rebuttal Rep. ¶¶ 19-27.

Like a life raft, Defendants cling to the notion that the Supreme Court, in *Comcast*, by using the term "methodology," created a more technically demanding standard for expert reports regarding damages in securities fraud class action cases at the class certification stage. Mot. at 8-9. It did not.

*First*, in *Comcast*, the Supreme Court used the terms "model" and "methodology" interchangeably to describe the plaintiff's proposed method of calculating damages, which calls into question the technical significance that Defendants attribute to the word "methodology" in the context of that decision. *See Comcast Corp. v Behrend*, 569 U.S. 27, 35-38 (2013). *Second*, and more importantly, since the Supreme Court decided *Comcast*, the Second Circuit and courts in this

District have "rejected a broad reading" of its holding. *Carpenters Pension Tr. Fund*, 310 F.R.D.

at 74. As one district court recently explained:

> In *Comcast*, the Supreme Court reversed the lower courts'
> certification of a Rule 23(b)(3) class alleging violations of federal
> antitrust laws. 569 U.S. at 38. Below, the plaintiffs had 'proposed
> four theories of antitrust impact,' only one of which the district court
> accepted for certification because it was the only theory that was
> 'capable of classwide proof.' The plaintiffs had offered a damages
> model, though, that 'did not isolate damages resulting from any one
> theory of antitrust impact.' The Supreme Court held that the class
> was improperly certified because '[q]uestions of individual damage
> calculations will inevitably overwhelm questions common to the
> class.' The Second Circuit has interpreted *Comcast* narrowly:
>
> > We have interpreted *Comcast* as precluding class certification only
> > because the sole theory of liability that the district court determined
> > was common in that antitrust action was a theory of liability that the
> > plaintiffs' model indisputably failed to measure when determining
> > the damages for that injury. In other words, we have stated
> > that *Comcast* held that a model for determining classwide damages
> > relied upon to certify a class under Rule 23(b)(3) must actually
> > measure damages that result from the class's asserted theory of
> > injury.
>
> Thus, '*Comcast* does not mandate that certification pursuant to Rule
> 23(b)(3) requires a finding that damages are capable of
> measurement on a classwide basis.' Indeed, class certification may
> be appropriate pursuant to Rule 23(b)(3) even in cases 'involving
> individualized damages calculations.' Since *Comcast*, many courts
> have commented that the potential need for individualized damages
> calculations in Section 10(b) cases simply does not impose a high
> hurdle on Rule 23(b)(3)'s predominance requirement.

*In re Teva*, 2021 WL 872156, at *41; *see also In re VHS of Mich., Inc.*, 601 F. App'x. 342, 344

(6th Cir. 2015) ("*Comcast* applies where multiple theories of liability exist, those theories create

separable anticompetitive effects, and the combined effects can result in aggregated

damages. . . . Where there is no chance of aggregated damages attributable to rejected liability

theories, the Supreme Court's concerns do not apply.").

Defendants may not like it and would have this Court hold otherwise, but the simple

subtraction equation that Mr. Coffman describes "is the standard measurement of damages in Section 10(b) securities cases." *City of Miami*, 2018 WL 4931543, at *3 (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972)). "*Comcast* did not change this, or render the model improper." *Weiner*, 334 F.R.D. at 137; *see also Rougier v. Applied Optoelectronics, Inc.*, No. 17-CV-02399, 2019 WL 6111303, at *15 (S.D. Tex. Nov. 13, 2019) (approving Mr. Coffman's out-of-pocket damages method at class certification, where loss causation theory in plaintiff's complaint involved materialization of risk, explaining that "[t]he *Comcast* requirement is easily satisfied in securities fraud cases invoking the *Basic* presumption and seeking out-of-pocket damages because fraud on the market presumes a causal connection between the misrepresentations and the price of the stock."); Rebuttal Rep. ¶¶ 7-8.

Mr. Coffman's designation of that formula, along with his description of several techniques that can be used to calculate artificial inflation at the merits stage, is widely accepted as a "model" or "methodology" at the class certification stage. *See In re Barrick Gold*, 314 F.R.D. at 105-06 (approving Mr. Coffman's proposed out-of-pocket method); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2021 WL 229310, at *7 (N.D. Cal. Jan. 21, 2021) (approving Mr. Coffman's "out-of-pocket method" and explaining that "[s]ecurities class-action plaintiffs widely employ the 'out-of-pocket' method to calculate damages for a class of stockholders: damages are equal to the artificial inflation at time of purchase less that at time of sale."); *Cosby*, 2020 WL 3548653, at *7 (noting that Mr. Coffman's "out-of-pocket losses measure. . . . is a model-driven-calculation").[9]

---

[9] Other experts' descriptions of the out-of-pocket methodology accord with Mr. Coffman's and have been accepted by courts in this District. For example, in *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-6728 (CM) (RWL), 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019), the court explained: "Plaintiffs' burden at this stage is simply to propose a methodology for calculating damages that corresponds to its theory of liability. It has done so here. Dr. Hartzmark's purports to 'use the results of an event study along with the disclosures of firm-specific information' to measure 'the

Defendants cite no case law to support their argument that *Comcast* and *Daubert* raised the bar for the level of technicality with which an expert in a securities fraud class action must describe the out-of-pocket damages method in a case alleging a theory of liability based on misrepresentations and omissions that artificially inflated a company's stock price, on which investors are alleged to have relied. If they were correct, then all the above-cited authority, and likely hundreds of other decisions over the last eight years finding that other experts' similar descriptions of the out-of-pocket damages model met the requirements of *Comcast* and were admissible, are wrong. The weight of authority in favor of admissibility carries the day here.

### B.    Mr. Coffman Adequately Identifies a Reliable Methodology for Measuring Class-wide Damages Consistent with Plaintiff's Theory of Liability.

Plaintiff's theory of liability—which bears repeating, given that Defendants steadfastly misrepresent it—is that Defendants made false and misleading statements and omissions of present facts (regarding PSG's sales practices, already-transpired risks, an adverse material trend, and deficient internal controls) that artificially inflated the price of PSG's shares, and as the truth about their prior misrepresentations and conduct was revealed over time, PSG's stock price declined, causing harm to the proposed Class. TAC ¶ 206 (explaining how fraudulent statements led to economic losses); Order at 14. Defendants are wrong that Mr. Coffman has not committed "to the use of any particular methodology to calculate class-wide damages" to fit this theory. Mot. at 11.[10]

---

level of artificial inflation in the prices of the Signet common stock' based upon 'price reactions to disclosures revealing Defendants' alleged misstatements and omissions.' 'From this, daily levels of inflation can be calculated by adjusting the inflation measure for each day throughout the Class Period.' This methodology, which applies on a class-wide basis, is capable of measuring the out-of-pocket losses suffered by the Class members."

[10] *See also* Mot. at 12 n.10 (Mr. Coffman's "understanding of the showing required at class certification, and assertion that the identification of a suitable damages methodology is a 'loss causation,' not class certification, question are both wrong as a matter of law."). At the cited portion of Mr. Coffman's deposition, Coffman Tr. at 143:19-144:10, Mr. Coffman testified that measuring artificial inflation was part of a loss causation analysis and that he believed his description of the out-of-pocket method was "a sufficient answer to the question of what methodology is going to be used." As explained *supra,* pages 4-6, Mr. Coffman's basis for that statement is reasonable and many courts have agreed with him. *See also* Rebuttal Rep. ¶ 7; Exhibit A (appendix of additional cases). Furthermore, although

Mr. Coffman has proposed, "albeit succinctly," to calculate damages using the out-of-pocket method, which is "consistent with [Plaintiff's] theory of liability . . . and is generally regarded as reliable." *See Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15-CV-3187, 2018 WL 1535156, at *3 (N.D. Ill. Mar. 29, 2018) (finding that Mr. Coffman's out-of-pocket method fit theory of liability based on artificial inflation caused by false representations).

Defendants demand more, *see* Mot. at 10-12, but more is not what they are due in an expert report at the class certification stage. *See Pirnik v. Fiat Chrysler Auto., N.V.*, 327 F.R.D. 38, 47 (S.D.N.Y. 2018) ("[T]o the extent Defendants' argument is that Plaintiffs' model fails to account for factual evidence of varied inflation . . . that is an argument that goes to the merits of whether Plaintiffs can accurately demonstrate price impact and goes beyond the Rule 23 inquiry."); *Milbeck*, 2019 WL 2353010, at *4 ("[A]ccording to Defendants . . . Coffman[] fails to provide a specific model of damages or account for confounding factors and instead relies on mere 'general techniques' . . . . However, at this stage it is only required that plaintiffs be able to show that their damages stemmed from the defendant's actions that created the legal liability."); *Walgreen*, 2018 WL 1535156, at *3 ("The defendants appear to contend that in order to attain class certification the plaintiffs must establish that their damages calculation will fully account for the impact of other intermediate disclosures and confounding information. The defendants, however, have failed to identify any legal authority requiring this burdensome showing at this stage in the proceeding.").[11]

---

Defendants are correct that the Second Circuit explained, in *Roach v. T.L. Cannon Corp.*, that "damages questions should be considered at the certification stage when weighing predominance issues," Defendants conveniently omitted the rest of the sentence: "but this requirement is entirely consistent with our prior holding that the fact that damages may have to be ascertained on an individual basis is a factor that we must consider in deciding whether issues susceptible to generalized proof outweigh individual issues." 778 F.3d 401, 408 (2d Cir. 2015). Here, Defendants have raised no issues of individualized proof that would predominate over common questions. Rebuttal Rep. ¶ 26.

[11] *See also Wilson v. LSB Indus., Inc.*, No. 15-CIV-7614 (RAG) (WG), 2018 WL 3913115, at *17 (S.D.N.Y. Aug. 13, 2018) (rejecting defendants' argument that expert (Feinstein) "proposed insufficient details to allow this Court to conclude that Feinstein's model will in fact function as Feinstein claims it will" and finding that expert did not need to specify valuation tools, disaggregate confounding information, or explain "how he will calculate inflation at the

Courts have consistently resisted attempts to paint Mr. Coffman's out-of-pocket method as nonspecific and untethered to the facts of the cases before them, which is what Defendants urge the Court to do here. *See TreeHouse Foods*, 2020 WL 919249, at *9 (collecting cases).

Defendants' proffered case law on this point does not rebut the preponderance of evidence that demonstrates that Mr. Coffman's model is reliable. *Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010), which did not involve a Section 10(b) theory of liability or out-of-pocket damages, is not "instructive." *See* Mot. at 10-11. It is not even relevant. The same goes for *Ward v. Apple Inc.*, 784 F. App'x 539 (9th Cir. 2019), an antitrust case. Defendants are thus left with *Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, No. 4:08-cv-0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ("*Freddie Mac*"). Other courts have not cited *Freddie Mac* to reject an out-of-pocket damages methodology in a Section 10(b) case, and one district court has held that the decision is "inapposite" as applied to Mr. Coffman's description of the out-of-pocket method. *TreeHouse Foods*, 2020 WL 919249, at *9 n.8. Two other courts have refused to follow *Freddie Mac* even when considering the damages methodology proffered by the same expert whose report was at issue in that case. *See In re Novo Nordisk*, 2020 WL 502176, at *3; *Monroe Cnty.*, 332 F.R.D. at 399. Again, the weight of authority supports the conclusion that Mr. Coffman's out-of-pocket method is suited to this case and reliable.

## III.    MR. COFFMAN'S METHODOLOGY FOR CALCULATING OUT-OF-POCKET DAMAGES IS RELEVANT TO THIS CASE.

---

beginning of the Class Period" at the class certification stage); *In re Novo Nordisk Sec. Litig.*, No. 3:17-CV-00209 (BRM) (LHG), 2020 WL 502176, at *3 (D.N.J. Jan. 31, 2020) ("Defendants contend Dr. Feinstein's Report is not reliable because he concedes he is unable to construct an actual damages model until discovery is complete and the record is fully developed. . . . At this stage of litigation, Plaintiffs are not required to produce a detailed damages model."); *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 399 (N.D. Ga. 2019) ("[A]lthough Professor Feinstein has not yet specified which valuation tools – an input into the damages model – he will ultimately use, such specification is not required at this stage. . . . It is sufficient for class certification that Professor Feinstein has specified a damages model that can be used to establish damages using a common methodology for all class members, even though certain of the inputs to that model are not yet ascertainable.").

The third inquiry under Rule 702 is whether Mr. Coffman's testimony as to the out-of-pocket damages methodology will assist the trier of fact, or, here, the Court in assessing class certification. *See Nimely*, 414 F.3d at 397. Mr. Coffman's opinion is suited to that task.

### A.    Mr. Coffman's Opinion Aligns with Plaintiff's Theory of Liability.

To argue that Mr. Coffman's opinion is "irrelevant and unhelpful to the Court," Defendants set up several strawmen and knock them down. First, Defendants excoriate Mr. Coffman for describing several techniques that his out-of-pocket damages method could incorporate at the loss causation analysis stage but not committing, right now, to the exact techniques he will use, Mot. at 13-15,[12] even though merits discovery has not been completed yet. As explained *supra*, page 16, "such specificity is not required at this stage of the proceedings, and defendants have not cited any case holding otherwise." *Wilson*, 2018 WL 3913115, at *17; *see also Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 136-41 (D.D.C. 2017). "[A]t this stage it is only required that plaintiffs be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Milbeck*, 2019 WL 2353010, at *4; Rebuttal Rep. ¶¶ 21-23.

As their next strawman, Defendants misconstrue Plaintiff's theories of liability and damages by citing *In re BP P.L.C. Sec. Litig.*, No. 10-MD-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013). Mot. at 13. That case, which arose from the Deepwater Horizon explosion in the Gulf of Mexico, ultimately involved two classes, of pre-explosion and post-explosion investors; the pre-explosion investors alleged that BP's statements were actionable because they "misstated the efficacy of its safety procedures, creating an impression that the risk of a catastrophic failure was lower than it actually was." *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 689 (5th

---

[12] Of note, Mr. Coffman did testify that he would use an event study as part of a loss causation analysis. Coffman Tr. at 149:6-13.

Cir. 2015). Here, as this Court has explained, Plaintiff alleges "that Defendants made misleading public statements to conceal the fact that their revenue was the result of [] unsustainable tactics." Order at 1. Plaintiff does not allege, nor did this Court find in deciding the motion to dismiss, that the statements were false or misleading because they misrepresented a hypothetical risk. *Id.* at 12-23. Furthermore, in *BP*, the pre-explosion plaintiffs' theory of damages was based on a materialization of risk (the explosion and oil spill) and sought consequential damages, or the full amount of the stock price decline after the spill—not out-of-pocket damages.[13] *See Ludlow*, 800 F.3d at 689. The pre-explosion plaintiffs' theory of damages "hinge[d] on a determination that each plaintiff would not have bought BP stock *at all* if not for the alleged misrepresentations—a determination not derivable as a common question, but rather one requiring individualized inquiry." *Id.* at 690. Plaintiff makes no such allegation here; instead, Plaintiff has proffered an out-of-pocket damages methodology and alleges that in purchasing their shares, the members of the proposed Class relied on the efficiency of the market, not Defendants' representations about risk. TAC ¶¶ 210-12.

> Thus, the case at bar is actually analogous to the ***post-spill*** class in *Ludlow*. As the Fifth Circuit noted, the plaintiffs' theory of damages in the ***post-spill*** class was that because of BP's misstatements, the stock price was higher than it should have been. ***The damages model, in turn, relied on a theory that the 'inflation' in the stock price caused by the misstatements would be exposed by the fall in the price when certain 'corrective events' brought the 'true information' to the market's attention***. The Fifth Circuit affirmed the district court's order certifying the post-spill class. As such, Defendants' reliance on *Ludlow* is misplaced.

*Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2017 WL 5885542, at *12-14 (S.D.

---

[13] To the extent Defendants believe that framing this case as a reiteration of the pre-explosion damages theory in *BP* will help them, they are mistaken. ***The defendants in the BP case argued that the pre-explosion investors' damages should be measured by the out-of-pocket method***. *See In re BP*, 2014 WL 2112823, at *10. Therefore, even if Defendants are correct that Plaintiff here has alleged a theory of liability akin to the pre-explosion investors (which it has not), Mr. Coffman's proffered damages method still aligns with that theory. *See also* Rebuttal Rep. ¶¶ 30-43.

Cal. Nov. 29, 2017) (emphasis added) (distinguishing the *BP* case and finding that Mr. Coffman's out-of-pocket damages method fit the plaintiffs' theory of liability); *see also Howard*, 322 F.R.D. at 139-41 (same); *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226 YGR, 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016) (same).

The above-cited cases distinguishing *BP* and accepting Mr. Coffman's out-of-pocket method all involved different facts, types of misstatements and omissions, and corrective disclosure events, as Mr. Coffman has acknowledged. Coffman Tr. at 157:23-159:4. In yet one more strawman argument, Defendants characterize such cases as involving "fundamentally different theories of liability" than this case. *See* Mot. at 14. But as Mr. Coffman has explained, the plaintiffs in those cases all alleged ***the same overarching theory of liability***[14]: "the stock price was either artificially inflated or deflated as a result of the alleged misrepresentations and omissions." Coffman Tr. at 159:5-15. Courts have consistently rejected other defendants' claims that Mr. Coffman's and other experts' out-of-pocket methodologies were ill-fitted to cases alleging that theory of liability. *See Carpenters Pension Tr. Fund*, 310 F.R.D. at 99-100; *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 87-88 (D.N.J. 2019); *Weiner*, 334 F.R.D. at 137-38; *Levy*, 448 F. Supp. 3d at 65; *Walgreen*, 2018 WL 1535156, at *3.

Courts have done the same with Defendants' last strawman argument, which is that Mr. Coffman used a "cut-and-pasted" damages methodology and that it is therefore irrelevant and unhelpful to the Court. *See supra,* p. 7. Again, Defendants may not like the law on what is required

---

[14] Defendants attempt to argue that Plaintiff's theory of liability here is materially different from all the other cases in which Mr. Coffman's damages methodology has been approved by painting one of the six elements of Plaintiff's claims—loss causation through materializations of risk—as Plaintiff's entire theory of liability. *See, e.g.*, Mot. at 14. As set forth more fully in Plaintiff's Reply in Support of Motion for Class Certification at 10-15, this is both a gross oversimplification of Plaintiff's claims and inconsequential. The out-of-pocket method of measuring damages is well-established as fitting a plaintiff's theory of liability where a plaintiff has alleged loss causation through corrective disclosures that involved materializations of risk. *See, e.g.*, *In re Barrick Gold*, 314 F.R.D. at 105-06; *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 691-93 (D. Md. 2018).

of Plaintiff at the class certification stage in securities fraud class actions, but that grievance is not proper grounds on which to exclude Mr. Coffman's report. Mr. Coffman's opinion on out-of-pocket damages clearly aligns with Plaintiff's liability theory and is relevant to this case.

### B.   The Artificial Inflation Valuation Techniques Discussed by Mr. Coffman Are Relevant to This Straightforward Section 10(b) Fraud Case.

Defendants and their expert have not demonstrated that the techniques that Mr. Coffman describes as potential methods of calculating artificial inflation as part of the out-of-pocket damages methodology are unsuited to the theory of liability in this case. *See* Mot. at 15-18. Their arguments, which really go to the merits of Mr. Coffman's report, not its admissibility, fail on both the facts and the law. As Mr. Coffman explains: "Dr. Skinner's argument is flawed because: (1) Plaintiff's theory of liability is not premised on the 'materialization of risk' as characterized by Dr. Skinner; (2) even if it were, this is a question of loss causation; and (3) regardless, the damages model described in my Report is flexible enough to incorporate the materialization of risk." Rebuttal Rep. ¶ 30. Mr. Coffman's model can also accommodate variations in artificial inflation in the but-for price of PSG stock on each day during the Class Period, including variations caused by changing business conditions, the changing price impact of disclosures, and potential alternative findings of liability. Rebuttal Rep. ¶¶ 44-65.

Defendants and Dr. Skinner either do not understand or purposely misconstrue Plaintiff's theory of liability. What Defendants and Dr. Skinner describe as Plaintiff's theory of liability is in fact only the loss causation element of Plaintiff's claims. *Compare* Mot. at 15, 17[15] *with* TAC

---

[15] According to Defendants: "The Fund's theory is that Defendants concealed known risks about PSG's sales practices and internal controls, and that PSG's stock price dropped when those 'risks materialized.'" Mot. at 15. As support, Defendants cite Paragraph 125 of the TAC, from the section of the TAC that details the alleged corrective disclosures. In that paragraph, Plaintiff alleges that *Defendants concealed an adverse material trend and their engagement in high-risk sales practices*. TAC ¶ 125. Plaintiff does *not* allege that Defendants "should have revealed . . . that its sales practices created the *risk* of customer bankruptcies." Mot. at 15 (emphasis in original). It alleges that *Defendants should have revealed the sales practices themselves*. The *hypothetical risks* were not what made the statements and

¶¶ 206-08 (first summarizing the fraud and then alleging that the subjects of Defendants' fraudulent statements and omissions—the sales practices, adverse material trend, transpired risks, and deficient internal controls—caused the economic loss suffered by Plaintiff). Dr. Skinner acknowledged as much: "materialization of risk is an element and an important element and, as I interpret it, a core element of Plaintiffs' claims in this case," Skinner Tr. at 93:17-24 – which, of course, is true in a sense (it is one of the elements of Plaintiff's claims), but loss causation is not a theory of liability. When Plaintiff attempted to probe the basis of Dr. Skinner's (incorrect) articulation of Plaintiff's theory of liability, he repeatedly obfuscated, demurred on the ground that he is not a lawyer, and referred Plaintiff back to his report. *See, e.g.*, Skinner Tr. at 79:16-84:24; Rebuttal Rep. ¶¶ 30-36 (summarizing Dr. Skinner's testimony on Plaintiff's theory of liability and explaining flawed premise). Defendants and Dr. Skinner are clear, though, that their understanding of Plaintiff's theory of liability forms the basis of Dr. Skinner's conclusion that techniques like event studies and backcasting cannot be used to estimate damages in this case. Mot. at 16. As a matter of logic, because his premise is incorrect, his conclusions should carry little to no weight.

Moreover, at the class certification stage, the supposed fatal flaws that Defendants identify in Mr. Coffman's techniques are not barriers to the admissibility of his report (or to class certification, for that matter). *See* Rebuttal Rep. ¶¶ 29-65. There is not a "mismatch" between "the information conveyed by a corrective disclosure and the information allegedly concealed from the market" in this case. Mot. at 16-17. Plaintiff alleges that Defendants made fraudulent statements and omissions regarding PSG's sales practices, already-transpired risks, an adverse material trend,

---

omissions false or misleading; they *were what caused Plaintiff's losses*. TAC ¶ 206. Nor does Plaintiff allege that the truth that "was actually revealed to the market when the risks materialized" was "that the customers had filed for bankruptcy." Mot. at 15. As this Court recognized, Plaintiff alleges that "*the market learned the truth about PSG's sales practices*" through materializations of risks that were concealed by the false and misleading statements. Order at 27. The corrective disclosure events themselves were not truths that were revealed to the market.

and deficient internal controls. *See* Order at 14 (summarizing allegations). Mr. Coffman's event study would measure a hypothetical disclosure of that information, not a hypothetical disclosure of hypothetical risks, as Defendants describe. Rebuttal Rep. ¶ 33. And even if there were such a "mismatch," it is no impediment to class certification. "[W]hether plaintiffs will be able to prove loss causation or measure price impact—in this instance, the inflationary impact of the [allegedly false and misleading statements]—are questions that go to the merits and not whether common issues predominate." *Carpenters Pension Tr. Fund*, 310 F.R.D. at 99-100 (holding that Plaintiff's "model survives the minimal scrutiny required under *Comcast* and Rule 23(b)(3)—their theory of liability matches their theory of damages and individualized damages issues will not predominate").

Likewise, it is not a problem (or at all rare) that "PSG's business and its market changed" over the proposed Class Period, nor is it a problem if Defendants are correct that the valuation techniques that Mr. Coffman describes "are likely to require detailed, contemporaneous projections of PSG's earnings that even Mr. Coffman acknowledged might not exist." *See* Mot. at 18. Criticisms of this nature about the complexity of calculating artificial inflation—for instance, that there are "many dates with various alleged misrepresentations," that "the alleged fraud increased and decreased as the scheme changed over time," or that the "industry underwent changes" during the class period—"go to the accuracy of the damages model and loss causation, but ***do not prevent class certification because all of these alleged obstacles for accurate calculation of the damages are the same if there is one plaintiff or one million plaintiffs***." *In re CenturyLink Sales Practices & Sec. Litig.*, 337 F.R.D. 193, 213 (D. Minn. 2020)[16]; *see also*

---

[16] *See also In re Glob. Brokerage, Inc. f/k/a FXCM Inc. Sec. Litig.*, No. 17-CV-916 (RA) (BCM), 2021 WL 1160056, at *20 (S.D.N.Y. Mar. 18, 2021) ("[A]ny issues pertaining to the "construction of an inflation ribbon" or the "subsequent adjustments necessary for case-specific valuation complexities" can be addressed when plaintiffs address

Rebuttal Rep. ¶ 25 ("[T]hese questions of loss causation are present in virtually every securities class action matter, can substantially depend on information obtained during discovery, and are determined based upon proof that is common to all class members.").

Nor is the potential for alternative liability findings an obstacle to the admissibility of Mr. Coffman's opinion at this stage. *See* Mot. at 18; Rebuttal Rep. ¶¶ 44-58; 61-65. Securities fraud class action cases often include categories of alleged misstatements and omissions that survive a motion to dismiss. If it were the rule that for a class to be certified, an out-of-pocket damages methodology had to pre-disaggregate among all of the alleged misstatements and omissions that were alleged to have inflated a company's stock price, the opinions cited in this brief certifying securities class actions would not exist. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, Civ. No. 10-3461, 2015 WL 5613150, at *8 (S.D.N.Y. Sept. 24, 2015) ("The possibility that Defendants could prove that some amount of the price decline is not attributable to Plaintiffs' theory of liability does not preclude class certification."); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-CV-03852 (GBD), 2015 WL 10433433, at *7 (S.D.N.Y. Sept. 29, 2015) ("Defendants argue that Plaintiffs' expert may not be able to control for the price impact of information other than Defendants' alleged misrepresentations and omissions. That question, however, applies to the calculation of damages for every member of the Proposed Class.").

Finally, Mr. Coffman's methodology is flexible enough to address any real concerns raised by Dr. Skinner. Mr. Coffman has not opined that he would calculate damages *only* by using any

---

loss causation, which need not happen at the class certification stage."), *report and recommendation adopted sub nom. In re Glob. Brokerage, Inc. f/k/a FXCM Inc. Sec. Litig.*, No. 17-CV-916 (RA) (BCM), 2021 WL 1105367 (S.D.N.Y. Mar. 23, 2021); *In re Willis Towers Watson PLC Proxy Litig.*, No. 117-CV-1338 (AJT) (JFA), 2020 WL 5361582, at *10-11 (E.D. Va. Sept. 4, 2020) ("Defendants' challenge to Plaintiff's damages model is based on what they claim are speculative assumptions, a flawed events-study methodology, and the particular stock holdings of certain class members, all of which is anchored in Plaintiff's ability to prove loss causation and the amount of damages. But those issues are not to be decided for the purposes of determining class certification.").

particular technique. Indeed, he agrees with Dr. Skinner that "in calculating the precise inflation per share that would be the inputs to the out-of-pocket damages model, one would have to account for the value of certain information." Rebuttal Rep. ¶ 28. The examples he provides in his Rebuttal Report explain how the model would do so, on a class-wide basis. *Id.* ¶¶ 35-39; 41-42, 46-57, 60, 62. And as Mr. Coffman explains, it is common for parties to battle, at the merits stage, over confounding information and damages calculations, *id.* ¶ 25, and at that stage, he would use the tools he describes in his report to disaggregate such information. *Id.* ¶¶ 44-65. Mr. Coffman's proposed damages method, therefore, can clearly be applied to the facts of this case, and is reliable and relevant at this stage.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendants' motion to exclude should be denied.

Dated: April 6, 2021                              Respectfully submitted,

                                                  */s/ Carol V. Gilden*
                                                  Carol V. Gilden
                                                  **COHEN MILSTEIN SELLERS
                                                    & TOLL PLLC**
                                                  190 South LaSalle St.
                                                  Suite 1705
                                                  Chicago, IL 60603
                                                  Tel.: (312) 357-0370
                                                  Fax: (312) 357-0369

                                                  Steven J. Toll (*pro hac vice*)
                                                  S. Douglas Bunch (SB-3028)
                                                  Megan Kinsella Kistler (MK-1983)
                                                  Joshua C. Handelsman (*pro hac vice*)
                                                  **COHEN MILSTEIN SELLERS
                                                    & TOLL PLLC**
                                                  1100 New York Ave. N.W., Fifth Floor
                                                  Washington, D.C. 20005
                                                  Tel.: (202) 408-3640
                                                  Fax: (202) 408-4699

*Attorneys for Lead Plaintiff Plumbers &
Pipefitters National Pension Fund and Lead
Counsel for the Class*

Louis P. Malone III
**O'DONOGUE & O'DONOGHUE LLP**
5301 Wisconsin Ave. N.W.
Suite 800
Washington, DC 20015
Tel.: (202) 362-0041
Fax: (202) 362-2640

*Additional Attorneys for the Plumbers &
Pipefitters National Pension Fund*

26