**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PLUMBERS & PIPEFITTERS NATIONAL PENSION FUND, and JUAN FRANCISCO NIEVES, as Trustee of the Gonzalez Coronado Trust, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>KEVIN DAVIS and AMIR ROSENTHAL,<br><br>        Defendants. | Case No.: 1:16-cv-3591-GHW |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT**

## **TABLE OF CONTENTS**

Introduction ................................................................................................................ 1

Summary of the Litigation and Settlement ............................................................... 3

Argument .................................................................................................................... 6

I. The Proposed Settlement Class Satisfies the Standards for Class Certification Under Rule 23. .............................................................................................................. 6

    A. The Proposed Settlement Class Readily Satisfies the Rule 23(a) Requirements ..... 7

    B. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ........... 12

II. The Proposed Settlement Warrants Preliminary Approval ........................................ 14

    A. The Proposed Settlement Satisfies Rule 23(e)(2) and the Relevant *Grinnell* Factors ................................................................................................................ 16

    B. The Stage of the Proceedings and Amount of Discovery Completed Supports Preliminary Approval ......................................................................................... 25

III. The Proposed Form and Method of Class Notice Are Adequate ............................... 27

    A. The Scope of the Notice Program Is Adequate Under Rule 23 ........................... 28

    B. The Proposed Form of Notice Program Meets the Requirements of Due Process, the PSLRA, and Rule 23 ..................................................................................... 29

IV. Proposed Schedule of Events .................................................................................... 30

Conclusion ................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*In re Advanced Battery Techs. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................29

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................6, 12

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................18, 21

*In re AMF Bowling Sec. Litig.*,
  No. 99 Civ. 3023 (DC), 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002) ....................8

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013).......................................................9, 13

*In re AOL Time Warner, Inc.*,
  No. 02-cv-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...........................24, 25

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................17

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).........................................................12

*Califano v. Yamasaki*,
  442 U.S. 682 (1979).........................................................14

*In re China Sunergy Sec. Litig.*,
  No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...........................24

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................ *passim*

*Consol. Edison, Inc. v. Ne. Utils.*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004).................................27

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)............................................16

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)............................................17

*Danieli v. IBM Corp.*,
   No. 08-cv-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009)...........................................21

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)...........................................................................................10, 17

*In re Deutsche Bank AG Sec. Litig.*,
   328 F.R.D. 71 (S.D.N.Y. 2018) .......................................................................................9, 10

*In re Dynex Capital, Inc. Sec. Litig.*,
   Civ. No. 05-1897 (S.D.N.Y. Mar. 13, 2012) ........................................................................22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011).................................................................................................................13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05-cv-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)......................................14, 20

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) .............................................................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...................................22

*Garland v. Cohen & Krassner*,
   No. 08-CV-4626, 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ...........................................20

*In re Glob. Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................19, 30

*Great Neck Cap'l Appreciation Inv. P'ship, LP v. PricewaterhouseCoopers, LLP*,
   212 F.R.D. 400 (E.D. Wis. 2002) ............................................................................................27

*Gruber v. Gilbertson*,
   No. 16CV9727, 2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019) .......................................7, 8, 9

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019).......................................................................... *passim*

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)....................................................................................................................9

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)............................................22

*In re IMAX Sec. Litig.*,
   Civ. No. 06-6128, 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012).............................................22

*In re IndyMac Mortgage-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) ........................................................ 12

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) .................................................. 17, 26

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  No. 03-CV-4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................... 24

*In re Livent, Inc. Noteholders Sec. Litig.*,
  210 F.R.D. 512 (S.D.N.Y 2002) ........................................................ 14

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................. 25

*In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*,
  No. 02-MDL-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............... 30

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ....................................... 9, 10, 12, 13

*N.J. Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC, et al.*,
  No. 08-cv-5093 (S.D.N.Y. July 18, 2014) ........................................... 29

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ......................................................... 15

*In re Omnicom Grp., Inc. Sec. Litig.*,
  No. 02-CV-4483 (RCC), 2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) ..... 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................. *passim*

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................... 6

*Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
  280 F.R.D. 130 (S.D.N.Y. 2012) ....................................................... 14

*In re Sadia Sec. Litig.*,
  No. 08 Civ. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ..... 22

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...... 27

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16-cv-6728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............... 18

*Stoneridge Inv. Partners, LLC v. Sci. Atlanta*,
    552 U.S. 148 (2008)............................................................................................13

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
    No. 09-cv-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012).............................24

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) .........................................................................14

*In re SunEdison, Inc. Sec. Litig.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) .........................................................................13

*Sykes v. Harris*,
    No. 09-cv-8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............................19

*In re Take Two Interactive Sec. Litig.*,
    No. 06-cv-1131, 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ..........................22

*Tchrs. Ret. Sys. of La. v. ACLN Ltd.*,
    No. 01 CV 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004)................9

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) .........................................................................13

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010)..................................................................................13

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ............................................................................27

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) .........................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................8

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)....................16, 30

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................6

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................20

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ......................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ......................................................2, 27, 29, 30

Lead Plaintiff[1] United Association National Pension Fund, f/k/a Plumbers & Pipefitters National Pension Fund ("UANPF" or "Lead Plaintiff"), respectfully submits this memorandum of law in support of Lead Plaintiff's unopposed motion for: (i) preliminary approval of the Stipulation and Agreement of Settlement dated December 1, 2021 (the "Stipulation" and "Settlement," respectively); (ii) preliminary certification of the Settlement Class for the purposes of the Settlement; (iii) approval of the form and manner of notice to Settlement Class Members; and (iv) the scheduling of a hearing (the "Final Approval Hearing") on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Lead Counsel's and Lead Plaintiff's litigation expenses.  Subject to the Court's availability, Lead Plaintiff respectfully requests that the Court schedule the Final Approval Hearing for a date approximately 110 days after entry of the proposed Preliminary Approval Order (attached as Exhibit A).

## INTRODUCTION

After more than five years of litigation, the parties agreed to the proposed Settlement that provides for, among other things, an all-cash payment of $13 million for the benefit of the Settlement Class. The Settlement was reached after extensive litigation, including a substantial investigation preceding the filing of three detailed complaints, full briefing on Defendants' motions to dismiss the complaints, extensive fact discovery including the service of more than 40 subpoenas by the parties on non-party witnesses, and production and review of over 21.2 million pages of documents produced by PSG's bankruptcy estate and various non-parties. Accordingly, the Settlement was reached only after the parties and their counsel were well-informed as to the strengths and weaknesses of the claims and defenses and after the parties participated in two full-

---

[1] All capitalized terms not defined here have the same meanings as set forth in the Stipulation.

day mediation sessions with an experienced and highly regarded private mediator, Robert A. Meyer, Esq. of Judicial Arbitration and Mediation Services, Inc. ("JAMS"), over the course of 14 months. Moreover, as discussed herein, the Settlement represents a substantial portion of the potential provable damages suffered by the Settlement Class.

Accordingly, Lead Plaintiff and Lead Counsel submit that the proposed Settlement is in the best interests of the Settlement Class and provides a meaningful recovery for the Settlement Class now, and therefore move for certification of the Settlement Class for the purposes of the Settlement, approval of the form and manner of distribution of notice to the Settlement Class, and scheduling of a Final Approval Hearing.

Specifically, Lead Plaintiff requests that the Court enter the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation, which, *inter alia*, will:

(i)    preliminarily approve the Settlement, including all provisions thereof;

(ii)   approve the form and content of the Notice of Pendency of Class Action and Proposed Settlement ("Notice") and Summary Notice of Pendency of Class Action and Proposed Settlement ("Summary Notice"), attached as Exhibits A-1 and A-2 to the Stipulation, respectively;

(iii)  approve the form and content of the Proof of Claim Form, attached as Exhibit A-3 to the Stipulation;

(iv)   preliminarily certify, for the purposes of the Settlement, a Settlement Class of all persons and entities who purchased the common stock of Performance Sports Group Ltd. ("PSG" or the "Company") on a U.S. exchange from January 15, 2015 through October 28, 2016, inclusive; so long as they also purchased at least one share of PSG common stock on a U.S. exchange from January 15, 2015 through March 14, 2016, inclusive (the "Settlement Class");

(v)    preliminarily appoint, for the purposes of the Settlement, Lead Plaintiff as class representative for the Settlement Class, and Lead Counsel as counsel for the Settlement Class;

(vi)   find that the procedures established for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(7), as amended by the Private

2

Securities Litigation Reform Act of 1995 ("PSLRA"); and

(vii)   schedule the Final Approval Hearing and establish a schedule and procedures for: disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement; considering Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

This Action is pending in the United States District Court for the Southern District of New York before the Honorable Gregory H. Woods (the "Court"). The initial complaint was filed on May 13, 2016, and named PSG, Kevin Davis ("Davis"), Amir Rosenthal ("Rosenthal") and Mark Vendetti as defendants. On June 7, 2016, the Court appointed UANPF as Lead Plaintiff and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel. ECF No. 24.

On August 15, 2016, Lead Plaintiff filed its Amended Complaint for Violations of the Federal Securities Laws ("Complaint"), which asserted claims against PSG, Davis and Rosenthal, and no longer asserted claims against Mark Vendetti. On October 31, 2016, PSG and seventeen of its affiliates (collectively with PSG, the "Debtors") filed voluntary bankruptcy petitions in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). PSG's initiation of bankruptcy proceedings in the Bankruptcy Court triggered an automatic stay of this case as to PSG. On November 3, 2016, Lead Plaintiff filed its Second Amended Complaint ("SAC"), ECF No. 86, against Davis and Rosenthal ("Defendants"), but not PSG given its bankruptcy. Rosenthal then moved to extend the stay to the entire action, Davis subsequently joined the motion, and the Court granted their requested stay on January 17, 2017. ECF No. 102.

On February 6, 2017, Lead Plaintiff filed proofs of claim in the Bankruptcy Court on behalf of itself and members of the class defined in the operative amended complaint at the time. Following extensive briefing in the Bankruptcy Court, related briefing in PSG's Canadian bankruptcy proceedings, and a contested hearing held jointly before the U.S. and Canadian

bankruptcy courts, Lead Plaintiff, the Debtors, and the statutory committee of PSG's equity security holders (the "Equity Committee") agreed to settle all issues related to Lead Plaintiff's proofs of claim against PSG.[2]

On November 1, 2017, the Bankruptcy Court approved the settlement among Lead Plaintiff, Debtors, and the Equity Committee. *See In re Old BPSUSH Inc. et al.*, No. 16-12373 (KJC) (Bankr. D. Del.), ECF No. 1466. As part of the settlement, relevant documents, totaling over 20.4 million pages, were produced to Lead Plaintiff. The documents were also produced to Defendants. Upon review of this production, Lead Plaintiff sought and obtained leave to amend, and filed the operative Third Amended Complaint ("TAC") on September 6, 2019, ECF No. 144. The TAC alleges that Defendants violated the Exchange Act by making material misstatements and omissions in PSG's SEC filings and public statements. Defendants deny each and all of Lead Plaintiff's allegations, and further deny that Lead Plaintiff has asserted any valid claims as to them. Defendants assert that no governmental or regulatory authority (including any authority that may have investigated any of the matters addressed by the TAC) has made any findings of wrongdoing with respect to them. For these and other reasons, Defendants therefore maintain that they did not make material misstatements or omissions and that they disclosed all information required to be disclosed by the federal securities laws.

On October 28, 2019, Defendants jointly moved to dismiss the TAC. ECF No. 149. In an opinion issued on April 14, 2020 (the "Order"), this Court denied Defendants' motion to dismiss in substantial part. ECF No. 159. Throughout the spring of 2020, Lead Plaintiff served subpoenas on more than ten non-parties, including, among others, numerous sporting goods manufacturers

---

[2] As this process was unfolding, on May 9, 2017, ECF No. 109, the Court lifted the bankruptcy stay as to Defendants, and the parties briefed Defendants' motion to dismiss the SAC filed on June 22, 2017, ECF No. 114.

and retailers, the Company's auditor KPMG, and Kohlberg & Company ("Kohlberg," a significant minority investor in PSG following its 2014 U.S. IPO), which non-parties collectively produced nearly 743,000 additional pages of documents. As part of this process, Lead Plaintiff conducted numerous meet and confer negotiations with counsel for various non-parties.

During the summer of 2020, Lead Plaintiff and Defendants agreed to explore the possibility of a global resolution of the Action through private mediation. On June 22, 2020, the Court issued an order staying discovery through and including September 30, 2020, so that the parties could engage in mediation. ECF No. 186. The Settling Parties engaged Mr. Meyer of JAMS, and on September 8, 2020, counsel for Lead Plaintiff, counsel for each of the Defendants, and counsel for certain of Defendants' insurers participated in a mediation with Mr. Meyer. Before the mediation, the Settling Parties exchanged extensive written submissions setting forth their positions on liability, damages, and other issues that impacted the risks and potential outcome of the Action. The Settling Parties did not come to an agreement following the mediation, however, and discovery in the case resumed.

Following the resumption of fact discovery, and Lead Plaintiff's filing of its Motion for Class Certification on December 18, 2020, ECF No. 202, the parties engaged in extensive fact- and class-related discovery over the next several months, which included depositions of and production of documents by Lead Plaintiff and its investment manager, the four confidential witnesses cited in the TAC, and both parties' class certification experts. The parties fully briefed both the class certification motion and a motion by Defendants to strike the opinion and testimony of Lead Plaintiff's class certification expert. While Lead Plaintiff's class certification motion was pending the parties began issuing additional deposition subpoenas to fact witnesses, and took the depositions of a former PSG director and partner at Kohlberg, and PSG's former controller.

While the initial round of mediation was not ultimately successful it did lay the framework for continued negotiations and the Settling Parties agreed to engage in a second round of mediation. On July 24, 2021, the Court issued another order staying discovery so that the Settling Parties could resume mediation. ECF No. 251.

On September 14, 2021, the parties engaged in a second round of mediation that resulted in a settlement of the Action. As a result of the intense, arms'-length negotiations during the second mediation session, the Settling Parties agreed, subject to Court approval and certain conditions set forth in this Stipulation, to settle the Action. Following this agreement in principle, the Settling Parties spent substantial time negotiating certain specific terms of the Settlement, which are embodied in the Memorandum of Understanding executed by the Parties on October 18, 2021, and more fully set forth in the Stipulation.

## ARGUMENT

### I.   The Proposed Settlement Class Satisfies the Standards for Class Certification Under Rule 23.

In preliminarily approving the proposed Settlement, this Court must consider whether to certify the Settlement Class under Rules 23(a) and (b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (a trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Fed. R. Civ. P. 23). The Court of Appeals for the Second Circuit has acknowledged the propriety of certifying a class for settlement purposes, *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982) ("[t]emporary settlement classes have proved to be quite useful in resolving major class action disputes"), and their utility in resolving large class actions has been accepted by Courts within this Circuit and beyond. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) (certification of a settlement class "has been recognized throughout the country as the best,

most practical way to effectuate settlements involving large numbers of claims by relatively small claimants").

Rule 23 governs class certification, and requires that: (1) the class be so numerous that joinder of all members is impracticable ("numerosity"); (2) there be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties fairly and adequately protect the interests of the class ("adequacy"). *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority"). The Settlement Class meets each of these requirements.[3]

### A. The Proposed Settlement Class Readily Satisfies the Rule 23(a) Requirements

#### 1. The Proposed Settlement Class Is So Numerous That Joinder Is Impracticable.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed for classes larger than forty members," though plaintiffs need not provide evidence of an exact class size to establish numerosity. *Gruber v. Gilbertson*, No. 16CV9727, 2019 WL 4439415, at *2 (S.D.N.Y. Sept. 17, 2019) (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014)). In securities actions involving nationally listed public companies, numerosity is satisfied by showing that a large

---

[3] Without prejudice to any arguments that they made or could have made in opposition to Lead Plaintiff's Motion for Class Certification, ECF No. 202, Defendants have agreed that the Settlement Class satisfies the requirements for certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure only for purposes of the Settlement described herein and for no other purpose.

number of shares were outstanding and traded during the time period. *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

The proposed Settlement Class here consists of all persons who purchased or acquired the millions of shares of PSG common stock that traded during the Class Period on the New York Stock Exchange ("NYSE").[4] TAC ¶¶ 7, 28-30, 121, 126, 128, 131, 137, 215; Coffman Report ¶ 68 (42.85 million shares of PSG stock were outstanding during the Class Period). ECF 204-1. Although the exact number of class members has yet to be determined, based on the millions of shares issued and their trading on the NYSE, Settlement Class members likely number in at least the thousands and are geographically dispersed. Joinder of parties so numerous and widespread would be burdensome, expensive, and impracticable for both the parties and the judicial system, confirming that Rule 23(a)(1) is satisfied. *See, e.g.*, *In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2002 WL 461513, at *3 (S.D.N.Y. Mar. 26, 2002) (numerosity satisfied where 15.5 million shares of stock traded).

### 2. The Action Raises Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is a "low hurdle," *Gruber*, 2019 WL 4439415, at *3, requiring only that class members' claims depend upon at least one "common contention … capable of classwide resolution – which means that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[4] The Settlement Class is defined to include shares transacted on "a U.S. exchange" in order to encompass shares of PSG that, although listed on the NYSE, were transacted on another domestic exchange.

Here, commonality is met due to common questions of law and fact pertaining to whether Defendants misstated or omitted the disclosure of material facts regarding PSG's sales practices, risks, and internal controls in SEC filings and other public statements; whether the alleged misstatements and omissions were made with scienter; and the extent of damages sustained by Settlement Class Members as well as the appropriate measure of damages. These are all common questions because each Settlement Class Member must prove the same elements to establish Defendants' liability. This is sufficient to satisfy Rule 23(a)(2). *See Gruber*, 2019 WL 4439415, at *3; *see also Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 475 (2013) ("the falsity or misleading nature of the defendants' alleged statements or omissions are common questions"); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014) ("*Halliburton II*") ("materiality is an objective issue susceptible to common, classwide proof").

### 3. The Class Representative's Claims Are Typical of the Settlement Class

Typicality under Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015). The "claims only need to share the same essential characteristics, and need not be identical." *Gruber*, 2019 WL 4439415, at *3. When determining whether the claims are typical, "'the focus must be on the defendants' behavior and not that of the plaintiffs.'" *Tchrs. Ret. Sys. of La. v. ACLN Ltd.*, No. 01 CV 11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004). Courts in this District have emphasized that the typicality requirement is "not demanding." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018).

Lead Plaintiff's claims are typical of the claims of all other proposed Settlement Class Members. Lead Plaintiff and the proposed Settlement Class all purchased PSG common stock during the Class Period, all allege Defendants misstated and omitted the same material facts, and

all bring the same claims against the same Defendants as a result. Given that each Settlement Class Member's claims turn upon the very same facts and legal theories, and will be proven by the same evidence, typicality is satisfied, as courts regularly find under similar circumstances. *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. at 81 (finding typicality where the "Court has found that all class members' claims arise from a single, common course of conduct committed against all members of the class"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015) (same).

### 4. Lead Plaintiff Has Fairly and Adequately Protected the Interests of the Settlement Class

"Rule 23(a)(4) requires that the representative of the parties will fairly and adequately protect the interests of the class." *MF Glob. Holdings*, 310 F.R.D. at 237. A determination of adequacy asks whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. at 81. Like typicality, the "adequacy requirement is not demanding," *Wallace v. IntraLinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014), and both elements of Rule 23(a)(4) are met here.

*First*, Lead Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class. Lead Plaintiff purchased PSG common stock during the Class Period and was damaged thereby and seeks, on its own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (no conflict between lead plaintiff and proposed class where both suffered the same injury, monetary losses due to defendant's conduct). Because of this injury Lead Plaintiff has an "interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Lead

Plaintiff has remained engaged throughout the litigation and settlement process, communicating regularly with counsel, and has dutifully represented the Settlement Class. Accordingly, Lead Plaintiff is an adequate class representative.

*Second*, Rule 23(g) requires a court to assess the adequacy of proposed class counsel. Fed. R. Civ. P. 23(g). Lead Counsel has vigorously prosecuted the Settlement Class Members' claims and expended significant time and effort throughout the litigation. Lead Counsel is also experienced in prosecuting class actions having successfully prosecuted securities class actions in courts throughout the country. Lead Counsel's firm resume was submitted to the Court as ECF No. 204-2.

Lead Counsel utilized its skill and resources to reach this proposed Settlement. The Settlement was achieved only after Lead Counsel investigated and drafted three detailed amended complaints and defeated Defendants' motion to dismiss (in substantial part). Counsel spent considerable time on this action for the benefit of PSG shareholders over the course of five years, including: conducting a thorough investigation with the assistance of an investigator and experts; skillfully navigating the PSG bankruptcy proceeding and securing a settlement that provided Lead Counsel with more than 20 million pages of documents on which Lead Plaintiff relied in formulating the TAC's allegations[5]; successfully opposing Defendants' motion to dismiss; fully briefing multiple motions, including a motion for class certification and a motion to exclude Lead Plaintiff's expert; participating in numerous depositions and reviewing over 21.2 million pages of

---

[5] The bankruptcy settlement also yielded $1,150,000 in proceeds, less expenses already paid, which is being held by the Escrow Agent (together with the Escrow Account, into which Defendants' Insurance Carriers in this Action will deposit the Settlement Amount).  Although this settlement has already been approved by the Bankruptcy Court and does not require the approval of this Court, *see In re Old BPSUSH Inc., et al.*, No. 16-12373 (KJC) (Bankr. D. Del.), ECF No. 1466, these proceeds will be included in, and distributed to the Settlement Class contemporaneously with, the Net Settlement Fund in this Action.

documents; preparing for and participating in two separate day-long mediation sessions including drafting a mediation statement and supplemental mediation submissions; and negotiating and drafting the Stipulation, proposed Notices, and the instant motion. Lead Counsel's significant securities class action experience makes it knowledgeable and capable of evaluating cases to determine whether a settlement is beneficial to investors or whether the prudent course would be to continue litigation, and has applied that experience in obtaining an all-cash $13 million Settlement here. Lead Counsel should thus be appointed as Class Counsel for the Settlement Class.

Lead Plaintiff is an adequate representative for the Settlement Class and Lead Counsel satisfies Rule 23(g). *See MF Glob. Holdings*, 310 F.R.D. at 237. Accordingly, the Court should appoint Lead Plaintiff as Settlement Class representative and Lead Counsel as Settlement Class counsel for the purposes of this Settlement.

### B.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), a class action must satisfy at least one of the three Rule 23(b) requirements. Here, Lead Plaintiff moves for class certification under Rule 23(b)(3), which authorizes certification where: (i) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This Action satisfies both of those conditions.

#### 1.   Common Questions of Law and Fact Predominate Over Individual Questions

"Predominance is a test readily met in certain cases alleging … securities [claims]." *Amchem Prods.*, 521 U.S. at 625; *see also Basic Inc. v. Levinson*, 485 U.S. 224 (1988). A plaintiff is not required to show that there are *no* individual issues. *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012). "'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine

controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). In assessing predominance, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class." *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 210 (S.D.N.Y. 2012).

Under Section 10(b), plaintiffs must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci. Atlanta*, 552 U.S. 148, 157 (2008). Materiality, loss causation, and "the falsity or misleading nature of the defendant's alleged statements or omissions are common questions." *Amgen*, 568 U.S. at 474-75; *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("*Halliburton I*"). The same is true of scienter. *See In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 147 (S.D.N.Y. 2019). These elements are also common as to Lead Plaintiff's Section 20(a) claim because Defendants' liability as control persons does not vary among proposed Settlement Class Members. The remaining elements of a Section 10(b) claim—reliance and damages—will also be established with common proof on a class-wide basis.

### 2.   A Class Action Is the Superior Means of Resolving This Dispute

"Securities suits easily" satisfy Rule 23(b)(3)'s second requirement, that a class action is superior to other methods for adjudicating the controversy, "because 'the alternatives are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'" *MF Glob. Holdings*, 310 F.R.D. at 239.

The same logic applies here. With thousands of geographically dispersed Settlement Class Members, if the Court does not certify the Settlement Class the alternative to resolving this dispute

as a class action is a multiplicity of suits throughout the United States, risking conflicting decisions and a severely inefficient administration of justice – precisely the "evil that [class actions were] designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 141 (S.D.N.Y. 2012) ("Concentrating litigation in this forum is desirable because the Court is familiar with the history of this case, having ruled on earlier motions and discovery disputes."). Moreover, "in the absence of class certification . . . many putative class members – particularly, retail investors – would also be discouraged from even seeking legal relief as their potential recovery would be outweighed by the transaction costs of individual litigation." *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 518 (S.D.N.Y 2002). Nor is there any reason to expect difficulties in the management of this case as a class action. *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02-CV-4483 (RCC), 2007 WL 1280640, at \*8 (S.D.N.Y. Apr. 30, 2007) ("[I]n Rule 23(b)(3) securities fraud cases, this Circuit has expressed a strong preference in favor of using judicial management tools, rather than refusing to certify a class for management reasons."). Thus, the class action device is superior to any other means to adjudicate this Action and militates in favor of the Court certifying the Settlement Class.

## II.   The Proposed Settlement Warrants Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any class action settlement. Though approving a settlement is "within the Court's discretion," the Court should exercise that discretion "in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (internal quotations omitted). And "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007).

A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval, where "prior to notice to the class a court makes a preliminary evaluation of fairness," and (2) final approval, where "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 691-92. "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

In December 2018, new amendments to Rule 23 took effect that altered the standards guiding a court's preliminary approval analysis. Before these changes took effect, Rule 23 did not specify a standard, and courts in the Second Circuit interpreted Rule 23 to only require that the settlement be "within the range of possible approval." *Id.* Under the new, more exacting standards, a district court must consider whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).

To be likely to approve a proposed settlement under Rule 23(e)(2), the Court should find "that it is fair, reasonable, and adequate," after considering four factors: (i) "the class representatives and class counsel have adequately represented the class," (ii) "the proposal was negotiated at arm's length," (iii) "the relief provided for the class is adequate," and (iv) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(1)-(2). Before the 2018 amendments to Rule 23, courts in the Second Circuit considered whether a settlement was fair, reasonable, and adequate under nine factors set out in *City of Detroit v. Grinnell Corp.*,

495 F.2d 448, 463 (2d Cir. 1974).[6] The Advisory Committee Notes to the 2018 amendments show

that the four new Rule 23 factors were intended to supplement rather than displace these "*Grinnell*"

factors. *See* 2018 Advisory Committee Notes to Fed. R. Civ. P. 23, subdiv. (e)(2) ("2018 Adv.

Comm. Note"); *In re Payment Card*, 330 F.R.D. at 29 (explaining that the four Rule 23(e)(2)

factors  "add to, rather than displace, the *Grinnell* factors"). Thus, the discussion below includes

both sets of factors, noting where they overlap.[7]

### A. The Proposed Settlement Satisfies Rule 23(e)(2) and the Relevant *Grinnell* Factors

#### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel

have adequately represented the class" before preliminarily approving a settlement.

"Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are

antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified,

experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards &

Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec.

Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

---

[6] The nine *Grinnell* factors are: (i) "the complexity, expense and likely duration of the litigation," (ii) "the reaction of the class to the settlement," (iii) "the stage of the proceedings and the amount of discovery completed," (iv) "the risks of establishing liability," (v) "the risks of establishing damages," (vi) "the risks of maintaining the class through the trial," (vii) "the ability of the defendants to withstand a greater judgment," (viii) "the range of reasonableness of the settlement fund in light of the best possible recovery," and (ix) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re Payment Card*, 330 F.R.D. at 29.

[7] The Court need not consider the second *Grinnell* factor, which requires the Court to evaluate the reaction of the settlement class, "because consideration of this factor is generally premature at the preliminary approval stage." *In re GSE Bonds*, 414 F. Supp. 3d at 699; *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

As discussed more fully above in section I.A.4, Lead Plaintiff's interests are aligned with other class members' interests because they suffered the same alleged injuries: losses resulting from allegedly false statements and omissions made in connection with PSG's SEC filings and public statements. Because of these alleged injuries, Lead Plaintiff has an "interest in vigorously pursuing the claims of the class." *Denney*, 443 F.3d at 268. Lead Counsel have also shown that "they are qualified, experienced, and able to conduct the litigation, as evidenced in their interactions with the Court as well as with a mediator." *In re GSE Bonds*, 414 F. Supp. 3d at 692. Thus, Rule 23(e)(2)(A) supports approval.

### 2.      The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires procedural fairness, by showing that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Further, a mediator's involvement in settlement negotiations can help show their fairness. *In re Payment Card*, 330 F.R.D. at 35; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (explaining that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the proposed Settlement is "the product of serious, informed, non-collusive negotiations," as the Settling Parties' negotiations were conducted at arm's-length, in separate mediations over a 14-month period during which discovery actively proceeded and class certification was fully briefed, and with the assistance and facilitation of an experienced and well-respected mediator; this process required all parties and their counsel to assess difficult and uncertain outcomes. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005)

(finding proposed settlement the product of non-collusive negotiations where settlement negotiations were facilitated by an experienced and well-respected mediator). Rule 23(e)(2)(B) thus favors preliminary approval.

### 3.  The Relief Provided to the Settlement Class Is Adequate

Under Rule 23(e)(2)(C), the Court should determine whether "the relief provided for the class is adequate" after considering (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." This inquiry overlaps significantly with several of the *Grinnell* factors, which may "guide the Court's application of Rule 23(e)(2)(C)(i)." *In re GSE Bonds*, 414 F. Supp. 3d at 693 (citing *In re Payment Card*, 330 F.R.D. at 36).

### a)  The Costs, Risks, and Delay of Trial and Appeal

To assess adequacy under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *In re Payment Card*, 330 F.R.D. at 36 (citing the 2018 Adv. Comm. Note). "This inquiry overlaps significantly with a number of *Grinnell* factors," *In re GSE Bonds*, 414 F. Supp. 3d at 693, including (i) the complexity, expense, and likely duration of the litigation (the first *Grinnell* factor), and (ii) the risks of establishing liability and damages (the fourth and fifth *Grinnell* factors), and (iii) the risks of maintaining the class through trial (the sixth *Grinnell* factor).

*First*, the "complexity, expense and likely duration of the litigation" support preliminary approval. *Grinnell*, 495 F.2d at 463. "Courts recognize that securities class actions are generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *In re Am. Bank Note Holographics, Inc.*, 127 F.

Supp. 2d 418, 424 (S.D.N.Y. 2001) ("[M]ost securities fraud cases, are complex and challenging as regards both liability and damage."). This case is no different, and involves numerous and "complex issues of fact and law" related to the misstatements and omissions alleged in the TAC. *See In re GSE Bonds*, 414 F. Supp. 3d at 693-94. And even if plaintiff "were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all." *Sykes v. Harris*, No. 09-cv-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016).

*Second*, the "risks of establishing liability" and "the risks of establishing damages" also favor preliminarily approving the proposed Settlement. *Grinnell*, 495 F.2d at 463. To assess these factors, a court "should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In re Payment Card*, 330 F.R.D. at 37. These factors do "not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). "Courts approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Id.*

Here, there were substantial risks of establishing liability and damages and further prosecution may have yielded limited or no recovery. Although Lead Plaintiff defeated the motion to dismiss (in substantial part), this was no guarantee as to continued success in the case or as to establishing liability against Defendants. Even if Lead Plaintiff established that Defendants had made a false statement or omission, Lead Plaintiff would encounter significant loss causation and damages defenses as Defendants would have challenged Lead Plaintiff's methodology for computing damages and sought to disaggregate the portion of any decline in the price of PSG stock

allegedly caused by the alleged false statements and omissions from the portion caused by other confounding factors. Even if it survived summary judgment, Lead Plaintiff would then have to establish each element of its claims and damages to a jury's satisfaction, over vigorous opposition from Defendants.

*Third*, the sixth *Grinnell* factor, the "risks of maintaining a class through trial," also weighs in favor of settlement as the Court has yet to issue its ruling on Lead Plaintiff's motion for class certification. Defendants have vigorously opposed the class certification motion and sought to strike the opinion and testimony of Lead Plaintiff's expert and would no doubt continue to contest class certification if the case were to continue to be litigated. *Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011) (citation omitted). "This suggests that the maintenance of the class would not be guaranteed if settling defendants went to trial. This factor thus also weighs in favor of preliminary approval." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 694.

Thus, these three *Grinnell* factors also support preliminary approval.

### b) The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, 2018 Adv. Comm. Note. Furthermore, while the plan of allocation "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)). "[N]umerous courts have held ... [that] a plan of allocation need not be perfect." *In re EVCI Career*

*Colls. Holding Corp.*, 2007 WL 2230177, at *11 (collecting cases). The court's "principal obligation is simply to ensure that the fund distribution is fair and reasonable." *In re Am. Bank Note*, 127 F. Supp. 2d at 429-30.

Here, the proposed Plan of Allocation contained in the Notice (*see* Stipulation at Ex. A-1) was prepared with the assistance of Lead Plaintiff's damages consultant, Global Economics Group, which has significant experience in drafting plans of allocation. The Plan of Allocation provides a reasonable, rational basis for Settlement Class Members to recover their *pro rata* damages based on the dates of their PSG common stock transactions. In particular, the Plan of Allocation allocates losses to Authorized Claimants based on whether they held stock contemporaneously with various alleged corrective disclosures in the Action, and the amount of artificial inflation on those dates. The Plan of Allocation also applies the statutory limitations on damages contained in the PSLRA. *See* 15 U.S.C. § 78u-4(e). This factor thus supports preliminary approval. *See Danieli v. IBM Corp.*, No. 08-cv-3688, 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of allocation where it "is rationally related to the relative strengths and weaknesses of the respective claims asserted" and falls within the range of possible approval).

### c) Attorneys' Fees and Litigation Expenses

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." The total Settlement Fund will consist of the $13 million Settlement Amount paid on behalf of Defendants; $1,150,000 in proceeds from the settlement in the Bankruptcy Court, less expenses already paid; and accrued interest. Lead Counsel will apply for an award of attorneys' fees not to exceed 28% of the Settlement Fund plus reimbursement of Litigation Expenses. Within three (3) business days after entry by the Court of an order awarding Lead Counsel's attorneys' fees and Litigation Expenses, "any awarded attorneys' fees and Litigation Expenses shall be paid to Lead Counsel from the Escrow Account

by the Escrow Agent." Stipulation ¶ 28. If the Settlement is terminated or the fee and expense order is reversed or modified, then Lead Counsel will refund to the Escrow Account any fees paid within 10 business days. *Id.*

Courts in this District have approved fees as high as 28% from comparable class settlement funds, finding that they are well within the applicable range of reasonable percentage fund awards. *See, e.g.*, *In re IMAX Sec. Litig.*, Civ. No. 06-6128, 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) (33% of $12 million settlement); *In re Dynex Capital, Inc. Sec. Litig.*, Civ. No. 05-1897 (S.D.N.Y. Mar. 13, 2012) (32% of $7.5 million settlement); *In re Sadia Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) (30% of $27 million settlement); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) (30% of $24.4 million settlement). The proposed fee of up to 28% of the Settlement Fund thus does not weigh against preliminary approval of the proposed Settlement.

### d) Agreements Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." The Settling Parties have entered into one such agreement, which establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specified number of shares of PSG common stock request exclusion (or "opt out") from the Settlement. Such supplemental agreements are customary in securities class action settlements and their confidentiality "avoid[s] the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *In re Take Two Interactive*

*Sec. Litig.*, No. 06-cv-1131 (RJS), 2010 WL 11613684, at *11-12 (S.D.N.Y. June 29, 2010) (noting side letter agreement and preliminarily approving settlement).

>    e)   **The Remaining *Grinnell* Adequacy Factors Support Preliminary Approval**

Together with the enumerated factors set forth in Rule 23(e)(2)(C), several other *Grinnell* factors are relevant to the adequacy inquiry, including (i) "the ability of the defendants to withstand a greater judgment" (the seventh *Grinnell* factor), and (ii) "the range of reasonableness of the settlement fund in light of the best possible recovery" and "all the attendant risks of litigation" (the eighth and ninth *Grinnell* factors). These factors either favor preliminary approval or, at worst, are neutral.

*First*, it is important to note that the former corporate defendant in the Action, PSG, is now bankrupt, and that Defendants (both individuals) were unwilling to contribute to the Settlement personally including, without limitation, because Defendants believe the TAC's allegations lack merit and because, in Lead Counsel's judgment, Defendants had insufficient assets to satisfy a judgment. Consequently, the recovery Lead Plaintiff obtained for the Settlement Class was, practically speaking, confined to the limits of Defendants' D&O insurance policies, a significant portion of which had already been spent (and the remainder of which was rapidly eroding) at the time the Settlement was reached.

*Second*, by any measure, the $13 million proposed Settlement represents a recovery well within the "range of reasonableness in light of the best possible recovery" and "all the attendant risks of litigation." *See In re GSE Bonds*, 414 F. Supp. 3d at 696 (explaining that courts often consider the eighth and ninth *Grinnell* factors together). According to Lead Plaintiff's damages consultant, the Settlement represents approximately 6.8% of Lead Plaintiff's estimated recoverable

damages.[8] Settlements in this range of recovery have routinely received approval by courts as representing recoveries that are fair, reasonable, and adequate. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07-cv-7895(DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *see also In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09-cv-1293 (VLB), 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (noting that a settlement obtaining 3.5% of the "most aggressive estimate of maximum provable damages . . . exceeds the average recovery in shareholder litigation" and affirming an average range of 3% to 7% recoveries) (citing *In re China Sunergy*, 2011 WL 1899715, at *5); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 WL 4730185, at *7 (D.N.J. Dec. 4, 2009) (approving settlement at "slightly below 10% of the total realizable value of the action" which was "well over the average settlement amounts in securities fraud class actions").

The proposed Settlement is also well within the range of reasonableness given "all the attendant risks of litigation," because it will allow the Settlement Class to recover a significant portion of their damages now rather than a possible recovery (or no recovery at all) after years of uncertain litigation and a far-from-guaranteed jury verdict. *See In re AOL Time Warner, Inc.*, No. 02-cv-5575 (SKW), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (immediate, substantial and concrete benefit of settlement outweighs possibility of higher recovery after trial). Indeed, even if Lead Plaintiff were to obtain a favorable jury verdict that would survive the inevitable round of appeals, there would undoubtedly be insufficient insurance policy proceeds, if any remained at all,

---

[8] Including the proceeds from the settlement in the Bankruptcy Court, total recoveries represent approximately 7.4% of Lead Plaintiff's estimated recoverable damages.

to satisfy a substantial judgment – or fund a settlement of greater or even equal size to the proposed Settlement – years down the road.

Thus, the seventh, eighth, and ninth *Grinnell* factors are either neutral or support preliminary approval of the proposed Settlement.

### 4.   Settlement Class Members Are Treated Equitably by the Plan of Allocation

Finally, Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, 2018 Adv. Comm. Note. Under the proposed Plan of Allocation, Claimants will be treated equitably by receiving a *pro rata* share of the recovery. Stipulation at Ex. A-1 ¶¶ 37-38; *see Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity"). Thus, Rule 23(e)(2)(d) supports preliminary approval of the Settlement.

### B.   The Stage of the Proceedings and Amount of Discovery Completed Supports Preliminary Approval

Along with the factors discussed above, "the stage of the proceedings and the amount of discovery completed" (the third *Grinnell* factor) also supports preliminary approval. To assess this factor, courts examine whether plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement. *In re AOL Time Warner*, 2006 WL 903236, at *10.

Here, the Settling Parties engaged in meaningful, extensive discovery before beginning the mediation process, including the production, and Lead Counsel's review, of more than 20.4 million

pages of documents produced by the PSG bankruptcy estate and of nearly 743,000 pages of documents produced by non-parties, including KPMG and Kohlberg. Defendants pursued discovery vigorously, serving subpoenas on more than 30 nonparties, and taking the depositions of the four confidential witnesses cited in the TAC, as well as a deposition of a former PSG officer and one director, all of whom Lead Plaintiff cross-examined. At the time the Settlement was reached, the Settling Parties had collectively taken the depositions of eight fact witnesses, including a representative of Lead Plaintiff and its investment manager and certain former employees of PSG, and had scheduled and were preparing to take 18 more. Lead Counsel also retained experts who assisted Lead Counsel in evaluating damages, loss causation, and accounting issues, as well as bankruptcy counsel in both the U.S. and Canada, and both sides' class certification experts were deposed in connection with Lead Plaintiff's motion for class certification. Notably, Lead Counsel had engaged in this discovery without the benefit of any finding of wrongdoing on Defendants' part by any governmental or regulatory authority. That the Settlement followed this discovery and analysis shows that the Settling Parties—and Lead Plaintiff and Lead Counsel in particular—had extensive information to properly evaluate the strengths and weaknesses of the claims and defenses asserted in the Action, as well as the cost and duration of the litigation if the case did not settle.

This extensive understanding of the strengths and weaknesses of the claims bolsters a preliminary finding that the Settlement is adequate and reasonable. Moreover, here, each of these factors was considered by counsel who are experienced in handling large, complex litigation such as this case, which consideration also supports preliminary approval. *Initial Pub. Offering*, 226 F.R.D. at 194 (preliminarily approving settlement where "[t]he settling parties are represented by experienced and talented counsel that share expertise in this field and an extensive knowledge of

the details of this case"); *see also Great Neck Cap'l Appreciation Inv. P'ship, LP v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("[T]he settlement was reached after PwC's motion to dismiss had been decided and after merits discovery was well underway. Thus, plaintiffs' counsel's evaluation of the case was based on a reasonable amount of information.").

*     *     *

In sum, nothing during the Settling Parties' negotiations of the terms of the Settlement reveals any grounds to doubt the fairness of the Settlement.

### III.  The Proposed Form and Method of Class Notice Are Adequate

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). The notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the due process clause of the U.S. Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'").

### A.  The Scope of the Notice Program Is Adequate Under Rule 23

Following a competitive bidding process, Lead Counsel selected Strategic Claims Services ("SCS"), a highly experienced class action claims administrator, to serve as the Claims Administrator for the proposed Settlement. For more than two decades, SCS has administered class action settlements. *See generally* "Who We Are," https://www.strategicclaims.net (last visited November 10, 2021). The Settling Parties propose that 21 days after the entry of the proposed Preliminary Approval Order, the Claims Administrator send the Notice (attached as Exhibit A-1 to the Stipulation), which explains the Action and proposed Settlement, to all members of the Settlement Class who can be identified through reasonable effort including by review of lists of shareholders on file in the Bankruptcy Court, or through brokers holding shares on behalf of beneficial owners. The Settling Parties also propose that the Claims Administrator cause a Summary Notice to be published, which summarizes the Action and the proposed Settlement and explains how to obtain the more detailed Notice and Proof of Claim Form. The Settling Parties further propose that the Summary Notice be published in *Investor's Business Daily* as well as transmitted over *PR Newswire* not later than thirty-five (35) days after the entry of the proposed Preliminary Approval Order (subject to Court approval).

Lead Counsel has also instructed SCS to maintain a settlement website, at www.psgsecuritieslitigation.com. This website will explain the Settlement, and include downloadable copies of the Notice, Proof of Claim Form, and Stipulation. SCS will also maintain a toll-free telephone number for Settlement Class Members to call with any questions. The Preliminary Approval Order, Notice, and Proof of Claim Form will also be available on Lead Counsel's website at www.cohenmilstein.com.

**B.  The Proposed Form of Notice Program Meets the Requirements of Due Process, the PSLRA, and Rule 23**

Here, the proposed Notice also includes all the information required by Rule 23(c)(2)(B), including "the nature of the action" (¶¶ 1, 14-16), "the definition of the class certified" (¶ 2), "the class claims, issues, or defenses" (¶¶ 2, 14-16); (ii) "that a class member may enter an appearance through an attorney if the member so desires" (¶¶ 51, 63); (iii) "that the court will exclude from the class any member who requests exclusion" and "the time and manner for requesting exclusion" (¶¶ 54-65); and (vii) "the binding effect of a class judgment on members under Rule 23(c)(3)" (¶¶ 43-48). Fed. R. Civ. P. 23(c)(2)(V)(i)-(vii). Likewise, the proposed Notice includes all the information required by the PSLRA, including a statement of class members' recovery (¶ 3), a statement of the issues on which the parties disagree (¶ 5), a statement of the attorneys' fees and costs sought (¶ 6), identification of counsel (¶ 7), and a statement of the reasons for the settlement (¶¶ 17-19). *See* 15 U.S.C. § 78u-4(a)(7) (listing required disclosures).

As described above and further outlined in the proposed Preliminary Approval Order, the Claims Administrator will (i) notify Settlement Class Members of the Settlement by mailing the Notice and Proof of Claim Form to all potential Settlement Class Members who can be identified with reasonable effort, (ii) cause the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*, and (iii) maintain  website with relevant information at www.psgsecuritieslitigation.com. Notice programs such as this are frequently approved in connection with class action settlements. *See, e.g.*, *N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC, et al.*, No. 08-cv-5093 (S.D.N.Y. July 18, 2014) (ECF No. 270) (approving notice program where notice was mailed to reasonably ascertainable class members and broker-dealer nominees, summary notice was published, and settlement website and toll-free number were maintained by claims administrator); *In re Advanced Battery Techs. Sec. Litig.*, 298

F.R.D. 171, 183 (S.D.N.Y. 2014) (notice program approved where claims administrator publicized notice to reasonably ascertainable class members and published summary notice in *Investor's Business Daily* and over *PR Newswire*); *In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, No. 02-MDL-1484, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007) (notice program approved where claims administrator publicized notice and plan of allocation to class members and published summary notice "in appropriate publications").

Lead Plaintiff's proposed manner of providing notice, which includes individual notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process, Rule 23, and the PSLRA. *See In re Warner Chilcott*, 2008 WL 5110904, at *3; *In re Glob. Crossing*, 225 F.R.D. at 448-49. Thus, Lead Plaintiff requests that the Court approve the form and the content of the proposed Notice.

## IV. Proposed Schedule of Events

Lead Plaintiff proposes the schedule attached as Appendix A under the proposed Preliminary Approval Order, paragraphs of which are referenced in the chart. This schedule is like those used in similar class action settlements and provides due process for potential Settlement Class Members related to their rights concerning the Settlement.

CONCLUSION

Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to Settlement Class Members; (iii) preliminarily certify the Settlement Class; and (iv) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses. A proposed Preliminary Approval Order is being filed contemporaneously, as Exhibit A to the Stipulation.

Dated: December 1, 2021

Respectfully submitted,

*/s/ Carol V. Gilden*

COHEN MILSTEIN SELLERS & TOLL PLLC
Carol V. Gilden
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369

Steven J. Toll (*pro hac vice*)
S. Douglas Bunch (SB-3028)
Joshua C. Handelsman (*pro hac vice*)
1100 New York Avenue, N.W. │ Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

*Attorneys for Lead Plaintiff United Association*
*National Pension Fund and Lead Counsel for the*
*Class*

O'DONOGHUE & O'DONOGHUE LLP
Louis P. Malone III
5301 Wisconsin Ave. N.W.
Suite 800
Washington, DC 20015
Tel.: (202) 362-0041
Fax: (202) 362-2640

*Additional Attorneys for Lead Plaintiff United*
*Association National Pension Fund and Lead*
*Counsel for the Class*

**Appendix A: Proposed Schedule Reflected in Preliminary Approval Order**

| Event | Proposed Date/Deadline |
|---|---|
| **Deadline to Begin Mailing Long-Form Notice to Settlement Class Members** | No later than 21 days after Preliminary Approval Order is entered. (¶ 7(a)) |
| **Deadline to Publish Summary Notice** | No later than 35 days after Preliminary Approval Order is entered. (¶ 7(b)) |
| **Deadline to File Motions for Final Approval of Settlement and for Attorneys' Fees and Reimbursement of Litigation Expenses** | 35 days before Final Approval Hearing. (¶ 11) |
| **Deadline for Receipt of Requests for Exclusion from Settlement** | 21 days before Final Approval Hearing. (¶ 20) |
| **Deadline to File and Serve Objections to Final Approval or to Requests for Attorneys' Fees and Reimbursement of Litigation Expenses** | 21 days before Final Approval Hearing. (¶ 12) |
| **Deadline to Reply to Objections, if any** | 7 days before Final Approval Hearing. (¶ 11) |
| **Deadline to File Papers in Further Support of Final Approval of Settlement or Requests for Attorneys' Fees and Reimbursement of Litigation Expenses** | 7 days before Final Approval Hearing. (¶ 11) |
| **Final Approval Hearing** | Approximately 110 days after the Preliminary Approval Order is entered. Assuming that Order is entered on or about December 22, the Final Approval Hearing could take place on or around April 11, subject to the Court's availability. (¶ 10) |
| **Deadline for Submission of Proof of Claim Forms** | 120 days after Preliminary Approval Order is entered. (¶ 17) |