EXECUTION COPY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X
PLUMBERS & PIPEFITTERS NATIONAL
PENSION FUND, and JUAN FRANCISCO
NIEVES, as Trustee of the Gonzalez Coronado
Trust, Individually and on Behalf of All Others
Similarly Situated,                                          Case No.: 1:16-cv-3591-GHW

                         Plaintiff,

            vs.

KEVIN DAVIS and AMIR ROSENTHAL,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X


## STIPULATION AND AGREEMENT OF SETTLEMENT

EXECUTION COPY

This Stipulation and Agreement of Settlement, dated as of December 1, 2021 (the "Stipulation" and the "Settlement," respectively) is made and entered into between United Association National Pension Fund, f/k/a Plumbers & Pipefitters National Pension Fund ("UANPF" or "Lead Plaintiff"), on behalf of itself and each of the Settlement Class Members (as defined below), and Kevin Davis and Amir Rosenthal ("Defendants"), by and through their undersigned respective counsel and subject to approval of the U.S. District Court for the Southern District of New York pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

The Settling Parties (as defined below) are entering into this Settlement solely to avoid the expense and uncertainty of continued litigation, without any admission of liability, wrongdoing, or fault by any of the Settling Parties, and without conceding the strength or weakness of any claims or defenses. The Settlement is intended by the Settling Parties to fully, finally and forever compromise, resolve, discharge and settle the Released Claims as against Defendants' Releasees and result in the complete dismissal of this Action (as those terms are defined below) with prejudice, upon and subject to the terms and conditions herein.

**WHEREAS:**

A.      All terms with initial capitalization not otherwise defined in the text hereof shall have the meanings ascribed to them in paragraph 1 below.

B.      On May 13, 2016, plaintiff Juan Francisco Nieves, as Trustee of the Gonzalez Coronado Trust, filed a purported class action complaint, No. 1:16-cv-03591-GHW, ECF No. 2, against Performance Sports Group Ltd. ("PSG" or the "Company") and three of its former officers, namely Kevin Davis, Amir Rosenthal and Mark Vendetti, in the U.S. District Court for the Southern District of New York (the "Court" or "District Court"), on behalf of a putative class comprised of purchasers of the Company's common stock between January 15, 2015 and March 14, 2016, inclusive, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5, and was assigned to the Honorable Gregory H. Woods.

1

EXECUTION COPY

C.      On June 7, 2016, the Court appointed UANPF as Lead Plaintiff and approved Lead Plaintiff's selection of Cohen Milstein Sellers & Toll PLLC as Lead Counsel, ECF No. 24.

D.      On August 15, 2016, Lead Plaintiff filed an Amended Complaint on behalf of a class comprised of purchasers of the Company's common stock between January 15, 2015 and March 14, 2016, inclusive, ECF No. 62. The Amended Complaint asserted claims against PSG and Defendants but no longer asserted any claims against Mark Vendetti.

E.      On October 13, 2016, PSG and Defendants filed a joint motion to dismiss, ECF No. 81.

F.      On October 31, 2016, PSG and seventeen of its affiliates (collectively with PSG, the "Debtors") filed voluntary bankruptcy petitions in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). PSG's initiation of bankruptcy proceedings in the Bankruptcy Court triggered an automatic stay of this case as to PSG.

G.      On November 3, 2016, Lead Plaintiff filed the Second Amended Complaint ("SAC"), ECF No. 86, removing PSG as a defendant given its bankruptcy.

H.      On November 7, 2016, PSG filed notice of an automatic stay of the proceedings against it in this Action pursuant to 11 U.S.C. § 362, ECF No. 87.

I.      On November 18, 2016, Rosenthal moved to extend the automatic stay that applied to PSG to himself and Davis (who then joined the stay motion) as well, ECF No. Nos. 90, 94.

J.      On January 17, 2017, the Court granted Defendants' requested stay, ECF No. 102.

K.      On February 6, 2017, Lead Plaintiff filed two proofs of claim in the Bankruptcy Court on behalf of itself and certain class members. Following extensive briefing in the Bankruptcy Court, related briefing in PSG's Canadian bankruptcy proceedings, and a hearing held jointly before the U.S. and Canadian bankruptcy courts, Lead Plaintiff, the Debtors, and the statutory committee of PSG's equity security holders (the "Equity Committee") agreed to settle all issues related to Lead Plaintiff's proofs of claim against PSG.

L.      On May 9, 2017, as this process was unfolding, the Court lifted the bankruptcy stay as to Defendants, ECF No. 109.

EXECUTION COPY

M.      On June 22, 2017, Defendants filed a motion to dismiss the SAC, ECF No. 114, which the parties to this Action fully briefed.

N.      On November 1, 2017, the Bankruptcy Court approved the settlement among Lead Plaintiff, Debtors, and the Equity Committee, which resulted in the settlement class receiving $1.15 million plus a contingent interest in any claims brought by the Bankruptcy Trustee. To date, those claims have resulted in no recovery and are currently on appeal before the Third Circuit. *See In re Old BPSUSH Inc., et al.*, No. 16-12373 (KJC) (Bankr. D. Del.), ECF No. 1466. As part of the settlement, relevant documents, totaling over 20.4 million pages, were produced to Lead Plaintiff. The documents were also produced to Defendants.

O.      After receiving this production Lead Plaintiff sought and obtained leave to amend, and on September 6, 2019, filed the operative Third Amended Complaint ("TAC"), ECF No. 144.

P.      On October 28, 2019, Defendants moved to dismiss the TAC, ECF No. 149.

Q.      On April 14, 2020, Judge Woods issued an opinion (the "Order") denying Defendants' motion to dismiss in substantial part, ECF No. 159.

R.      After the Court issued its April 14, 2020 Order, Lead Plaintiff and Defendants agreed to explore the possibility of a global resolution of the Action through private mediation.

S.      On June 12, 2020, Defendants each filed their Answer to the TAC, ECF Nos. 183, 184, in which they denied the allegations of the TAC and asserted a number of defenses to the claims asserted in the TAC.

T.      On June 22, 2020, the Court issued an order staying discovery through and including September 30, 2020, ECF No. 186, so that the Settling Parties could engage in mediation.

U.      In advance of the mediation, the Settling Parties exchanged extensive written submissions setting forth their positions with respect to liability, damages, and other issues that impacted the risks and potential outcome of the Action. On September 8, 2020, counsel for Lead Plaintiff, counsel for each of the Defendants, and counsel for certain of Defendants' insurers participated in a mediation under the auspices of Robert A. Meyer, Esq. The Settling Parties did not come to an agreement following the mediation, however, and discovery in the case resumed.

EXECUTION COPY

V.      On December 18, 2020, Lead Plaintiff filed its Motion for Class Certification, ECF No. 202.

W.      On February 19, 2021, Defendants filed their opposition to the Motion for Class Certification, ECF No. 215. The Settling Parties fully briefed that motion (including a motion to strike Lead Plaintiff's expert) and engaged in extensive discovery over the next several months, including depositions of, among others, Lead Plaintiff, confidential witnesses cited in the TAC, a former PSG director, and a former PSG officer.

X.      While the initial round of mediation was not ultimately successful, it did lay the framework for continued negotiations and the Settling Parties agreed to engage in a second round of mediation.

Y.      On July 24, 2021, the Court issued another order staying discovery, ECF No. 251, so that the Settling Parties could resume mediation.

Z.      On September 10, 2021, the parties engaged in a second round of mediation that resulted in a settlement of the Action. As a result of the intense, arms'-length negotiations during the second mediation session, the Settling Parties agreed, subject to Court approval and certain conditions set forth in this Stipulation, to settle the Action. Following this agreement in principle, the Settling Parties spent substantial time negotiating certain specific terms of the Settlement, which are embodied in the Memorandum of Understanding executed by the Parties on October 18, 2021, and more fully set forth herein.

AA.      Defendants are entering into this Stipulation in consultation with their insurers and solely to eliminate the uncertainty, burden, and expense of further protracted litigation. Defendants deny any wrongdoing whatsoever and this Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of either Defendant with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have asserted. Defendants expressly deny that Lead Plaintiff has asserted any valid claims as to them or any of Defendants' Releasees. To the best of Defendants' and Lead Plaintiff's knowledge, no governmental or regulatory authority (including any authority that may

EXECUTION COPY

have investigated any of the matters addressed by the TAC) has made any findings of wrongdoing with respect to Defendants. Lead Plaintiff and Defendants recognize, however, that substantial costs and fees would be incurred in connection with further litigation and are voluntarily settling the Action after receiving advice of counsel, and that the Settlement, as embodied in this Stipulation, is fair, reasonable and adequate. This Settlement shall not be construed or deemed to be a concession by Lead Plaintiff, or any Settlement Class Member, of any infirmity in the claims asserted in the Action. Lead Plaintiff, Defendants, and their respective counsel have agreed not to make any application for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, or any other court rule or statute, with respect to any claims or defenses in the Action.

BB.     Lead Counsel have conducted an extensive investigation and taken discovery relating to the claims and the underlying events and transactions alleged in the TAC. Lead Counsel have analyzed the evidence adduced through their investigation and discovery and have researched the applicable law with respect to the claims of Lead Plaintiff and the other Settlement Class Members against Defendants and the potential defenses thereto.

CC.     Based upon their investigation and discovery as set forth above, Lead Plaintiff and Lead Counsel have concluded that the terms and conditions of this Stipulation, and the Settlement embodied herein, are fair, reasonable and adequate to Lead Plaintiff and the other Settlement Class Members, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering: (1) the monetary and other benefits that Settlement Class Members will receive from settlement of the Action; (2) the attendant risks of litigation; and (3) the desirability of permitting the proposed Settlement to be consummated as provided by the terms of this Stipulation.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiff of any lack of merit of the Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Defendants, it is hereby STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil

EXECUTION COPY

Procedure, in consideration of the benefits flowing to the Settling Parties, that all Released Claims as against Defendants' Releasees and all Settled Defendants' Claims as against Lead Plaintiff's Releasees, shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## **<u>DEFINITIONS</u>**

1.       As used in this Stipulation, the following terms shall have the meanings specified below.

(a)       "<u>Action</u>" means the action pending in this Court under the caption *Plumbers & Pipefitters National Pension Fund*, *et al. v. Kevin Davis and Amir Rosenthal*, No.: 1:16-cv-3591-GHW.

(b)       "<u>Authorized Claimant</u>" means a Settlement Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator, that satisfies all the requirements set forth on the Proof of Claim Form, in accordance with the requirements established by the Court and who, subject to Court approval, will receive a payment from the Net Settlement Fund.

(c)       "<u>Claim</u>" means a completed and signed Proof of Claim Form submitted by a Settlement Class Member, or on their behalf, to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

(d)       "<u>Claimant</u>" means a person or entity that submits a Claim.

(e)       "<u>Claims Administrator</u>" means Strategic Claims Services ("SCS").

(f)       "<u>Class Distribution Order</u>" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(g)       "<u>Class Period</u>" means the period from January 15, 2015 to October 28, 2016, both dates inclusive.

(h)       "<u>Defendants' Counsel</u>" means the law firms of Friedman Kaplan Seiler & Adelman LLP (counsel for Defendant Amir Rosenthal), and Baker & Hostetler LLP (counsel for Defendant Kevin Davis).

EXECUTION COPY

(i)      "<u>Defendants' Releasees</u>" means Defendants and their current and former agents, trusts, trustees, insurers, successors, predecessors, assigns, assignees, consultants, accountants, attorneys (including, without limitation, Defendants' Counsel and Paul, Weiss, Rifkind, Wharton & Garrison LLP, Winston & Strawn LLP, and Covington & Burling LLP), family members and partners, and any entity in which any Defendant has a controlling interest; and each of their respective heirs, executors, administrators, legal representatives, successors, assigns, and other related persons or entities.

(j)      "<u>Effective Date</u>" means the first date by which all the following shall have occurred or been waived: (a) the Court has entered the Preliminary Approval Order, substantially in the form annexed hereto as Exhibit A; (b) the Settlement Amount has been paid by the Insurance Carriers; (c) the Settling Parties have not exercised any option to terminate the Settlement; and (d) the Court has approved the Settlement, following provision of the Settlement Notices to the Settlement Class and a Final Approval Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment, substantially in the form annexed hereto as Exhibit B.

(k)      "<u>Escrow Account</u>" means one or more accounts located at the Escrow Agent that are maintained to hold the Settlement Fund, which accounts shall be created, controlled and maintained exclusively by Lead Counsel, acting as agent for Lead Plaintiff and the Settlement Class, and shall be deemed to be in the custody of the Court and remain subject to the jurisdiction of the Court until such time as the Settlement Fund is distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.

(l)      "<u>Escrow Agent</u>" means The Huntington National Bank, who shall be responsible for overseeing, investing, safeguarding and distributing the Settlement Fund held in the Escrow Account, subject to the supervision and direction of Lead Counsel and pursuant to the terms of this Stipulation and any orders entered by the Court, and acting as agent for Lead Plaintiff and the Settlement Class, as provided in the Escrow Agreement.

EXECUTION COPY

(m)　　"Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account, including those terms set forth herein.

(n)　　"Final" when referring to an order or judgment means: (i) that the time for appeal or appellate review of the order or judgment has expired, and no appeal has been taken; or (ii) if there has been an appeal, (a) that the appeal has been decided by all appellate courts without causing a material change in the order or judgment; or (b) that the order or judgment has been upheld on appeal and is no longer subject to appellate review by further appeal or writ of *certiorari*.

(o)　　"Final Approval Hearing" means the hearing set by the Court in the Preliminary Approval Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to consider, among other things, approval of the Settlement.

(p)　　"IRS Code" means the Internal Revenue Code of 1986, as amended.

(q)　　"Judgment" means the proposed order and final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure approving the Stipulation and the proposed Settlement embodied herein.

(r)　　"Lead Counsel" means Cohen Milstein Sellers & Toll PLLC.

(s)　　"Lead Plaintiff's Releasees" means Lead Plaintiff and its current and former agents, trusts, trustees, insurers, successors, predecessors, assigns, assignees, consultants, accountants, and attorneys (each in his, her, or its capacity as such), and any entity in which it has a controlling interest.

(t)　　"Litigation Expenses" means the reasonable costs and expenses incurred by Lead Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses may also include reimbursement of the reasonable costs and expenses (including lost wages) of Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(4).

EXECUTION COPY

(u)    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court.

(v)    "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be sent to members of the Settlement Class.

(w)    "Notice and Administration Costs" means (a) the costs, fees and expenses that are reasonably incurred by the Claims Administrator, as described herein and in the Preliminary Approval Order, in connection with (i) providing notice to the Settlement Class and (ii) administering the claims process; (b) any Tax Expenses incurred by the Claims Administrator; and (c) the costs, fees and expenses that are reasonably incurred by the Escrow Agent.

(x)    "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund prepared by Lead Counsel, in conjunction with Lead Plaintiff's damages consultant, as set forth in the Notice (or any other plan for the allocation of the Net Settlement Fund among Authorized Claimants that Lead Counsel may propose and the Court may approve). The Plan of Allocation will also distribute $1,150,000 in proceeds from the settlement approved by the Bankruptcy Court described *supra*, less expenses already paid.

(y)    "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Stipulation and the proposed Settlement embodied therein.

(z)    "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 3 to Exhibit A, that a Settlement Class Member must complete should that Settlement Class Member seek to share in a distribution of the Net Settlement Fund, subject to entry of a Plan of Allocation and a Class Distribution Order that have both become Final.

(aa)    "Released Claims" means all express or implied claims, breaches, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of

9

EXECUTION COPY

every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule, ordinance, administrative provision or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Lead Plaintiff or any other member of the Settlement Class (a) asserted in the TAC, or (b) could have asserted in any forum that arise out of or relate in any way to: (i) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the TAC and (ii) the purchase, acquisition, or sale of PSG common stock. "Released Claims" includes Unknown Claims (as defined herein). Notwithstanding the foregoing, "Released Claims" does not include claims relating to the enforcement of the Settlement or its terms.

(bb)    "Settled Defendants' Claims" means all express or implied claims, breaches, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule, ordinance, administrative provision or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, relating to the institution, prosecution, or settlement of this Action. Notwithstanding the foregoing, "Settled Defendants' Claims" does not include claims relating to the enforcement of the Settlement or its terms.

(cc)    "Settlement Amount" means Thirteen Million U.S. Dollars ($13,000,000.00).

(dd)    "Settlement Class" means all persons and entities that purchased or acquired the common stock of Performance Sports Group Ltd. on a U.S. stock exchange from January 15, 2015 through October 28, 2016, inclusive, so long as they also purchased at least one share of PSG common stock on a U.S. stock exchange from January 15, 2015 through March 14, 2016, inclusive, and were damaged thereby. Excluded from the Settlement Class are Defendants; the officers and

EXECUTION COPY

directors of the Company during the Class Period; members of their immediate families; their legal representatives, heirs, successors or assigns; and any entity in which Defendants or PSG have or had a controlling interest. Also excluded from the Settlement Class are any putative Settlement Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice of Pendency of Class Action and Proposed Settlement.

(ee)    "Settlement Class Member" means a person or entity that is a member of the Settlement Class and is not otherwise excluded from the Settlement Class pursuant to its definition.

(ff)    "Settlement Fund" means the Settlement Amount plus any and all income and gains earned thereon, less any losses incurred thereon, after it is deposited into the Escrow Account.

(gg)    "Settlement Notices" means the Notice and Summary Notice.

(hh)    "Settling Parties" means Defendants and Lead Plaintiff, on behalf of itself and the Settlement Class.

(ii)    "Summary Notice" means the Summary Notice of Pendency of Class Action and Proposed Settlement, substantially in the form attached hereto as Exhibit 2 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

(jj)    "Taxes" means any and all taxes, duties and similar charges (including any estimated taxes, withholdings, interest or penalties and interest thereon) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, (a) any income and gains earned by the Settlement Fund for any period during which the Settlement Fund may be finally determined to not qualify as a Qualified Settlement Fund (within the meaning contemplated in ¶ 17 herein) for federal, state or local income tax purposes or (b) any distribution of any portion of the Settlement Fund to Authorized Claimants and other persons entitled hereto pursuant to this Stipulation, excluding any portion of the Settlement Fund returned to the Insurance Carriers (in proportion to the amount contributed by each) as a result of the termination of this Settlement pursuant to ¶¶ 46 and 47.

(kk)    "Tax Expenses" means any expenses and costs reasonably incurred by the Claims Administrator in connection with determining the amount of, and paying, any Taxes (including,

EXECUTION COPY

without limitation, reasonable expenses of tax attorneys and/or accountants and/or other advisors and reasonable expenses relating to the filing of or failure to file all necessary or advisable tax returns).

(ll)     "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any Settlement Class Member does not know or suspect to exist in their favor at the time of the release of the Defendants' Releasees, and any of the Settled Defendants' Claims which Defendants do not know or suspect to exist in their favor, which if known by them might have affected their decision(s) with respect to the Settlement. With respect to any and all Released Claims and Settled Defendants' Claims, Lead Plaintiff and Defendants stipulate and agree that upon the Effective Date, Lead Plaintiff and Defendants shall each, for themselves and all persons claiming by, through, or on behalf of them, expressly waive, and each Settlement Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and each Settlement Class Member acknowledges, and shall be deemed by operation of law to have acknowledged, that they may hereafter discover facts in addition to, or different from, those facts that they know or believe to be true with respect to the subject matter of this Settlement, but it is their intention to release and settle fully, finally, and forever any and all of the Released Claims, subject to the terms and conditions provided herein, and in furtherance of such intention, the releases set forth herein in ¶ 7 shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts. Lead Plaintiff and Defendants acknowledge, and Settlement Class Members and Defendants' successors and assigns and any

EXECUTION COPY

persons or entities claiming through or on behalf of Defendants shall, by operation of law, be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims was separately bargained for and was a material element of this Settlement.

**SETTLEMENT CONSIDERATION**

2.      Defendants' insurers (AIG Insurance Company of Canada; AXIS Reinsurance Company (Canadian Branch); and Great American Insurance Company (together, the "Insurance Carriers")) shall pay Thirteen Million U.S. Dollars ($13,000,000) into the Escrow Account by wire transfer or by delivering a check in an amount equivalent to their respective share to Lead Counsel within the later of twenty-one (21) calendar days of (a) the date of entry of an order preliminarily approving the Settlement, or (b) Lead Counsel's transmission to Defendants' Counsel of a Form W-9 for the Escrow Account together with the account name, bank name and contact information, account number, routing number, swift code, and mailing instructions for payments by check. Defendants are insureds under applicable policies issued by the Insurance Carriers, and shall have no individual obligation or liability for any payment of any amount associated with the Settlement. If the Settlement Amount is not deposited into the Escrow Account or remitted by check delivered to Lead Counsel by the date set forth in the first sentence of this ¶ 2, Lead Plaintiff reserves the right to either: (i) move to enforce the terms of this Stipulation, including seeking interest on any unpaid amount from the Insurance Carrier(s) responsible for such unpaid amount; or (ii) terminate the Settlement.

3.      The Settlement Amount as set forth above in ¶ 2 is inclusive of Lead Counsel's attorneys' fees and Litigation Expenses that may be awarded by the Court and Notice and Administration Costs and Taxes, and is the total, full and final amount of all payments to be paid by the Insurance Carriers for the benefit of Defendants and Defendants' Releasees, to Lead Plaintiff, the Settlement Class Members, Lead Counsel, or any other person or entity acting or

EXECUTION COPY

purporting to act for the benefit of the Settlement Class in this Action, in connection with the Stipulation and the proposed Settlement embodied herein.

4.      Immediately upon deposit of the Settlement Amount into the Escrow Account, including the clearance of any checks delivered to Lead Counsel, the Insurance Carriers, Defendants, and Defendants' Releasees shall have no responsibility for the Settlement Fund, including for any loss of principal.

## CAFA NOTICE

5.      Defendants shall serve any notice of the Settlement required pursuant to the Class Action Fairness Act of 2005 (the "CAFA Notice"), 28 U.S.C. § 1715(b), within the time period set forth in said statute and shall, within three (3) business days after service of such CAFA Notice, notify Lead Counsel that such service has been made. The Settling Parties agree that they will request that, pursuant to 28 U.S.C. § 1715(d), the Final Approval Hearing be scheduled for no earlier than ninety (90) days following the deadline for Defendants to serve the CAFA Notice as stated in this paragraph. The parties agree that any delay by Defendants in timely serving the CAFA Notice will not provide grounds for delay of the Final Approval Hearing or entry of the Judgment. The Insurance Carriers shall be responsible for all costs and expenses related to the creation and service of the CAFA Notice.

## RELEASES

6.      The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against Defendants, and shall fully and finally release any and all Released Claims as against Defendants' Releasees and shall also release all of the Settled Defendants' Claims as against Lead Plaintiff's Releasees. The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against Defendants, without costs to any party, except for the payments as expressly provided for herein.

7.      Pursuant to the Judgment, upon the Effective Date, Lead Plaintiff and each Settlement Class Member, on behalf of themselves, their current and former agents, trusts, trustees, insurers, successors, predecessors, assigns, assignees, consultants, accountants, attorneys, family

14

EXECUTION COPY

members and partners, and any entity in which Lead Plaintiff or any Settlement Class Member has a controlling interest, and each of their respective heirs, executors, administrators, legal representatives, successors, assigns, and other related persons or entities, and any other person claiming by, through or on behalf of them (each in his, her, or its individual capacity as such), shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every one of the Released Claims against Defendants' Releasees; (b) forever be enjoined from commencing, instituting or prosecuting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any or all of the Released Claims against any of Defendants' Releasees; and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any claims, breaches, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule, ordinance, administrative provision or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, against any person or entity who may claim any form of contribution or indemnity from any of Defendants' Releasees in respect of any Released Claim or any matter related thereto. The terms of 15 U.S.C. § 78u-4(f)(7) shall apply to this Settlement, including that each Defendant shall be discharged from all claims for contribution brought by other persons, and the Judgment shall so provide. The Judgment shall include a bar order constituting the final discharge of all obligations to any member of the Settlement Class of each of Defendants' Releasees arising out of the Action by any person against any of Defendants' Releasees.

8.     Pursuant to the Judgment, upon the Effective Date, each of the Defendants, on behalf of themselves, their current and former agents, trusts, trustees, insurers, successors, predecessors, assigns, assignees, consultants, accountants, attorneys, family members and

EXECUTION COPY

partners, and any entity in which any of the Defendants has a controlling interest, and each of their respective heirs, executors, administrators, legal representatives, successors, assigns, and other related persons or entities, and any other person claiming by, through or on behalf of them (each in his, her, or its individual capacity as such), shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every one of the Settled Defendants' Claims against Lead Plaintiff's Releasees; (b) forever be enjoined from commencing, instituting or prosecuting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any other person, any or all of the Settled Defendants' Claims against any of Lead Plaintiff's Releasees; and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any claims, breaches, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule, ordinance, administrative provision or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, against any person or entity who may claim any form of contribution or indemnity from any of Lead Plaintiff's Releasees in respect of any Settled Defendants' Claim or any matter related thereto. The foregoing provisions of this ¶ 8 shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

## USE AND TAX TREATMENT OF SETTLEMENT FUND

9.      The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶ 10 hereof. Upon the Effective Date, any interest earned on the Settlement Fund shall be for the benefit of the Settlement Class. If the Effective Date does not occur and the Settlement is

EXECUTION COPY

terminated, the Settlement Fund shall be returned to the Insurance Carriers (in proportion to the amount contributed by each) pursuant to the terms of ¶ 48 hereof.

10.     Pursuant to instructions from Lead Counsel, the Escrow Agent shall invest any portion of the Settlement Fund in excess of $175,000.00 in United States Agency or Treasury Securities secured by the full faith and credit of the United States and having maturities of 180 days or less (or money market or mutual funds comprised solely of such investments), and shall collect and reinvest all interest accrued thereon. Any portion of the Settlement Fund in an amount equal to or less than $175,000.00 may be held in an interest-bearing bank account insured by the Federal Deposit Insurance Corporation. Defendants' Releasees shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent. The Settlement Fund shall bear all risk of loss related to the investment of the Settlement Amount pursuant to the terms set forth in this paragraph.

11.     The Escrow Agent shall not disburse the Settlement Fund from the Escrow Account except as provided in this Stipulation. Any portion of the Settlement Fund held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund is either distributed or returned to the Insurance Carriers (in proportion to the amount contributed by each) pursuant to the terms and conditions of this Stipulation.

12.     Subject to the terms and conditions of this Stipulation, the Settlement Fund shall be distributed to pay: (i) Taxes; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. The balance remaining in the Settlement Fund after payment of items (i)-(iii) (the "Net Settlement Fund"), shall be distributed to Authorized Claimants as provided herein.

13.     Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund, subject to the direction and supervision of Lead Counsel, up to $175,000.00 in Notice and Administration Costs actually and reasonably incurred. Prior to the Effective Date, payment by the Escrow Agent of any Notice and

EXECUTION COPY

Administration Costs exceeding $175,000.00 shall require notice to and agreement from Defendants, through Defendants' Counsel. Subsequent to the Effective Date, without further approval by Defendants, Defendants' Counsel, or the Court, the Escrow Agent, subject to the direction and supervision of Lead Counsel, may pay from the Settlement Fund all reasonable and necessary Notice and Administration Costs in excess of any amount paid prior to the Effective Date. Defendants, Defendants' Counsel, and Defendants' Releasees shall not have any responsibility for, nor any liability with respect to, any Notice and Administration Costs incurred or paid, and shall have no responsibility for, and no liability with respect to, any acts or omissions of the Claims Administrator, Lead Counsel, the Escrow Agent, or their respective agents, with regard to any Notice and Administration Costs.

14.     All Taxes shall be considered to be a cost of administration of the proposed Settlement embodied in this Stipulation and shall be timely paid out of the Settlement Fund. The Claims Administrator shall be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund, and the Escrow Agent is authorized to permit the Claims Administrator to withdraw from the Settlement Fund, without prior order of the Court or approval of Defendants, but subject to the supervision of Lead Counsel, such amounts as are necessary to pay Taxes.

15.     After (i) the Effective Date occurs and (ii) entry by the Court of a Class Distribution Order that has become Final, the Claims Administrator shall, subject to the supervision of Lead Counsel, distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of such Final Class Distribution Order; provided, however, that any amounts in the Escrow Account necessary for payment of Taxes, attorneys' fees and Litigation Expenses awarded by the Court and/or Notice and Administration Costs shall remain in the Escrow Account for such purpose. The Escrow Agent is authorized to permit the Claims Administrator to make the foregoing distributions, subject to Lead Counsel's direction and supervision.

16.     If all conditions of the Settlement are satisfied and the Effective Date has occurred, no portion of the Settlement Fund will be returned to the Insurance Carriers, irrespective of the

EXECUTION COPY

number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶¶ 29-40 and is of such an amount that in the determination of the Claims Administrator, in consultation with Lead Counsel, it is not cost effective or efficient to redistribute such amount to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under IRS Code Section 501(c)(3), to be designated by Lead Counsel.

      17.     The Settling Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of § 468B of the IRS Code and Treasury Regulation § 1.468B-1. The Settling Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Claims Administrator shall make reasonable efforts to ensure that the Settlement Fund at all times complies with applicable provisions of the IRS Code and U.S. Treasury regulations in order to maintain its treatment as a Qualified Settlement Fund. To this end, the Judgment shall provide that the Settlement Fund is approved by the Court as a Qualified Settlement Fund and the Claims Administrator, with the cooperation of Lead Counsel, shall make reasonable efforts to ensure that the Escrow Agent complies with all applicable provisions of the IRS Code and U.S. Treasury regulations in order to maintain the treatment of the Settlement Fund as a Qualified Settlement Fund. The Settling Parties agree that the Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 14 herein. Upon written request, the Insurance Carriers will provide to the Claims Administrator the statement described in Treasury Regulation § 1.468B-3(e). The Claims Administrator, as

EXECUTION COPY

"administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

18.     The taxable year of the Settlement Fund shall be the calendar year in accordance with Treasury Regulation § 1.468B-2(j). The Settlement Fund shall use an accrual method of accounting within the meaning of § 446(c) of the IRS Code.

19.     All tax returns prepared by the Claims Administrator for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous ¶¶ 17 and 18 and in all events shall reflect that all Taxes on the income and gains earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

20.     Defendants' Releasees shall not have any responsibility for, and no liability with respect to, payment of any Taxes, and shall have no responsibility for, and no liability with respect to, the acts or omissions of the Claims Administrator, Lead Counsel, the Escrow Agent, or their agents, with regard to Taxes. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Stipulation with regard to Taxes.

## **CLASS CERTIFICATION**

21.     Solely for purposes of this Stipulation and the Settlement embodied herein and for no other purposes, and without prejudice to any arguments that Defendants made or could have made in opposition to Lead Plaintiff's Motion for Class Certification, ECF No. 202, the Settling Parties stipulate and agree to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiff as class representative; and (c) appointment of Lead Counsel as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Following execution of

EXECUTION COPY

this Stipulation, Lead Plaintiff shall apply to the Court for entry of the Preliminary Approval Order, which will preliminarily certify the Action to proceed as a class action solely for purposes of the Stipulation and the proposed Settlement embodied herein and for no other purposes. The certification of the Settlement Class, as provided in this ¶ 21, shall be binding only with respect to the Settlement of the Action and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

## PLAN OF ALLOCATION

22.     Subject to entry by the Court of a Class Distribution Order that becomes Final, the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation, provided that such Plan of Allocation, after appropriate notice thereof to the Settlement Class, has been approved by the Court in an order that has become Final.

23.     Defendants, Defendants' Counsel, and Defendants' Releasees shall have had no role in the preparation of the Plan of Allocation and shall take no position with respect thereto. Neither Defendants nor Defendants' Releasees shall have any responsibility or liability whatsoever for the Plan of Allocation.

24.     The Plan of Allocation is a matter separate and apart from the proposed Settlement between the Settling Parties as embodied in this Stipulation. The Plan of Allocation is not a necessary or material term of this Stipulation and it is not a condition of this Settlement that any Plan of Allocation be approved by the Court or that any order approving a Plan of Allocation becomes Final. Any order by the Court or any appellate court with respect to a Plan of Allocation shall not preclude the Judgment from being deemed Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to a Plan of Allocation.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

25.     Lead Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees and Litigation Expenses. Attorneys' fees and Litigation Expenses are not the subject of any agreement between the Settling Parties other than what is set forth in this Stipulation.

EXECUTION COPY

26.    Defendants' Releasees will take no position on Lead Counsel's request for attorneys' fees or Litigation Expenses, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the Court may award.

27.    The procedure for and amounts of any award of attorneys' fees and Litigation Expenses, and the allowance or disallowance by the Court thereof, are not necessary or material terms of this Stipulation and are not a condition of this Settlement. Lead Counsel shall request that its application for an award of attorneys' fees and Litigation Expenses be considered by the Court separately from (but not prior to) the Court's consideration of the fairness, reasonableness and adequacy of the proposed Settlement embodied herein. Any order or proceedings relating to Lead Counsel's request for attorneys' fees or Litigation Expenses, or any appeal from any order relating thereto or reversal or modification thereof, shall not preclude the Judgment from being deemed Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to Lead Counsel's application for attorneys' fees and Litigation Expenses.

28.    Within three (3) business days after entry by the Court of an order awarding Lead Counsel's attorneys' fees and Litigation Expenses (the "Fee and Expense Order"), any awarded attorneys' fees and Litigation Expenses shall be paid to Lead Counsel from the Escrow Account by the Escrow Agent, notwithstanding the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof or the Fee and Expense Order. In the event that the Effective Date does not occur or the Settlement is terminated pursuant to its terms, or if, as the result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Order is reversed or modified pursuant to a Final court order and attorneys' fees and Litigation Expenses have been paid out of the Escrow Account to any extent, then Lead Counsel shall be obligated and do hereby agree, within ten (10) business days after receiving notice of the foregoing from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Escrow Account such attorneys' fees and Litigation Expenses that have been paid, plus interest

EXECUTION COPY

thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## ADMINISTRATION OF THE SETTLEMENT

29.     The Claims Administrator, subject to the supervision of Lead Counsel and the jurisdiction of the Court, shall administer and calculate the Claims submitted by Claimants, oversee distribution of the Net Settlement Fund to Authorized Claimants pursuant to a Plan of Allocation approved by the Court in an Order that has become Final and subject to a Class Distribution Order entered by the Court that has become Final, and perform all claims administration procedures necessary or appropriate in connection therewith.

30.     Lead Plaintiffs shall be solely responsible, subject to Court approval, for notice to the Class, claims administration, and the allocation of the Settlement Amount among Settlement Class Members. Such allocation, or changes to any plan of allocation, shall not affect the finality of the Settlement. Defendants' Releasees shall not bear any cost or responsibility for notice to the Class, claims administration, or the allocation of the Settlement Amount among Settlement Class Members. Defendants' Releasees shall have no responsibility for or interest in the administration or allocation of the Settlement Fund, including the claims administration process, and shall have no role in the management or investment of the Settlement Fund. Subject to the terms of the Stipulation (including, without limitation, ¶ 13) and the Court's approval, Lead Counsel may pay from the Escrow Account any Notice and Administration Costs without further agreement of Defendants. Defendants and Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

31.     The Claims Administrator shall mail the Notice and publish the Summary Notice, pursuant to the terms of the Preliminary Approval Order.

32.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's share of the Net Settlement Fund based upon the Plan of Allocation approved by the Court. The Claims Administrator, subject to the supervision of Lead Counsel, shall have the right, but not the

EXECUTION COPY

obligation, to waive what it deems to be formal or technical defects in any Proof of Claim Forms submitted in the interests of achieving substantial justice.

33.     Neither Defendants nor any other of Defendants' Releasees shall be permitted to review, contest or object to any Proof of Claim Form or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Proof of Claim Form or Claim for payment by a Settlement Class Member.

34.     Any Settlement Class Member who does not timely submit a valid Proof of Claim Form by the deadline set by the Court in the Preliminary Approval Order will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of this Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any of Defendants' Releasees concerning any Released Claim.

35.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Settlement Class Member shall be required to submit a Proof of Claim Form, substantially in the form attached hereto as Exhibit 3 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Proof of Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Settlement Notices, unless such deadline is extended by order of the Court. Any Settlement Class Member who fails to submit a Proof of Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by order of the Court, late-filed Proof of Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will

EXECUTION COPY

be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any of Defendants' Releasees concerning any Released Claim. A Proof of Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions set forth on the Proof of Claim Form;

(c)      Each Proof of Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)      Proof of Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, by mail, first-class postage pre-paid, to give the Claimant the chance to remedy any curable deficiencies in the submitted Proof of Claim Form within a period of twenty (20) days after such notice has been mailed. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, by mail, first-class postage pre-paid, all Claimants whose Claims the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that a Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below within twenty (20) days following the mailing of such notice by the Claims Administrator;

(e)      If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within the timeframe stated in the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court; and

25

EXECUTION COPY

(f)     The administrative determinations of the Claims Administrator accepting and rejecting Claims shall be presented to the Court for approval by the Court in the Class Distribution Order.

36.     By submitting a Claim, a Settlement Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the releases provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Settlement Class Member and the validity and amount of their Claim. No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Proof of Claim Forms. Defendants shall have no right to take any such discovery, and shall not be the subjects or targets of any discovery contemplated by this ¶ 36.

37.     The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the later of the Effective Date having occurred; the Court having approved a Plan of Allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

38.     Lead Counsel will apply to the Court for a Class Distribution Order, *inter alia*: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding Notice and Administration Costs from the Escrow Account (except to the extent that Court approval is not required as specified herein); and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account in specified increments until, in the determination of the Claims Administrator, in consultation with Lead Counsel, it is no longer economically feasible to distribute the remaining funds, at which time any such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under IRS Code Section 501(c)(3), as designated by Lead Counsel; and (iv) such other relief as appropriate.

EXECUTION COPY

39.     Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Settlement Class Members. All Settlement Class Members who did not submit a Claim or whose Claim was not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any of Defendants' Releasees concerning any Released Claim.

40.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## OBJECTIONS AND REQUESTS FOR EXCLUSION

41.     Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any Settlement Class Member may appear at the Final Approval Hearing and show cause why the Stipulation, and the proposed Settlement embodied herein, should or should not be approved as fair, reasonable and adequate and in the best interests of the Settlement Class, or why the Judgment should or should not be entered thereon, and/or to present opposition to the Plan of Allocation or to the application of Lead Counsel for attorneys' fees and reimbursement of Litigation Expenses.

42.     Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any putative Settlement Class Member may request to be excluded from the Settlement Class.

43.     The Claims Administrator shall scan and electronically send copies of all requests for exclusion in .pdf format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than two (2) days) after the Claims Administrator receives such a request.

EXECUTION COPY

## PRELIMINARY APPROVAL OF THE SETTLEMENT

44.     Promptly after execution of this Stipulation, Lead Plaintiff, by and through Lead Counsel, with Defendants' consent, shall submit this Stipulation together with the exhibits annexed hereto to the Court and shall move for entry of the Preliminary Approval Order, among other things, preliminarily approving the Stipulation and the Settlement embodied herein, approving the contents and method of distribution of the Notice and Summary Notice, approving the contents of the Proof of Claim Form, and setting a date for the Final Approval Hearing. Lead Counsel shall provide Defendants' Counsel with a copy of such motion, and provide them an opportunity to comment on such motion, in advance of its filing.

## JUDGMENT APPROVING THE SETTLEMENT

45.     Lead Plaintiff, by and through Lead Counsel, with Defendants' consent, shall request that the Court, if it approves the Settlement embodied in this Stipulation following the Final Approval Hearing, enter the Judgment, substantially in the form annexed hereto as Exhibit B, pursuant to Rule 54 of the Federal Rules of Civil Procedure.

## TERMINATION RIGHTS

46.     Defendants and Lead Plaintiff each shall have the right to terminate the Settlement by providing written notice to the other of their election to do so within thirty (30) days of the date on which any of the following occur: (a) the Court declines to enter the Preliminary Approval Order in any material respect; (b) the Court refuses to approve this Stipulation or any material term hereof; (c) the Court declines to enter the Judgment in any material respect; (d) the Judgment is modified or reversed in any material respect by the Court of Appeals for the Second Circuit or the U.S. Supreme Court; or (e) the Settlement Amount is not paid in accordance with the terms of ¶ 2. In addition, Defendants may terminate this Settlement in accordance with ¶ 47. Notwithstanding the foregoing, any decision by the Court or any appeals court with respect to an application for attorneys' fees or Litigation Expenses or with respect to a Plan of Allocation or a Class Distribution Order shall not be considered material to this Settlement, shall not preclude the Judgment from being deemed Final and shall not be grounds for termination. In the event the Settlement is

EXECUTION COPY

terminated, the provisions of ¶¶ 46-48 shall survive such termination. The termination rights set forth herein are not intended to limit or impair the Settling Parties' rights under the law of contracts of the State of New York with respect to any breach of this Stipulation.

47.     Defendants shall have the option, at their sole discretion (which shall be exercised jointly), to terminate the Settlement if the total number of shares purchased or otherwise acquired by Settlement Class Members who are otherwise eligible to participate in the Settlement, but who properly elect to exclude themselves from the Settlement Class in accordance with the requirements for requesting exclusion provided in the Notice, equals or exceeds the threshold (the "Opt-Out Threshold") calculated pursuant to a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Stipulation. The Supplemental Agreement shall be treated as confidential and shall not be disclosed to any person or entity (other than to the extent of the general statements made herein and (if necessary) general statements to this same effect in the Notice or as otherwise provided in the Supplemental Agreement) other than the Settling Parties and their counsel unless required by Court order. Nor shall the Supplemental Agreement be filed with the Court unless requested by the Court or until a dispute among the Settling Parties concerning its interpretation or application arises, and, in that event, the Settling Parties will use their best efforts to file the Supplemental Agreement for the Court's *in camera* review and/or under seal.

48.     Except as otherwise provided herein, in the event this Settlement is terminated, this Stipulation, and the Settlement embodied herein, shall be without prejudice, and none of its terms shall be effective or enforceable and the fact of the Settlement shall not be admissible in any trial of this Action, and the Settling Parties shall be deemed to have reverted to their respective status in this Action immediately prior to September 10, 2021, provided that they will in good faith revisit the Case Management Order entered by the Court on November 4, 2020 (ECF No. 194), as modified by the Stipulation and Order dated June 16, 2021 (ECF No. 246), for the completion of discovery and other pretrial proceedings and for the trial of this Action, and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if this Settlement and any

EXECUTION COPY

related orders had not been entered, and any portion of the Settlement Amount previously paid into the Escrow Account, including, but not limited to, any funds disbursed in payment of attorneys' fees and Litigation Expenses, plus interest thereon at the same rate as would have been earned had those funds remained in the Escrow Account, less any amounts for Taxes paid or owing with respect to interest income and/or gains on the Settlement Amount and/or for Notice and Administration Costs actually incurred and paid or payable, shall be returned by Lead Counsel and/or the Escrow Agent at the direction of Lead Counsel to the Insurance Carriers (in proportion to the amount contributed by each) within fourteen (14) business days after written notification of such event by Defendants' Counsel to Lead Counsel.

## NO ADMISSION OF WRONGDOING

49.     Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendants' Releasees, with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have asserted. Defendants expressly deny that Lead Plaintiff has asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Whether or not the Settlement, as embodied in this Stipulation, is approved by the Court, and whether or not this Settlement is consummated, the fact and terms of this Stipulation, including the exhibits annexed hereto and the Supplemental Agreement, the Settlement embodied within it, all negotiations, discussions, drafts and proceedings in connection with this Settlement, and any act performed or document signed in connection therewith:

(a)     shall not be offered or received against Defendants' Releasees, Lead Plaintiff or the other Settlement Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of Defendants' Releasees or by Lead Plaintiff or the other Settlement Class Members with respect to the truth of any fact alleged by Lead Plaintiff or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in

EXECUTION COPY

any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of Defendants' Releasees;

(b)      shall not be offered or received against Defendants' Releasees as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of Defendants' Releasees, or against Lead Plaintiff or any of the other Settlement Class Members as evidence of any infirmity in the claims of Lead Plaintiff and the other Settlement Class Members;

(c)      shall not be offered or received against Defendants' Releasees, Lead Plaintiff or the other Settlement Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the foregoing parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if the Settlement is approved by the Court, Defendants' Releasees may refer to this Settlement to effectuate the protection from liability granted them hereunder;

(d)      shall not be construed against Defendants' Releasees, Defendants' Counsel, Lead Counsel, Lead Plaintiff or the other Settlement Class Members as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial;

(e)      shall not be construed as or received in evidence as an admission, concession or presumption against Defendants' Releasees that any of their defenses are without merit; and

(f)      shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or the other Settlement Class Members or any of them that any of their claims are without merit or that damages recoverable under the TAC would not have exceeded the Settlement Amount.

EXECUTION COPY

50.     Defendants have denied and continue to deny each and all of the claims and contentions alleged in the TAC, and maintain that they have acted properly and lawfully at all times and that they had and have meritorious defenses to all claims alleged in the Action. In addition, the Settling Parties recognize that, to the best of their knowledge, no governmental or regulatory authority (including any authority that may have investigated any of the matters addressed by the TAC) has made any findings of wrongdoing with respect to Defendants.

## MISCELLANEOUS PROVISIONS

51.     All of the exhibits attached hereto and the Supplemental Agreement referenced herein are hereby incorporated by reference as though fully set forth herein and are material terms of the Settlement.

52.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Lead Plaintiff or any other Settlement Class Members in the Action against Defendants' Releasees with respect to all Released Claims. Except in the event of the termination of this Settlement, Lead Plaintiff and Defendants agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis. The Settling Parties agree that the Settlement Amount and the other terms of this Settlement were negotiated at arms' length and in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

53.     This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest.

54.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

55.     The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

EXECUTION COPY

56.     This Stipulation, the exhibits annexed hereto and the Supplemental Agreement incorporated by reference herein, constitute the entire agreement among the Settling Parties concerning the Settlement, and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement other than the representations, warranties and covenants contained and memorialized in this Stipulation.

57.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Settling Parties shall exchange among themselves copies of original signed counterparts.

58.     Lead Plaintiff agrees that it will use its best efforts to obtain all necessary approvals of the Court required by this Stipulation, and, except as otherwise provided in this Stipulation, Defendants agree to provide such assistance as may be reasonably requested by Lead Plaintiff or Lead Counsel.

59.     Each signatory to this Stipulation represents that she or he has authority to sign this Stipulation and any Settlement-related documents on behalf of Lead Plaintiff or Defendants, as applicable, and that such signatory has the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms.

60.     This Stipulation shall be binding upon and shall inure to the benefit of the successors and assigns of the Settling Parties hereto, including all of the Releasees and Defendants' Releasees, and any corporation, partnership, or other entity into or with which any Settling Party hereto may merge, consolidate or reorganize.

61.     The administration, consummation and enforcement of the Settlement embodied in this Stipulation shall be under the authority of the Court and the Settling Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders providing for the award of attorneys' fees and Litigation Expenses, the approval of the Plan of Allocation and the Class Distribution Order and enforcing the terms of this Stipulation.

EXECUTION COPY

62.     The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

63.     To the extent there are disputes regarding the interpretation of any term of this Stipulation, the Settling Parties will attempt to resolve any such dispute in good faith. If the Settling Parties fail to resolve the dispute, or in the event of a breach of the terms of the Stipulation, any non-breaching Settling Party shall be entitled to bring an action seeking to enforce those provisions, and the exclusive forum for any such action shall be this Court.

64.     This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arms'-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

65.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Settling Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential; provided, however, that this paragraph:  (i) shall not prevent the Settling Parties from making any filings or taking any other action necessary to obtain the Court's approval of the Settlement, consistent with this Stipulation; (ii) shall not prevent Defendants' Releasees from making disclosures to insurers, auditors, attorneys, officers, directors, or associates; (iii) shall not prevent Defendants' Releasees from making disclosures to others as may be required by law; and (iv) shall not limit the materials or evidence that may be offered or referred to by Defendants' Releasees in disputes, actions, or proceedings arising between any of the Defendants' Releasees and any of the Insurance Carriers.

66.     All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement.

34

EXECUTION COPY

67.     No opinion or advice concerning the tax consequences of the Settlement to individual Settlement Class Members or any of the Settling Parties or any of Defendants' Releasees is being given or will be given by Lead Counsel and/or Defendants' Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement. Settlement Class Members will be directed to consult their own tax advisors regarding the tax consequences of the Stipulation, and the Settlement embodied herein, and any tax reporting obligations they might have with respect to it. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

68.     All time periods set forth in this Stipulation shall be computed in calendar days, unless expressly provided otherwise, and pursuant to the terms of Rule 6(a) of the Federal Rules of Civil Procedure.

69.     Except to the extent explicitly set forth otherwise in this Stipulation, if any Settling Party is required to give notice to any other Settling Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon (a) receipt by hand delivery; (b) mailing by means of pre-paid, overnight courier delivery service or (c) sending of electronic mail, provided that no rejection notice occurs and that identical notice is sent by U.S. Mail, first-class postage pre-paid or pre-paid, overnight courier delivery service. Notice shall be provided as follows:

| | |
|---|---|
| If to Lead Plaintiff or Lead Counsel: | Cohen Milstein Sellers & Toll PLLC<br>190 South LaSalle Street<br>Suite 1705<br>Chicago, IL 60603<br>Attn: Carol V. Gilden<br>cgilden@cohenmilstein.com |
| If to Kevin Davis or his counsel: | Baker & Hostetler LLP<br>11601 Wilshire Boulevard<br>Suite 1400 |

EXECUTION COPY

Los Angeles, CA 90025-0509
Attn: David Aronoff
daronoff@bakerlaw.com

If to Amir Rosenthal or his counsel:   Friedman Kaplan Seiler & Adelman LLP
7 Times Square
New York, NY 10036
Attn: Edward Friedman (efriedman@fklaw.com)
      Jason Rubinstein (jrubinstein@fklaw.com)

IN WITNESS WHEREOF, the Settling Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys as of the date first written above.

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*Carol V. Gilden*

Carol V. Gilden
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369

Steven J. Toll (*pro hac vice*)
S. Douglas Bunch (SB-3028)
Joshua C. Handelsman (*pro hac vice*)
1100 New York Avenue, N.W.
Suite 500, East Tower
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

***Attorneys for Lead Plaintiff United Association National Pension Fund and Lead Counsel for the Class***

**O'DONOGHUE & O'DONOGHUE LLP**
Louis P. Malone III
5301 Wisconsin Ave. N.W.
Suite 800
Washington, DC 20015
Tel.: (202) 362-0041
Fax: (202) 362-2640

***Additional Attorneys for Lead Plaintiff United Association National Pension Fund***

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**

*Jason Rubinstein*

Edward A. Friedman
Jason C. Rubinstein
Timothy M. Haggerty
Elizabeth Bierut
7 Times Square
New York, NY 10036
Tel: (212) 833-1100
Fax: (212) 373-7951

***Attorneys for Defendant Amir Rosenthal***

**BAKER & HOSTETLER LLP**

*David Aronoff*

David Aronoff
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025-0509
Tel: (310) 820-8800
Fax: (310) 820-8859

Bari R. Nadworny
45 Rockefeller Plaza
New York, NY 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

***Attorneys for Defendant Kevin Davis***

36