UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X

PLUMBERS & PIPEFITTERS NATIONAL
PENSION FUND, and JUAN FRANCISCO
NIEVES, as Trustee of the Gonzalez Coronado
Trust, Individually and on Behalf of All Others
Similarly Situated,

                Plaintiff,

vs.

Case No.: 1:16-cv-3591-GHW

KEVIN DAVIS and AMIR ROSENTHAL,

                Defendants.
--------------------------------------- X

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Lead Plaintiff United Association National Pension Fund, f/k/a Plumbers & Pipefitters National Pension Fund ("UANPF" or "Lead Plaintiff"), respectfully submits this supplemental memorandum of law in further support of its motion for preliminary approval of the proposed Settlement, and in response to the Court's direction at its January 11, 2022 conference. In particular, this memorandum provides further detail regarding (a) the settlement (the "Bankruptcy Settlement") of the claims asserted by Lead Plaintiff in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on behalf of itself and the Bankruptcy Settlement Class (defined below) against Performance Sports Group Ltd. ("PSG") in its chapter 11 bankruptcy case (the "Bankruptcy Case"); (b) the relationship between the Bankruptcy Settlement and this Court's approval of the Settlement of the above-captioned action (the "Action"); and (c) further detail regarding the proposed Plan of Allocation and the treatment of the proceeds of the Bankruptcy

1

Settlement, as contemplated by the Bankruptcy Settlement and approved by the Bankruptcy Court.[1]

## I. The Bankruptcy Settlement and the Proposed Settlement of the Above-Captioned Action

On October 31, 2016, PSG and seventeen of its affiliates (collectively with PSG, the "Debtors") filed voluntary chapter 11 bankruptcy petitions in the Bankruptcy Court, which triggered an automatic stay of this Action solely as to PSG. Declaration of Carol V. Gilden ("Gilden Decl.") at ¶ 2; Stip. at ¶ F. The Debtors also filed for protection under the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice ("Canadian Bankruptcy Proceedings"). Gilden Decl. at ¶ 2.

On February 6, 2017, Lead Plaintiff timely filed two proofs of claim in the Bankruptcy Court; one in Lead Plaintiff's individual capacity and the other a class proof of claim on behalf of itself and all members of the class defined in the Second Amended Complaint (ECF No. 86), the operative complaint as of that date, *i.e.*, persons and entities who purchased or acquired PSG common stock on the New York Stock Exchange from January 15, 2015 through March 14, 2016, inclusive (the "Bankruptcy Settlement Class"). Gilden Decl. at ¶ 3; Stip. at ¶ K.[2]

The statutory committee of the Debtors' then-current equity security holders (the "Equity Committee") objected to Lead Plaintiff's class proof of claim in the Bankruptcy Court, which objection the Debtors joined. Gilden Decl. at ¶ 4. The Debtors also objected to Lead Plaintiff's class proof of claim in the Canadian Bankruptcy Proceedings. *Id.* Lead Plaintiff responded to the

---

[1] Capitalized terms not defined herein have the meanings set forth in the Stipulation and Agreement of Settlement dated December 1, 2021 (ECF No. 268) ("Stip.") or Notice of Pendency of Class Action and Proposed Settlement (ECF No. 268-2) ("Notice").
[2] Lead Plaintiff retained experienced bankruptcy counsel, Lowenstein Sandler LLP ("Lowenstein Sandler"), to prepare the proofs of claim, make filings in the Bankruptcy Case, advise Lead Counsel regarding bankruptcy matters, and appear at hearings in the Bankruptcy Case.

Equity Committee's objection and cross-moved to invoke Federal Rule of Bankruptcy Procedure 7023 (which makes Federal Rule of Civil Procedure 23 applicable in certain bankruptcy proceedings) with respect to the class proof of claim. *Id.*

Following extensive briefing and oral argument in the Bankruptcy Court, related briefing and argument in PSG's Canadian Bankruptcy Proceedings, and a hearing held jointly before the U.S. and Canadian bankruptcy courts, Lead Plaintiff, the Debtors, and the Equity Committee agreed to settle all issues related to the two proofs of claim through the Bankruptcy Settlement. *Id.* at 5.

By order entered November 1, 2017, the Bankruptcy Court approved a stipulation among Lead Plaintiff, the Debtors, and the Equity Committee memorializing the Bankruptcy Settlement, to be implemented through the Debtors' chapter 11 plan of liquidation. Gilden Decl. at ¶ 6; Stip. at ¶ N; *see also In re Old BPSUSH Inc., et al.*, Case No. 16-12373 (KJC) (Bankr. D. Del.), ECF No. 1466 and Annex 1 thereto (Gilden Decl., Ex. A) (the "Bankruptcy Settlement Stipulation").

The Bankruptcy Settlement provided (a) a cash payment of $1.15 million, net of certain expenses, from PSG to Lead Plaintiff and the Bankruptcy Settlement Class (the "Bankruptcy Settlement Fund") and (b) a 40% contingent interest, capped at $2.5 million, in the net proceeds, if any, of any litigation claims brought after confirmation by the Reorganized Debtors or the Liquidation Trust. Bankruptcy Settlement Stipulation, ¶ 9(b)-(c); Gilden Decl. at ¶ 7; Stip. at ¶ N. Litigation claims brought by the representative of the Reorganized Parent Debtor and Liquidation Trust have been dismissed and are currently on appeal before the Third Circuit; according to a recent filing in that appeal, however, the parties have reached an agreement in principle to settle those claims. Gilden Decl. at ¶ 7 (citing *In re Old BPSUSH, Inc., et al.*, No. 21-3020 (3d Cir.), ECF No. 18 (Joint Motion to Further Extend Briefing Schedule, filed Jan. 21, 2022)). To the

extent proceeds from the settlement of such claims accrue to the Bankruptcy Settlement Fund, they will be distributed in the same manner as the $1.15 million cash payment utilizing the Court-approved Plan of Allocation. *See* Bankruptcy Settlement Stipulation, ¶ 9(e)-(f), discussed *infra*.[3] Pursuant to the Bankruptcy Settlement Stipulation, Lead Plaintiff also received a substantial production of PSG's documents relevant to this Action, totaling over 20.4 million pages. Bankruptcy Settlement Stipulation, ¶ 8; Gilden Decl. at ¶ 8; Stip. at ¶ N.

Pursuant to the Bankruptcy Settlement Stipulation, the Debtors published notice of the Bankruptcy Settlement to the Bankruptcy Settlement Class on November 9 and 11, 2017. Bankruptcy Settlement Stipulation, ¶ 3; Gilden Decl. at ¶ 9. The Bankruptcy Settlement was implemented through PSG's chapter 11 plan, which was confirmed by an order of the Bankruptcy Court entered December 20, 2017, and became effective the following day. *In re Old BPSUSH Inc., et al.*, Case No. 16-12373 (KJC) (Bankr. D. Del.), ECF Nos. 1566 ("Confirmation Order") (Gilden Decl., Ex. C), 1576 ("Notice of Effective Date") (Gilden Decl., Ex. D). In the Confirmation Order, the Bankruptcy Court approved the notice as "good and adequate notice" of the Bankruptcy Settlement and certified the Bankruptcy Settlement Class for settlement purposes. Confirmation Order, ¶¶ G, 7.

By letter dated January 10, 2018, Lead Plaintiff reported the Bankruptcy Settlement to this Court in this Action. ECF No. 126. In its letter, Lead Plaintiff noted that pursuant to an order of the Bankruptcy Court, notice of the Bankruptcy Settlement had been provided to the Bankruptcy Settlement Class in connection with the Debtors' bankruptcy proceedings, the Bankruptcy

---

[3]   Today's filing in the Third Circuit is a new development that potentially impacts disclosures made in the proposed Notice. To the extent the Court prefers that Lead Plaintiff modify the disclosures in the Notice to reflect this new development or in any other respect, Lead Plaintiff stands ready to do so.

Settlement had been approved, and the $1.15 million in cash proceeds of the Bankruptcy Settlement would "be held in escrow for eventual distribution pursuant to a plan of allocation that will be approved by this Court at the resolution of this litigation." *Id.*  On June 5, 2020, the Debtors wired the $1.15 million payment, less expenses already paid pursuant to the terms of the Bankruptcy Settlement,[4] to the Escrow Agent, where it awaits distribution pursuant to an order of this Court.  Gilden Decl. at ¶ 10.

Of relevance here, the Bankruptcy Settlement Stipulation provided that the issues pertaining to the allocation and distribution of the Bankruptcy Settlement Fund are to be decided by this Court, providing in relevant part that:

> The Lead Plaintiff will receive the [Bankruptcy Settlement Fund] in escrow for itself and the Putative Class with the distribution and allocation of those funds to individual members of the Putative Class will be [*sic*] subject to a determination by the District Court consistent with Federal Rule 23.
> . . .
> The plan of allocation for individual members of the Putative Class with respect to the proceeds of the [Bankruptcy] Settlement will be addressed by the District Court and an order of the District Court.

Bankruptcy Settlement Stipulation, ¶ 9(e)-(f).[5]

In its November 1, 2017 order approving the Bankruptcy Settlement Stipulation, the Bankruptcy Court expressly disclaimed "jurisdiction over [] the distribution of funds from the Class Settlement Escrow," except to the extent reserved in the Bankruptcy Settlement Stipulation.

---

[4]   The PSG Liquidation Trust deducted $166,108.50 from the $1.15 million payment for costs related to the production of PSG's documents to Lead Plaintiff pursuant to the terms of the Bankruptcy Settlement, for a net payment to the Escrow Agent of $983,891.50.  Gilden Decl. at ¶ 10.

[5]   The notice of the Bankruptcy Settlement published to the Bankruptcy Settlement Class also informed class members that the District Court would determine distribution and allocation of the Bankruptcy Settlement Fund.  *See In re Old BPSUSH Inc., et al.*, Case No. 16-12373 (KJC) (Bankr. D. Del.), ECF No 1497 ("Affidavit of Publication") (Gilden Decl., Ex. B).

*In re Old BPSUSH Inc., et al.*, Case No. 16-12373 (KJC) (Bankr. D. Del.), ECF No. 1466, ¶ 3 (Gilden Decl., Ex. A).[6]

Thus, the Bankruptcy Court, through the Bankruptcy Settlement Stipulation and the order approving it, expressly left all issues relating to the distribution and allocation of the Bankruptcy Settlement Fund consistent with Fed. R. Civ. P. 23 to the discretion of this Court.[7] Lead Plaintiff's proposed Plan of Allocation thus contains separate allocation formulas for the Bankruptcy

---

[6] The Bankruptcy Settlement Stipulation reserved Bankruptcy Court jurisdiction over the distribution and allocation of the Bankruptcy Settlement Fund only as a fallback should this Court dismiss this Action or decline to certify a class, neither of which has occurred. Thus, jurisdiction over the distribution and allocation of these funds remains with this Court. *See* Bankruptcy Settlement Stipulation at ¶ 9(f).

[7] Resolution of claims against a chapter 11 debtor, such as the claims asserted in the proofs of claim filed by Lead Plaintiff against PSG in the Bankruptcy Case, is a core proceeding subject to the jurisdiction of the Bankruptcy Court. 28 U.S.C. § 157(b)(1), (b)(2)(B). Because claims against a chapter 11 debtor arising from the purchase or sale of its securities are subordinated (to the same level as common stock, where, as here, the security in question is common stock), *see* 11 U.S.C. § 510(b), such claims frequently are "out of the money" and receive no distribution from an insolvent chapter 11 debtor.

However, where funds are available to distribute to holders of securities fraud claims, as in PSG's chapter 11 case, the two-step process contemplated by the Bankruptcy Settlement Stipulation (Bankruptcy Court approval of a settlement payment by the debtor into escrow through a chapter 11 plan, followed by District Court approval in a pending securities class action of a plan of allocation that includes the debtor's settlement payment) is not unusual. *See, e.g.*, *In re OSG Sec. Litig.*, Civ. No. 1:12-cv-07948-SAS (S.D.N.Y.). In *OSG*, as here, plaintiffs' counsel sought to distribute the proceeds of a settlement separately obtained in the Bankruptcy Court together with the proceeds of settlements in the District Court, as part of the same plan of allocation. *See id.*, ECF No. 244 (Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlements and Plan of Allocation) at 1 (seeking approval of plans of allocation for proceeds of bankruptcy settlement and settlements with other defendants), 1 n.3, 18 n.8 (noting that bankruptcy settlement proceeds would be distributed pursuant to a plan of allocation to be approved by the District Court); ECF No. 247 (Declaration), ¶ 2, n.4 (describing bankruptcy settlement, which had been approved by the Bankruptcy Court 16 months prior, and noting, "The Bankruptcy Court Settlement, less fees, expenses, and taxes, will be distributed pursuant to the proposed Plan of Allocation."). Notably, in *OSG*, the Bankruptcy Court stipulation of settlement provided for the District Court's distribution and allocation of settlement proceeds in language similar to that used in this Action. *See id.*, ECF No. 247-1, at 11 of 14. Judge Scheindlin approved this plan of allocation in an order dated December 2, 2015. *See id.*, ECF No. 262. For the Court's convenience, copies of the *OSG* memorandum, declaration, and order approving the plan of allocation are annexed to the Gilden Decl. as Exs. E, F, and G respectively.

Settlement and the Settlement of the above-captioned action, which in turn reflect their different class periods and corrective disclosure dates, as discussed below and in the accompanying declaration of Chad Coffman, CFA, of Global Economics Group ("Coffman Decl.") (Gilden Decl., Ex. I).

The proposed Notice states, at footnotes 2 and 7, that Lead Counsel may apply to the Court for an award of attorneys' fees from the Bankruptcy Settlement Fund in an amount not to exceed 28% thereof – which is the same cap included in the Notice, at paragraphs 6 and 54, for the award of fees to be requested from the Settlement Fund in the above-captioned action. Lead Counsel's request for an award of attorneys' fees is not currently before the Court. Under Lead Plaintiff's proposed schedule, briefing in support of Lead Counsel's request for attorneys' fees is due to the Court thirty-five (35) days before the Final Approval Hearing, pursuant to paragraph 11 of the proposed Preliminary Approval Order. ECF No. 268-1. That said, Lead Counsel respectfully submits that an award of attorneys' fees from the Bankruptcy Settlement Fund, like approval of a plan of allocation of the Bankruptcy Settlement Fund and distribution of those funds, is fully consistent with the Bankruptcy Settlement Stipulation and is an issue reserved to the discretion of this Court by the Bankruptcy Settlement Stipulation and the Bankruptcy Court order approving it, wherein the Bankruptcy Court expressly disclaimed "jurisdiction over [] the distribution of funds from the Class Settlement Escrow," and made "the distribution and allocation of these funds to individual members of the Putative Class . . . subject to a determination by the District Court consistent with Rule 23." Awards of attorneys' fees are consistent with Rule 23, and also anticipated by it. *See* Fed. R. Civ. P. 23(h).[8]

---

[8] In *OSG*, where again, the Bankruptcy Court stipulation of settlement provided for the District Court's distribution and allocation of settlement proceeds in language similar to that used here, plaintiffs' counsel requested, and the District Court approved, an award of attorneys' fees

## II.      Rationale for the Plan of Allocation

Finally, as described in the accompanying Coffman Declaration, the rationale for the Plan of Allocation is reasonable and based on a sound methodology well-established in securities cases. Further, the formulas for calculating Recognized Losses are consistent with Section 10(b) of the Exchange Act, as amended by the PSLRA; and the inputs to those formulas, *e.g.*, average closing prices and estimated levels of artificial inflation, are reasonable.

In particular, the Coffman Declaration describes how Mr. Coffman used an event study to derive the abnormal price returns in PSG common stock on alleged corrective disclosure dates, and thus quantify the artificial inflation per share that dissipated from the price of PSG common stock on those dates. Coffman Decl. at ¶¶ 7-10. Then, applying the constant dollar methodology, Mr. Coffman was able to calculate the artificial inflation per share for purchases during different date ranges in both the District Court Class Period and the Bankruptcy Class Period, which appear in Tables A and C of the proposed Plan of Allocation. *Id.* at ¶¶ 11-13. Mr. Coffman also shows how the artificial inflation for parallel dates in Tables A and C is equivalent, after accounting for artificial inflation that applies only to the District Court Settlement Class because of corrective disclosures alleged in the District Court Action, but not the Bankruptcy Case. *Id.* at ¶¶ 14-15. Mr. Coffman likewise explains why the PSLRA's "90-day lookback" prices are different in Tables B and D, namely because they depend on the ending dates of the two respective class periods. *Id.* at ¶ 16.

Finally, having shown how the inputs are derived, Mr. Coffman describes how the formulas in the Plan of Allocation are applied to calculate a Recognized Loss. *Id.* at ¶¶ 17-66. The basic

---

from both settlements. *In re OSG Sec. Litig.*, Civ. No. 1:12-cv-07948-SAS (S.D.N.Y.), ECF No. 261, ¶ 4 (Scheindlin, J.) (Gilden Decl., Ex. H).

rule of applying these formulas is to assign a Recognized Loss that varies depending on the levels of artificial inflation per share present in PSG's stock at various points during each respective class period, and that is limited to the lesser of the accounting loss or inflationary loss. *Id.* at ¶ 19. Mr. Coffman also explains how a Claimant's Recognized Losses are summed and translate into a *pro rata* recovery amount. *Id.* at ¶¶ 67-70.

### III. Conclusion

For the additional foregoing reasons, Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the Settlement; (ii) preliminarily certify a Settlement Class; (iii) approve the proposed form and manner of notice to potential members of the Settlement Class; and (iv) schedule a Final Approval Hearing.

Dated: January 21, 2022

Respectfully submitted,

/s/ Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL PLLC
Carol V. Gilden
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369

Steven J. Toll (*pro hac vice*)
S. Douglas Bunch (SB-3028)
Joshua C. Handelsman (*pro hac vice*)
1100 New York Avenue, N.W. │ Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

*Attorneys for Lead Plaintiff United Association National Pension Fund and Lead Counsel for the Class*

O'DONOGHUE & O'DONOGHUE LLP
Louis P. Malone III
5301 Wisconsin Ave. N.W.

Suite 800
Washington, DC 20015
Tel.: (202) 362-0041
Fax: (202) 362-2640

*Additional Attorneys for Lead Plaintiff United Association National Pension Fund and Lead Counsel for the Class*