

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

PLUMBERS & PIPEFITTERS NATIONAL
PENSION FUND, and JUAN FRANCISCO
NIEVES, as Trustee of the Gonzalez Coronado
Trust, Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiff,

      vs.

KEVIN DAVIS and AMIR ROSENTHAL,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

Case No.: 1:16-cv-3591-GHW

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND
APPROVAL OF THE PLAN OF ALLOCATION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 5

I.    The Proposed Settlement Warrants Final Approval .................................................. 5

    A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class .... 7

    B.    The Settlement Was Reached After Arm's-Length Negotiations ................... 8

    C.    The Relief Provided by the Settlement Is Adequate ....................................... 9

        1.    The Complexity, Expense and Likely Duration of the Litigation ......... 10

        2.    The Risks of Establishing Liability and Damages ................................ 11

        3.    The Effective Process for Distributing Relief to the Class .................... 12

        4.    The Anticipated Attorneys' Fees and Expenses Are Reasonable .......... 13

        5.    Agreements Required to Be Identified Under Rule 23(e)(3) ................. 14

    D.    Application of the Remaining Grinnell Factors Supports Approval of the
        Settlement ..................................................................................................... 15

        1.    The Ability of Defendants to Withstand a Greater Judgment ............... 15

        2.    The Reaction of the Class Supports Approval of the Settlement ........... 15

        3.    The Stage of the Proceedings and the Amount of Discovery
            Completed ................................................................................................ 16

        4.    The Range of Reasonableness of the Settlement Fund, in Light of the
            Best Possible Recovery and All of the Attendant Risks of Litigation ... 18

II.    The Plan of Allocation Is Fair and Reasonable and Should Be Approved ........... 18

III.    Notice to the Settlement Class Satisfied the Requirements of Rule 23 and
    Due Process ........................................................................................................... 21

IV.    The Requirements for Class Certification Have Been Met, and the
    Settlement Class Should Be Finally Certified, the Lead Plaintiff Should Be
    Finally Appointed as a Representative for the Settlement Class, and Cohen
    Milstein Should Be Finally Appointed as Lead Counsel. .................................... 22

    A.    Rule 23(a) ..................................................................................................... 23

    B.    Rule 23(b)(3) ................................................................................................ 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alstom SA Sec. Litig.*,
  253 F.R.D. 266 (S.D.N.Y. 2008) ...........................................................................................23

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)..................................................................................................22

*In re AMF Bowling Sec. Litig.*,
  No. 99 Civ. 3023 (DC), 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002) ...................................23

*In re AOL Time Warner, Inc.*, *Sec. and ERISA Litig.*,
  No. 02-cv-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................11

*In re Canadian Superior Sec. Litig.*,
  No. 09-cv-10087, 2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011)...........................................18

*Chavarria v. New York Airport Serv*,
  875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...................................................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 15-MD-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .........................................14

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................................ *passim*

*City of Providence v. Aeropostale Inc.*,
  No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................9

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007).......................................................................................................7

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..................................................................................................5, 8

*Danieli v. IBM Corp.*,
  No. 08-cv-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009)............................................13

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)...............................................................................................7, 23

*In re Deva Concepts Prods. Liability Litig.*,
  No. 20-CV-01234, 2022 WL 3716541 (S.D.N.Y. Jan. 3, 2022) ...........................................13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...............................................................................................................25

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................17, 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................15

*Gonqueh v. Leros Point to Point*,
  No. 14-cv-5883, 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016) ........................14, 16

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)......................................................................8, 9

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)............................14

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) .................................................................................25

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................................................10

*In re JPMorgan Precious Metals Spoofing Litig.*,
  No. 18-CV-10356, slip. op. (S.D.N.Y. July 7, 2022) .............................................13

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................................18

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997).......................................................................................23

*In re Marsh & McLennan Cos. Sec. Litig.*,
  No. 04-cv-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .............................22

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ...........................................................................5, 18

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).......................................................................................18

*In re Old BPSUSH Inc., et al.*,
  No. 16-12373 (Bankr. D. Del.), ECF No 1497 .......................................................19

*In re OSG Sec. Litig.*,
  No. 1:12-cv-07948-SAS (S.D.N.Y.).........................................................................19

*Padro v. Astrue*,
  No. 11-cv-1788, 2013 WL 5719076 (E.D.N.Y October 18, 2013) ........................17

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................18

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) ......................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ......................................................6, 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................22

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ......................................................25

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ......................................................10

*Skiadas v. Acer Therapeutics*,
    No. 19-CV-06137, 2022 WL 80458 (S.D.N.Y. Jan. 7, 2022) ......................5, 13, 21

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................10

*In re SunEdison, Inc. Sec. Litig.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) ......................................................25

*In re Take Two Interactive Sec. Litig.*,
    No. 06-cv-1131, 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ......................14

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................10, 12

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) ......................................................24

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010) ......................................................24

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05-mdl-01695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ......................9

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ......................................................24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................5, 6, 8, 21

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 6-cv-11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009)................................................16

*Yang v. Focus Media Holding Ltd.*,
    No. 11-cv-9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .................................................9

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ...........................................................................................................21

15 U.S.C. § 78u-4(e) ...........................................................................................................13, 20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ...............................................................................................................23

Fed. R. Civ. P. 23(b)(3)......................................................................................................24, 25

Fed. R. Civ. P. 23(c) .......................................................................................................20, 21, 22

Fed. R. Civ. P. 23(e) ............................................................................................................ *passim*

Lead Plaintiff United Association National Pension Fund, f/k/a Plumbers & Pipefitters National Pension Fund ("UANPF" or "Lead Plaintiff"), respectfully submits this memorandum of law in support of Lead Plaintiff's unopposed motion for: 1)  final approval of the December 1, 2021 Stipulation and Agreement of Settlement (ECF No. 268) ("Stipulation" or "Settlement") proposing to settle all claims in this action (the "Action"); 2) approval of the proposed Plan of Allocation covering this Settlement and a prior settlement achieved in the bankruptcy of Performance Sports Group Ltd. ("PSG"), respectively;[1] and 3) final certification of the Settlement Class previously preliminarily certified in this action.[2]

## INTRODUCTION

After more than five years of litigation, Lead Plaintiff and Defendants Davis and Rosenthal ("Defendants" and, together with Lead Plaintiff, the "Settling Parties") agreed to the proposed Settlement providing for an all-cash payment of $13 million for the benefit of the Settlement Class. The Settlement was reached after extensive litigation, including a substantial investigation preceding the filing of three detailed complaints, full briefing on Defendants' motions to dismiss, extensive fact discovery including the service of more than 40 subpoenas by the parties on non-party witnesses, and the production and review of over 21.2 million pages of documents produced

---

[1] As discussed *infra* and more fully in the January 21, 2022 Supplemental Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (ECF No. 275) ("Supplemental Memorandum"), the Bankruptcy Court approved the settlement of Lead Plaintiff's and the Class's proofs of claim on November 1, 2017. Supplemental Memorandum at 3. Notice was previously provided in the bankruptcy proceedings to the class covered by that settlement. Supplemental Memorandum at 3-4. The Bankruptcy Court left the distribution and allocation of the Bankruptcy Settlement Fund to be determined by this Court. Supplemental Memorandum at 6-7; *see also* Stipulation Resolving Securities Claims, Objections Thereto, Lead Plaintiff's Potential Plan Confirmation Objections, and Cross Motion to Apply Bankruptcy to Putative Class Claim, ¶¶ 9(e)-(f) (ECF No. 276-1).

[2] The Court is respectfully referred to the accompanying Declaration of Carol V. Gilden in Support of Lead Plaintiff's Unopposed Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation, and Lead Counsel's Unopposed Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Gilden Declaration" or "Gilden Decl."), for additional details of the case and the proposed Settlement. Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and the Notice of Pendency of Class Action and Proposed Settlement (Ex. A-1 to Preliminary Approval Order (ECF No. 285)).

by PSG's bankruptcy estate and various non-parties. The Settling Parties and their counsel were well-informed as to the strengths and weaknesses of the claims and defenses, and the Settling Parties participated in two full-day mediation sessions, fourteen months apart, with an experienced and highly regarded private mediator, Robert A. Meyer, Esq. of Judicial Arbitration and Mediation Services, Inc. Moreover, the Settlement represents a substantial portion of the potential provable damages suffered by the Settlement Class. Gilden Decl. ¶¶ 31-32.

Accordingly, Lead Plaintiff and Lead Counsel believe that the Settlement represents an excellent result for Settlement Class Members considering the risks of continued litigation, including risks with respect to proving liability and damages in addition to the expense and length of continued proceedings necessary to pursue their claims against Defendants through continued discovery, trial and appeals. *Id.* ¶¶ 28-31.

On July 14, 2022, the Court preliminarily approved the Settlement and directed that notice of the Settlement be provided to potential Settlement Class Members. ECF No. 285. The $13 million Settlement Amount was deposited by separate payments into the designated Escrow Account completed on August 4, 2022, and has been invested for the benefit of the Settlement Class pursuant to the terms of the Settlement. *Id.* ¶ 25. If and when the Settlement becomes final, the Settlement Amount will be disbursed in accordance with the proposed Plan of Allocation, as approved.[3]

The Settling Parties reached the Settlement only after vigorous litigation, by which time Lead Plaintiff and Lead Counsel had developed a thorough understanding of the strengths and weaknesses of the claims and defenses in the Action. The $13 million Settlement was achieved

---

[3] The Escrow Account also holds the net settlement funds from the Bankruptcy Settlement. *See* Supplemental Memorandum, ECF No. 275 at 5; *see also* ECF No. 267 at 11, n.5. The Bankruptcy Settlement Fund will be distributed pursuant to the Plan of Allocation before this Court. *See infra* at 18-20; fn. 1 *supra*.

after Lead Counsel: (1) conducted an extensive investigation of all potential claims that could be asserted against PSG and its officers and directors; (2) filed three complaints based on the results of that investigation, including one that was supported by a production of 20.4 million pages of documents from the Bankruptcy Settlement; (3) filed proofs of claim in the Bankruptcy Court on behalf of Lead Plaintiff and members of the class and litigated and settled those claims among Lead Plaintiff, the Debtors, and the Equity Committee, resulting in the aforementioned production of 20.4 million pages of documents supporting the Third Amended Complaint; (4) twice opposed motions to dismiss by Defendants, the second of which resulted in the Court's April 14, 2020 opinion substantially denying the motions; (5) served more than 10 subpoenas, in addition to the 30 subpoenas served by Defendants, on non-parties including sporting goods manufacturers and retailers, the Company's auditor KPMG, and Kohlberg & Company ("Kohlberg," a significant minority investor in PSG following its 2014 U.S. IPO), which resulted in the production of nearly 743,000 additional pages of documents, which Lead Plaintiff reviewed and analyzed; (6) filed and fully briefed a motion for class certification and defended a motion to strike the opinion and testimony of Lead Plaintiff's class certification expert; (7) negotiated the scope of Lead Plaintiff's document production, and reviewed and produced documents to Defendants; (8) prepared for and defended the deposition of the Lead Plaintiff 's designee and class certification expert, participated in the depositions of the Lead Plaintiff's investment manager and the four confidential witnesses cited in the TAC, and prepared for and deposed Defendants' class certification expert; (9) took the depositions of a former PSG director and partner at Kohlberg, and PSG's former controller; (10) participated in two extensive mediation sessions conducted by Mr. Meyer, a process which was preceded by the exchange of detailed written mediation statements by the Settling Parties; (11) negotiated and drafted appropriate documentation of the Settlement, including a

memorandum of understanding ("MOU"), the Stipulation, a motion for preliminary approval of the Settlement, and the Notices to be issued to potential Settlement Class Members; and (12) supervised the dissemination of the Notice and Proof of Claim Form and Summary Notice to Settlement Class Members in accordance with the procedures set out in the Stipulation, and prepared final documentation of the Settlement, including the motion papers filed contemporaneously herewith. *Id.* ¶ 4. Thus, the Settlement is the culmination of substantial investigation, discovery practice, document review, vigorous litigation, and a thorough mediation process with a well-regarded private mediator.

In reaching the Settlement, Lead Plaintiff and Lead Counsel considered the numerous risks associated with continuing the litigation, including the risks of recovering less than the Settlement Amount after substantial delay or of no recovery at all. Although Lead Plaintiff had already overcome motions to dismiss in substantial part, Defendants continued to maintain their argument that evidence in this Action would fail to support a finding of falsity and materiality, and that loss causation could not be demonstrated. *Id.* ¶¶ 28-29. Moreover, even if Lead Plaintiff was to successfully prevail on the elements of their claims and Defendants' affirmative defenses, and ultimately liability at trial, Defendants' damages expert would have calculated damages at merely a fraction of Lead Plaintiff's damages expert's calculations. *Id.* ¶ 30. Lead Plaintiff risked further delay caused by post-trial motions or appeals which inevitably would be filed if Lead Plaintiff prevailed at trial. These and many other risks support the reasonableness of the Settlement.

The $13 million Settlement achieved by Lead Plaintiff and Lead Counsel avoids all of these risks and uncertainties and provides an immediate and substantial financial benefit for the Settlement Class. In light of the significant obstacles to recovery, and the substantial time and expense that continued litigation would require, Lead Plaintiff and Lead Counsel respectfully

submit that the Settlement is a very good result for the Settlement Class, and provides a fair and reasonable resolution of the claims against Defendants in this Action.

## ARGUMENT

### I.  The Proposed Settlement Warrants Final Approval

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement should be approved if the Court finds it "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion."). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Public policy favors the settlement of disputed claims among private litigants, particularly in complex class actions. *See Wal-Mart*, 396 F.3d at 116. Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("In deciding whether to approve a settlement, a court 'should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another.'").

Additionally, this Court has already granted preliminary approval to this Settlement. Preliminary Approval Order ¶ 2. As this Court has previously noted, preliminary approval of a securities class action settlement means the Court will "likely be able to approve the settlement as

fair, reasonable, and accurate." *Skiadas v. Acer Therapeutics*, No. 19-CV-06137, 2022 WL 80458, at *1 (S.D.N.Y. Jan. 7, 2022).

A court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(i)   whether the class representatives and class counsel have adequately represented the class;

(ii)  whether the proposal was negotiated at arm's length;

(iii) whether the relief provided for the class is adequate, taking into account:

    a. the costs, risks, and delay of trial and appeal;

    b. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    c. the terms of any proposed award of attorneys' fees, including timing of payment; and

    d. any agreement required to be identified under Rule 23(e)(3); and

(iv)  whether the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2).

In *City of Detroit v. Grinnell Corp.*, the Second Circuit held that the following factors should be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *see also Wal-Mart Stores*, 396 F.3d at 117.

The factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments. Courts in the Second Circuit

"understand[] the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, the discussion below includes both sets of factors, noting where they overlap.

### A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before approving a settlement. "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Lead Plaintiff's interests are aligned with other class members' interests because they suffered the same alleged injuries: losses resulting from allegedly false statements and omissions made in connection with PSG's SEC filings and public statements. Because of these alleged injuries, Lead Plaintiff has an "interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

Further, Lead Plaintiff was an active and informed participant in the litigation. Lead Plaintiff (i) regularly communicated with Lead Counsel regarding the posture and progress of the Action, including the bankruptcy filings of PSG and the related proofs of claim filed on behalf of UANPF and class members; (ii) reviewed and/or discussed all significant pleadings and motions filed in the Action and in PSG's bankruptcy; (iii) gave extensive deposition testimony in this Action; (iv) searched for, reviewed, and produced documents requested by Defendants; (v) reviewed and/or discussed significant decisions in the Action, including the decision to mediate and settle this Action and the earlier decision to settle the bankruptcy litigation arising out of the proofs of claim; and (vi) actively participated in the two mediation sessions that ultimately led to

the proposed Settlement, as well as the negotiations with respect to the proposed Settlement documentation. Declaration of Toni C. Inscoe, Fund Administrator of the United Association National Pension Fund (f/k/a Plumbers & Pipefitters National Pension Fund) ("UANPF Decl.") ¶ 6, attached as Exhibit C to the Gilden Declaration.

Throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims, is highly qualified and experienced in securities litigation, and ably conducted the litigation against skilled opposing counsel.[4] Gilden Decl. ¶¶ 26-27; *see also* Cohen Milstein Firm Resume (Gilden Decl. Ex. E).  Thus, Lead Counsel has shown that "they are qualified, experienced, and able to conduct the litigation, as evidenced in their interactions with the Court as well as with a mediator." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). Rule 23(e)(2)(A) supports approval.

### B.  *The Settlement Was Reached After Arm's-Length Negotiations*

A strong initial presumption of fairness attaches to a proposed settlement reached as a result of arm's-length negotiations between experienced counsel after meaningful discovery. *See Wal-Mart*, 396 F.3d at 116. Further, a mediator's involvement in settlement negotiations can help show their fairness. *D'Amato*, 236 F.3d at 85 ("[A] mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The Settlement here merits such a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel, under the supervision of an experienced mediator, and after an extensive investigation. As noted above and

---

[4] Defendants were represented by well-regarded law firms Friedman Kaplan Seiler & Adelman LLP and Baker & Hostetler LLP.

in the Gilden Declaration, the Settling Parties and their counsel were well informed about the strengths and weaknesses of the case before agreeing to settle. The judgment of Lead Counsel, a law firm highly experienced in securities class action litigation, that the Settlement is in the best interests of the Settlement Class is entitled to "great weight." *City of Providence v. Aeropostale Inc.*, No. 11-cv-7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*, 607 Fed. App'x 73 (2d Cir. 2015). Moreover, Lead Plaintiff actively supervised the litigation as envisioned by the PSLRA, and strongly endorses the Settlement. *See* UANPF Decl. ¶ 7. A settlement reached "with the endorsement of [] sophisticated institutional investor[s] … is 'entitled to an even greater presumption of reasonableness.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-mdl-01695, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Mr. Meyer support the conclusion that the Settlement is presumptively fair, reasonable, and adequate. *Yang v. Focus Media Holding Ltd.*, No. 11-cv-9051, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion"), *see also* Declaration of Robert A. Meyer in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement ("Meyer Decl.") (Gilden Decl. Ex. A).

### C.  The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Indeed, "[t]his assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii)

the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card*, 330 F.R.D. at 36; *see also In re GSE Bonds*, 414 F. Supp. 3d at 693.

    1.   <u>The Complexity, Expense and Likely Duration of the Litigation</u>

Courts in this Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook, Inc, IPO Sec. and Derivative Litig.*, at *3; *Bear Stearns*, 909 F. Supp. 2d at 266. As discussed in the Gilden Declaration, this case involved complicated and intricate issues related to falsity, materiality, loss causation, and damages. Prevailing on summary judgment and then achieving a litigated verdict at trial (and sustaining any such verdict in the appeals that would inevitably ensue) would have been a very complex and risky undertaking and required substantial additional time and expense. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (granting final approval where, among other things, "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"). Indeed, the trial of the Action here would have required extensive expert testimony on numerous contested issues, including falsity, materiality, loss causation, and damages. Courts routinely observe that these sorts of disputes—requiring dueling testimony from experts—are particularly difficult. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (noting that in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited").

Even if Lead Plaintiff had prevailed at trial, appeals would be taken, which would have, at best, substantially delayed any recovery for the Settlement Class. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."). At worst, the

verdict could be reversed. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action).

2.   The Risks of Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] damages." *Grinnell*, 495 F.2d at 463 (further stating that "[t]he most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement"). Although Lead Plaintiff and Lead Counsel believe the claims asserted against Defendants are meritorious, they recognize that this Action, like many securities cases, presents several substantial risks to establishing both liability and damages. *See In re AOL Time Warner, Inc.*, *Sec. and ERISA Litig.*, No. 02-cv-5575, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"). Defendants would have vigorously challenged Lead Plaintiff on falsity, materiality, loss causation, and damages.

At summary judgment, trial and appeals, Defendants would strenuously maintain that they did not make any materially false or misleading statements concerning PSG's growth, inventory levels, or internal controls. Gilden Decl. ¶ 29. Defendants would have also argued that even if certain practices did occur, the amount of inventory or revenue attributable to those unfair business practices was immaterial and therefore, PSG's controls were appropriately robust. *Id.* Defendants would have vigorously litigated whether investors' losses could be tied to any revelation about improper sales practices. *Id.* It was far from certain that Lead Plaintiff would be able to prove the falsity and materiality of Defendants' statements through summary judgment and trial.

Another principal challenge in continuing the litigation is the difficulty of proving damages and demonstrating loss causation at summary judgment, in *Daubert* motions, at trial, and in post-trial proceedings and appeals. The Settling Parties retained consulting experts to calculate the

estimated damages in this Action that could be awarded if Lead Plaintiff prevailed at trial and arrived at starkly different amounts. *Id.* ¶¶ 30-32. Lead Counsel expects that Defendants would have vigorously persisted in arguing, at summary judgment, trial, and on appeal, that much of the decline in PSG's stock price was not attributable to Defendants' alleged misstatements and omissions. Thus, even if Lead Plaintiff was successful in sufficiently alleging and then demonstrating damages and loss causation at summary judgment and trial, the damages awarded could have been reduced by various factual findings throughout litigation. Both of the Settling Parties would set forth competing damages experts, and as Courts have long recognized, the substantial uncertainty as to which side's experts' view might be credited by the jury presents a serious litigation risk. *See, e.g., Telik*, 576 F. Supp. 2d at 579-80 (in this "'battle of experts', it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…").

Given these risks, Lead Plaintiff and Lead Counsel believe that it is in the best interests of the Settlement Class to accept the certain and substantial benefit conferred by the Settlement.

### 3. The Effective Process for Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the proposed Plan of Allocation was prepared with the assistance of Lead Plaintiff's expert, a well-regarded and experienced damages consultant with significant experience in drafting plans of allocation. Gilden Decl. ¶¶ 31-34; *see also* Declaration of Chad Coffman ¶ 2 ("Coffman Decl.") (ECF No. 276-9). The Plan of Allocation provides a fair and rational basis for class members to recover their *pro rata* share of the Net Settlement Funds for their transactions in PSG common stock so long as they purchased at least one share of PSG stock during the Bankruptcy Class Period. Gilden Decl. ¶¶ 31-34. The

proposed Plan of Allocation is also fair and reasonable because it allocates losses to Authorized

Claimants based on whether they held stock contemporaneously with various alleged corrective

disclosures in the Action, and the amount of artificial inflation on those dates. Gilden Decl. ¶¶ 31-

34; Coffman Decl. ¶¶ 6-13, 58-65. The Plan of Allocation also applies the statutory limitations

on damages contained in the PSLRA. Gilden Decl. ¶¶ 31-34; *see also* 15 U.S.C. § 78u-4(e).

Finally, the Plan of Allocation allocates losses to the Bankruptcy Settlement Class based on the

aforementioned factors. Gilden Decl. ¶¶ 31-34; Coffman Decl. ¶ 14; *see also Danieli v. IBM

Corp.*, No. 08-cv-3688, 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of

allocation "rationally related to the relative strengths and weaknesses of the respective claims

asserted").

    4.  <u>The Anticipated Attorneys' Fees and Expenses Are Reasonable</u>

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of

attorneys' fees, including timing of payment." The total Settlement Fund will be $13 million. The

total Bankruptcy Settlement Fund, as approved by the Bankruptcy Court, is $1.15 million. Lead

Counsel has applied for an award of attorneys' fees of 28% of the Settlement Fund (or $3,640,000)

and 28% of the Bankruptcy Settlement Fund (or $322,000), totaling $3,962,000, plus interest, and

for reimbursement of Litigation Expenses in the amount of $854,857.83. "[A]ny awarded

attorneys' fees and Litigation Expenses shall be paid to Lead Counsel from the Escrow Account

by the Escrow Agent." Stipulation ¶ 28. If the Settlement is terminated or the fee and expense

order is reversed or modified, then Lead Counsel will refund to the Escrow Account any fees paid

within 10 business days. *Id.*

Courts in this District, including this Court, have approved similar fees for comparable

class settlement funds, finding that they are well within the applicable range of reasonable awards.

*See, e.g.*, *In re JPMorgan Precious Metals Spoofing Litig.*, No. 18-CV-10356, slip. op. at *3

(S.D.N.Y. July 7, 2022) (awarding 33.3% of $60 million settlement as reasonable in light of the "contingent nature, risks and complexity of the Action"); *Skiadas*, 2022 WL 80458, at *1 (awarding 33.3% of $2.7 million settlement as reasonable in securities class action); *In re Deva Concepts Prods. Liability Litig.,* No. 20-CV-01234, 2022 WL 3716541, at *2 (S.D.N.Y. Jan. 3, 2022) (awarding 33.3% of $5 million settlement as reasonable); *Christine Asia Co., Ltd. v. Yun Ma*, No. 15-MD-02631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (awarding 25% of $250 million settlement as reasonable); *Gonqueh v. Leros Point to Point*, No. 14-cv-5883, 2016 WL 791295, at *1 (S.D.N.Y. Feb. 26, 2016) (awarding 33.3% of $725,000 settlement as reasonable). Further, the amount sought is significantly less than Lead Counsel's lodestar, as discussed in Lead Counsel's Unopposed Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, filed contemporaneously herewith.

5.   <u>Agreements Required to Be Identified Under Rule 23(e)(3)</u>

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." The Settling Parties have entered into one such agreement, the "Supplemental Agreement," which establishes certain conditions under which Defendants may terminate the Settlement if the total number of shares purchased or otherwise acquired by Settlement Class Members who are otherwise eligible to participate in the Settlement, but who properly elect to exclude themselves from the Settlement Class in accordance with the requirements for requesting exclusion provided in the Notice, equals or exceeds the Opt-Out Threshold calculated pursuant to the Supplemental Agreement. Such supplemental agreements are customary in securities class action settlements and their confidentiality "avoid[s] the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving

confidentiality of opt-out termination agreement); *see also In re Take Two Interactive Sec. Litig.*, No. 06-cv-1131, 2010 WL 11613684, at *11-12 (S.D.N.Y. June 29, 2010) (noting side letter agreement and preliminarily approving settlement).

### D. *Application of the Remaining* Grinnell *Factors Supports Approval of the Settlement*

Together with the enumerated factors set forth in Rule 23(e)(2)(C), several other *Grinnell* factors are relevant to the adequacy inquiry, including (1) "the ability of the defendants to withstand a greater judgment," (2) "the reaction of the class to the settlement," (3) "the stage of the proceedings and the amount of discovery completed," and (4) "the range of reasonableness of the settlement fund in light of the best possible recovery" and "all the attendant risks of litigation." These factors either favor final approval or, at worst, are neutral.

#### 1. The Ability of Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in settlement is relevant to whether the settlement is fair. *Grinnell*, 495 F.2d at 463. In Lead Counsel's judgment, Defendants had insufficient assets to satisfy a judgment, and thus any recovery Lead Plaintiff obtained for the Settlement Class was, practically speaking, confined to the limits of Defendants' D&O insurance policies, a significant portion of which had already been spent (and the remainder of which was rapidly eroding) at the time the Settlement was reached. *See* Gilden Decl. ¶ 32; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (final approval granted when the "main settlement funds available to the individuals are the insurance proceeds" which "would be largely consumed by defense costs if this litigation were to continue").

#### 2. The Reaction of the Class Supports Approval of the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *See, e.g.*, *Chavarria v. New York Airport Serv*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012). Here, the Court-appointed Claims

Administrator mailed copies of the Notice and Proof of Claim Form to potential Settlement Class Members and their nominees. *See* SCS Decl. ¶¶ 6-8. As of October 14, 2022, SCS has mailed 19,582 copies of the Notice and Proof of Claim Form to potential Settlement Class Members. *Id.* ¶ 8. In addition, the Notice and Proof of Claim Form was published on the DTC Legal Notice System on July 22, 2022, and the Summary Notice was published in the *Investor's Business Daily* on August 15, 2022 and disseminated on *PR Newswire* the same day. *Id.* ¶¶ 3, 10. Although the deadline set by the Court for Settlement Class Members to object or request exclusion (October 28, 2022) has not yet passed, to date, no objections or requests for exclusion have been received. *Id.* ¶¶ 13-14. This further indicates that the proposed Settlement is reasonable and adequate. *See In re Warner Chilcott Ltd. Sec. Litig.*, 6-cv-11515, 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no class member objections since preliminary approval supported final approval).

### 3.  The Stage of the Proceedings and the Amount of Discovery Completed

At the time of settlement, "sufficient investigation, research and litigation has been conducted such that counsel for the parties are able to evaluate their respective risks of further litigation, including the additional costs and delay associated with further prosecution of this action." *Gonqueh*, 2016 WL 791295, at *3. Lead Counsel litigated this Action for more than five years. Gilden Decl. ¶¶ 10-24. Lead Counsel conducted an extensive investigation of all potential claims that could be asserted against PSG and its officers and directors and filed three complaints based on the results of that investigation, including one that was supported by a production of 20.4 million pages of documents. *Id.* ¶¶ 4, 10-13, 16-17. Lead Counsel also filed proofs of claim in the Bankruptcy Court on behalf of Lead Plaintiff and members of the class defined in the operative amended complaint at that time, and following extensive briefing in the Bankruptcy Court, related briefing in PSG's Canadian bankruptcy proceedings, and a contested hearing held jointly before the U.S. and Canadian bankruptcy courts, settled those claims among Lead Plaintiff, the Debtors,

and the Equity Committee, resulting in the production of documents supporting the Third Amended Complaint. *Id.* ¶ 14. Lead Counsel further twice opposed Defendants' motions to dismiss which resulted in the Court's April 14, 2020 opinion substantially denying the motions. *Id.* ¶¶ 15, 19. Throughout the spring of 2020, after the Court denied in substantial part Defendants' motions to dismiss, Lead Counsel served more than 10 subpoenas on non-parties including sporting goods manufacturers and retailers, the Company's auditor KPMG, and Kohlberg, and held numerous lengthy negotiations with these non-parties who collectively produced nearly 743,000 additional pages of documents. *Id.* ¶ 20. The Settling Parties also engaged in extensive fact- and class-related discovery, took additional fact depositions, and issued additional deposition subpoenas to fact witnesses. *Id.* ¶ 22. Before the September 2020 mediation session, the Settling Parties exchanged extensive written submissions with dozens of exhibits, and before the September 2021 mediation session, the Settling Parties provided the mediator with certain briefing and discovery materials. Meyer Decl. ¶¶ 5-6. The Settling Parties finally reached settlement during a second round of mediation as a result of intense, arm's-length negotiations. *Id.* ¶ 23.

For these reasons, at the time the Settlement was reached, Lead Plaintiff and Lead Counsel had "obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals." *Padro v. Astrue*, No. 11-cv-1788, 2013 WL 5719076, at *6 (E.D.N.Y October 18, 2013). As a result, Lead Plaintiff and Lead Counsel have a well-informed basis for their belief that the Settlement is a favorable resolution of the Action for the Settlement Class, and this factor strongly supports approval of the Settlement. *See, e.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) (this factor supported settlement where the action had proceeded through substantial document production, five depositions, "a round of mediation submissions and sessions, and expert consultations on damages

and causation," and, thus, "the parties were able to make an intelligent appraisal of the value of the case").

    4.   <u>The Range of Reasonableness of the Settlement Fund, in Light of the Best Possible Recovery and All of the Attendant Risks of Litigation</u>

Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Instead, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). According to analyses prepared by Lead Plaintiff's damages expert, the Settlement represents 6.8% of a realistic estimate of Lead Plaintiff's recoverable damages, and 7.4% of recoverable damages when the Bankruptcy Settlement Fund is included in the total recovery. Gilden Decl. ¶ 32.

This recovery falls well within the range of reasonableness that courts in the Second Circuit have approved. *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of $6.5 million settlement representing 6.1% of the class's maximum potentially recoverable damages); *In re Canadian Superior Sec. Litig.*, No. 09-cv-10087, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) (approving a $5.2 million settlement representing 8.5% of maximum damages).

**II.  The Plan of Allocation Is Fair and Reasonable and Should Be Approved**

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192. Generally, "[a] plan of allocation that reimburses class members based on the extent of their injuries is [] reasonable." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Plans of allocation, however, need not be tailored to fit each and every class member with "mathematical precision," and broad

classifications may be used in order to promote "[e]fficiency, ease of administration and conservation" of the settlement fund. *PaineWebber*, 171 F.R.D. at 133-35. In determining the fairness, reasonableness, and adequacy of a proposed allocation plan, "courts give substantial weight to the opinion of experienced counsel." *See In re Marsh*, 265 F.R.D. at 145.

Lead Counsel developed the Plan of Allocation for the proposed Settlement in consultation with Chad Coffman, CFA, of Global Economics Group, a well-credentialed damages expert. Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Funds among eligible Settlement Class Members. Gilden Decl. ¶ 33; *see also* Supplemental Mem. at 8-9 (ECF No. 275); Coffman Decl. ¶¶ 7-70 (ECF No. 276-9).

If approved, the Plan of Allocation sets forth the method of allocating the settlement proceeds among the Settlement Class Members) who submit timely and valid Proof of Claim Forms to the Claims Administrator, in accordance with the requirements established by the Court, and who are approved for payment.[56] The Plan of Allocation (i) provides a fair and rational basis for Settlement Class Members to recover their *pro rata* share of the Net Settlement Fund for all shares of PSG common stock purchased on a U.S. stock exchange during the Class Period of January 15, 2015 through October 28, 2016, provided they also purchased at least one share of PSG stock from January 15, 2015 through March 14, 2016, according to the formulas set forth in the Notice; and (ii) provides a fair and rational basis for Settlement Class Members  to recover

---

[5] As explained in detail in the Supplemental Memorandum at 6 n.7, the two-step process contemplated by the Bankruptcy Settlement Stipulation (Bankruptcy Court approval of a settlement payment by the debtor into escrow through a chapter 11 plan, followed by District Court approval in a pending securities class action of a plan of allocation that includes the debtor's settlement payment) is not unusual. *See, e.g.*, *In re OSG Sec. Litig.*, No. 1:12-cv-07948-SAS (S.D.N.Y.) (bankruptcy court stipulation of settlement provided for the district court's distribution and allocation of settlement proceeds in language similar to that used in this Action).  Accordingly, the notice of the Bankruptcy Settlement published to the Bankruptcy Settlement Class informed the Bankruptcy Settlement Class that the District Court would determine distribution and allocation of the Bankruptcy Settlement Fund. *See In re Old BPSUSH Inc., et al.*, No. 16-12373 (Bankr. D. Del.), ECF No 1497 ("Affidavit of Publication").

[6] The rationale for the Plan of Allocation is explained in detail in the Coffman Declaration (ECF No. 276-9).

their *pro rata* share of the Bankruptcy Net Settlement Fund for all shares of PSG common stock purchased on a U.S. stock exchange during the Bankruptcy Class Period of January 15, 2015 through March 14, 2016, inclusive, according to the formula set forth in the Notice. *See* ECF No. 268-2, ¶¶ 22-36.

The Plan of Allocation is also fair and reasonable because, as described above, the Plan outlines the maximum losses an investor can recover, which is equivalent to the estimated artificial inflation in PSG's share price during the Class Period and calculated based on whether the investor held them over particular disclosures. Because the Plan's methodologies track the language and requirements of the PSLRA and clearly set forth the calculated inflation in each of multiple different categories of damages, the Plan of Allocation is fair and reasonable. While the Plan of Allocation does not reflect formal damages studies, it reflects Lead Plaintiff's damages expert's analyses of the alleged artificial inflation in PSG's stock price during the respective Class Periods, and is designed to track the both the language and purpose of the PSLRA's damages provisions found at 15 U.S.C. § 78u-4(e).

For these reasons, Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Funds, which, as described in the Notice, consist of the Net Settlement Fund for the proposed Settlement before this Court for final approval and the Bankruptcy Net Settlement Fund.  ECF No. 285, Ex. A-1 n.1, ¶ 27; *see Giant Interactive Grp.*, 279 F.R.D. at 163 ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"). Moreover, as noted above, to date 19,582 copies of the Notice and Proof of Claim Form, which contains the Plan of Allocation and advises Settlement Class Members of their right to object to the proposed plan, have been sent to potential Settlement Class Members and, to date, no objections to the proposed plan have been received.

**III. Notice to the Settlement Class Satisfied the Requirements of Rule 23 and Due Process**

The Notice provided to the Settlement Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable." Fed. R. Civ. P. 23(e)(1). Notice of a settlement is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.

Both the substance of the Notice and the method of its dissemination to potential Settlement Class Members satisfied these standards. The proposed Notice includes all the information required by Rule 23(c)(2)(B), including (i) "the nature of the action" (ECF No. 268-2, ¶¶ 1-2, 14-15); (ii) "the definition of the class certified" (*id.* ¶ 2); (iii) "the class claims, issues, or defenses" (*id.* ¶¶ 2, 14-15); (iv) "that a class member may enter an appearance through an attorney if the member so desires" (*id.* ¶ 56); (v) "that the court will exclude from the class any member who requests exclusion" and "the time and manner for requesting exclusion" (*id.* ¶¶ 57, 59-60); and (vi) "the binding effect of a class judgment on members under Rule 23(c)(3)" (*id.* ¶¶ 48-53). Fed. R. Civ. P. 23(c)(2)(V)(i)-(vii). Likewise, the Notice includes all the information required by the PSLRA, including a statement of class members' recovery (ECF No. 268-3, ¶ 3), a statement of the issues on which the parties disagree (*id.* ¶ 5), a statement of the attorneys' fees and costs sought (*id.* ¶ 6), identification of counsel (*id.* ¶ 7), and a statement of the reasons for the settlement (*id.* ¶¶ 16-18). *See* 15 U.S.C. § 78u-4(a)(7) (listing required disclosures).

Throughout the Notice process, the Claims Administrator, overseen by Lead Counsel, disseminated Notice "in accordance with the Court's Preliminary Approval Order." *Skiadas*, 2022 WL 80458, at *2. The Claims Administrator has disseminated 19,582 copies of the Notice to

potential Settlement Class Members. SCS Decl. ¶ 8. In addition, the Claims Administrator caused the Notice and Proof of Claim Form to be published on the DTC Legal Notice System on July 22, 2022, and the Summary Notice to be published on August 15, 2022 in the *Investor's Business Daily* and disseminated on *PR Newswire* the same day. Copies of the Notice and Proof of Claim Form were made available on a dedicated website maintained by the Claims Administrator, and Lead Counsel featured a link on Cohen Milstein's website that guided investors to the settlement website. Gilden Decl. ¶¶ 37, 51; SCS Decl. ¶ 12. This combination of individual first-class mail to those who could be identified with reasonable effort, supplemented by publication and internet notice, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-cv-8144, 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## IV. The Requirements for Class Certification Have Been Met, and the Settlement Class Should Be Finally Certified, the Lead Plaintiff Should Be Finally Appointed as a Representative for the Settlement Class, and Cohen Milstein Should Be Finally Appointed as Class Counsel.

On July 14, 2022, the Court granted Lead Plaintiff's motion for preliminary approval of the Settlement, and preliminarily certified the Settlement Class for settlement purposes only under Rule 23 of the Federal Rules of Civil Procedure. Preliminary Approval Order at 2-4. Nothing has changed to alter the propriety of certification of the Settlement Class for settlement purposes. Lead Plaintiff respectfully requests that the Settlement Class be finally certified for the purposes of settlement, Lead Plaintiff be finally appointed as a representative for the Settlement Class, and Cohen Milstein be finally appointed as Class Counsel.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238-39 (2d Cir. 2012). Certification of a settlement class "has been recognized throughout the country

as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

### A. Rule 23(a)

**Numerosity.** The proposed Settlement Class here consists of all persons who purchased or acquired the millions of shares of PSG common stock that traded during the Class Period on the New York Stock Exchange. TAC ¶¶ 7, 28-30, 121, 126, 128, 131, 137, 215. Based on the millions of shares issued and their trading on the NYSE, Settlement Class members likely number in at least the thousands and are geographically dispersed. *See In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 275 (S.D.N.Y. 2008). Joinder of parties so numerous and widespread would be burdensome, expensive, and impracticable for both the parties and the judicial system, confirming that Rule 23(a)(1) is satisfied. *See, e.g., In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2002 WL 461513, at *3 (S.D.N.Y. Mar. 26, 2002). Moreover, as detailed in the SCS Declaration, the Claims Administrator has mailed 19,582 copies of the Notice to potential Settlement Class Members, denoting, at a minimum, that the Settlement Class is likely to consist of thousands of members. SCS Decl. ¶ 8; *see also Alstom*, 253 F.R.D. at 275.

**Commonality.** Commonality is satisfied here, where common questions include: (a) whether Defendants misstated or omitted the disclosure of material facts regarding PSG's sales practices, risks, and internal controls in SEC filings and other public statements; (b) whether the alleged misstatements and omissions were made with scienter; and (c) the extent of damages sustained by Settlement Class Members as well as the appropriate measure of damages. *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

**Typicality.** Typicality is satisfied here because each Settlement Class Member's claims

arise from the same "course of events," namely Defendants' alleged misstatements and omissions, and each Settlement Class Member will make "similar legal arguments to prove the defendant's liability." *See Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 207 (S.D.N.Y. 2012). Lead Plaintiff and the proposed Settlement Class all purchased PSG common stock during the Class Period, all allege Defendants misstated and omitted the same material facts, and all bring the same claims against the same Defendants as a result.

**Adequacy.** Adequacy is met here because Lead Plaintiff "possess[es] the same interest and suffer[ed] the same injury as the [Settlement] Class Members," *Amchem*, 521 U.S. at 594-95, and suffers no nonspeculative, disabling "fundamental" conflicts. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citation omitted). Indeed, Lead Plaintiff has vindicated Settlement Class Members' interests by engaging and overseeing the work of experienced Lead Counsel, Cohen Milstein, and participating directly in settlement negotiations. UANPF Decl. ¶ 6. Furthermore, as discussed *supra* at 2-4, Lead Counsel has vigorously prosecuted the Settlement Class Members' claims and expended significant time and effort throughout the litigation. Accordingly, the Court should appoint Lead Plaintiff as Settlement Class representative and Lead Counsel as Settlement Class counsel for the purposes of this Settlement.

### B. *Rule 23(b)(3)*

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 623.

**Predominance.** Predominance is "readily met in certain cases alleging … securities fraud." *Amchem*, 521 U.S. at 625. It is satisfied if the resolution of class claims and issues "can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject

only to individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Elements of Section 10(b) claims including materiality, loss causation, and "the falsity or misleading nature of the defendant's alleged statements or omissions are common questions." *Amgen*, 568 U.S. at 474-75; *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) Reliance, damages, and scienter—other elements of a Section 10(b) claim—will also be established with common proof on a class-wide basis. *See In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 147 (S.D.N.Y. 2019).[7]

**Superiority.** "Courts in this district have regularly held that securities class actions are presumed to be superior to individual suits." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014). There is no reason to believe the presumption of superiority should not apply here, and, in any event, the superiority factors are clearly met.[8] This is a prototypical securities class action, with at least thousands of Settlement Class Members. Further, manageability concerns are not at issue where a class is to be certified for settlement purposes. *See In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009).

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and finally certify the Settlement Class, finally appoint the Lead Plaintiff as a representative for the Settlement Class, and finally appoint Cohen Milstein as Class Counsel, for purposes of the Settlement.

---

[7] These elements are also common as to Lead Plaintiff's Section 20(a) claim because Defendants' liability as control persons does not vary among proposed Settlement Class Members.
[8] The superiority factors are: (A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability … of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Dated: October 14, 2022     Respectfully submitted,

              *Carol V. Gilden*
              COHEN MILSTEIN SELLERS & TOLL PLLC
              Carol V. Gilden
              190 South LaSalle Street
              Suite 1705
              Chicago, IL 60603
              Tel.: (312) 357-0370
              Fax: (312) 357-0369

              Steven J. Toll (*pro hac vice*)
              S. Douglas Bunch (SB-3028)
              1100 New York Avenue, N.W. | Fifth Floor
              Washington, D.C. 20005
              Tel.: (202) 408-4600
              Fax: (202) 408-4699

              *Attorneys for Lead Plaintiff United Association*
              *National Pension Fund and Lead Counsel for the*
              *Class*

              O'DONOGHUE & O'DONOGHUE LLP
              Louis P. Malone III
              5301 Wisconsin Ave. N.W.
              Suite 800
              Washington, DC 20015
              Tel.: (202) 362-0041
              Fax: (202) 362-2640

              *Additional Attorneys for Lead Plaintiff United*
              *Association National Pension Fund and Lead*
              *Counsel for the Class*