

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

PLUMBERS & PIPEFITTERS NATIONAL
PENSION FUND, and JUAN FRANCISCO
NIEVES, as Trustee of the Gonzalez Coronado
Trust, Individually and on Behalf of All Others
Similarly Situated,

     Plaintiff,        Case No.: 1:16-cv-3591-GHW

  vs.

KEVIN DAVIS and AMIR ROSENTHAL,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

HISTORY AND BACKGROUND OF THE CASE ..................................................... 4

ARGUMENT ................................................................................................................. 5

    I.    The Requested Fee Would Be Reasonable Under Either the Percentage or Lodestar Method ...................................................................................... 5

        A.    The Requested Fees Are Reasonable Under the Percentage-of-the-Fund Method .......................................................................... 5

        B.    The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method ................................................................................. 7

        C.    The Requested Fee Is Fair and Reasonable When Applying the Second Circuit's Factors .................................................................. 10

            1.    The Time and Labor Expended ..................................................... 11

            2.    The Magnitude and Complexity of the Action Support the Fee ....... 12

            3.    Risks Assumed in Pursuing the Action ......................................... 13

            4.    The Quality of Representation Supports the Requested Fee .......... 15

            5.    Second Circuit Precedent Supports the 28% Fee as a Reasonable Percentage of the Total Recovery ................................................. 16

            6.    Public Policy Considerations Support the Requested Fee.............. 17

        E.    The Approval of Lead Plaintiff, as Well as the Reaction of the Class to Date, Support the Requested Fee ........................................... 17

    II.    Lead Counsel's Expenses Are Reasonable and Should Be Approved ................. 18

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ...............................5

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................13

*Ark. Tchr. Ret. Sys. v. Bankrate*,
  No. 13-cv-7183, slip op. (S.D.N.Y Nov. 25, 2014)................................................................8

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005).....................................................................................7

*In re Celestica Inc. Sec. Litig.*,
  No. 07-cv-00312, slip op. (S.D.N.Y. July 28, 2015) ..............................................................6

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................18

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 15-MD-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..........................................6

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  No. 12-cv-01203, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015)...........................................6

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)............................................13

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010).........................................9, 16

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ................................................................................................13

*Cornwell v. Credit Suisse Grp.*,
  No. 08-cv-03758, slip op. (S.D.N.Y. July 18, 2011) ..............................................................8

*In re Deutsche Telekom*, *AG Sec. Litig.*,
  No. 00-cv-9475, 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ..............................................8

*In re Deva Concepts Prods. Liability Litig.*,
  No. 20-CV-01234, 2022 WL 3716541 (S.D.N.Y. Jan. 3, 2022) ..............................................6

*Dukes v. Wal-Mart Stores, Inc.*,
  964 F. Supp. 2d 1115 (N.D. Cal. 2013) ...................................................................14

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..............................9, 12, 15, 16

*In re Glob. Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................15

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)...................................................................5, 7, 10, 15

*Gonqueh v. Leros Point to Point*,
  No. 14-cv-5883, 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016) ...................................6

*Hicks v. Stanley*,
  No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).........................5, 17

*In re JPMorgan Precious Metals Spoofing Litig.*,
  No. 18-CV-10356, slip. op. (S.D.N.Y. July 7, 2022) ...........................................6, 13

*In re Lucent Techs., Inc. Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004) .......................................................................18

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................8, 17

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................................5, 15

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)....................................................................................5

*In re OSG Sec. Litig.*,
  No. 12-cv-07948, slip op. (S.D.N.Y. Dec. 2, 2015) ...................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) .......................................................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997).........................................................................13

*Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)..........................13, 15

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) .......................................................................8

*In re Salomon Analyst Metromedia Litig.*,
  No. 02-7966, slip op. (S.D.N.Y. Feb. 27, 2009) ........................................................6

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999) ........................................................................................5

*In re Silvercorp Metals, Inc. Sec. Litig.*,
  No. 12-cv-9456, slip. op. (S.D.N.Y. Feb. 13, 2015) ..................................................6

*Skiadas v. Acer Therapeutics, Inc.*,
  No. 19-CV-06137, 2022 WL 80458 (S.D.N.Y. Jan. 7, 2022) ....................................6

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) .............................................................................12

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................................6

*Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................................4

*In re Veeco Instruments, Inc. Sec. Litig.*,
  No. 05-MDL-01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...............5, 15, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)...................................................................................5, 7, 8

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................9, 13

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 23(h) ............................................................................................................1

H.R. Conf. Rep. No. 104-369 ............................................................................................17

**EXHIBIT LIST TO ACCOMPANYING DECLARATION OF CAROL V. GILDEN**

| Ex. | Description |
|---|---|
| A | Declaration of Robert A. Meyer in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement |
| B | Declaration of Josephine Bravata Concerning: (A) Mailing the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| C | Declaration of Toni C. Inscoe, Fund Administrator of the United Association National Pension Fund (f/k/a Plumbers & Pipefitters National Pension Fund), in Support of: (A) Lead Plaintiff's Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| D | Declaration of Michael S. Etkin in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, Filed on Behalf of Lowenstein Sandler LLP |
| E | Cohen Milstein Sellers & Toll PLLC Firm Resume |

Court-appointed Lead Counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 23(h), for an award of attorneys' fees in the amount of 28% of the Settlement Fund (or $3,640,000) and 28% of the Bankruptcy Settlement Fund (or $322,000), plus interest on such amounts at the same rate as earned by the Settlement Funds. Lead Counsel also seeks reimbursement of $854,857.83 in Litigation Expenses reasonably and necessarily incurred to prosecute and resolve the Action.[1]

## INTRODUCTION

After more than five years of litigation, Lead Plaintiff and Defendants Davis and Rosenthal, the Settling Parties, agreed to the proposed Settlement providing for an all-cash payment of $13 million for the benefit of the Settlement Class.[2] The Settlement was reached after extensive litigation, including a substantial investigation preceding the filing of three detailed complaints, full briefing on Defendants' motions to dismiss, extensive fact discovery including the service of more than 40 subpoenas by the parties on non-party witnesses, and the production and review of over 21.2 million pages of documents produced by the bankruptcy estate of Performance Sports Group Ltd. ("PSG") and various non-parties. Lead Counsel's effort in achieving this result has

---

[1] The Court is respectfully referred to the accompanying Declaration of Carol V. Gilden in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation, and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Gilden Declaration" or "Gilden Decl."), for a detailed description of the case and the proposed Settlement. Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation, the Notice of Pendency of Class Action and Proposed Settlement (ECF No. 268-2) ("Notice"), or the Supplemental Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement dated January 21, 2022 (ECF No. 275) ("Supplemental Memorandum").

[2] As discussed *infra* and more fully in the January 21, 2022 Supplemental Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (ECF No. 275) ("Supplemental Memorandum"), the Bankruptcy Court approved the settlement of Lead Plaintiff's and the Class's proofs of claim on November 1, 2017. Supplemental Memorandum at 5. Notice was previously provided in the Bankruptcy Proceedings to the class covered by that settlement. *Id.* The Bankruptcy Court left the distribution and allocation of the Bankruptcy Settlement Fund to be determined by this Court. Supplemental Memorandum at 6-7; *see also* Stipulation Resolving Securities Claims, Objections Thereto, Lead Plaintiff's Potential Plan Confirmation Objections, and Cross Motion to Apply Bankruptcy to Putative Class Claim, ¶¶ 9(e)-(f) (ECF No. 276-1).

been without compensation of any kind and their fee and reimbursement of expenses have been wholly contingent upon the result achieved. The requested fee is reasonable given the result obtained and is consistent with the fees awarded in similar actions in the Second Circuit and throughout the country. The requested fee has also been approved by Lead Plaintiff United Association National Pension Fund, f/k/a Plumbers & Pipefitters National Pension Fund ("UANPF" or "Lead Plaintiff"), a sophisticated institutional investor. *See* Declaration of Toni C. Inscoe, Fund Administrator of the United Association National Pension Fund (f/k/a Plumbers & Pipefitters National Pension Fund), in Support of (A) Lead Plaintiff's Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("UANPF Decl." or "UANPF Declaration"), ¶¶ 10-12, attached as Exhibit C to the Gilden Declaration.

This Action settled only after Lead Counsel overcame multiple legal and factual challenges. To do so, Lead Counsel: (1) conducted an extensive investigation of all potential claims that could be asserted against PSG and its officers and directors; (2) filed three complaints based on the results of that investigation, including one that was supported by a production of 20.4 million pages of documents from the Bankruptcy Settlement; (3) filed proofs of claim in the Bankruptcy Court on behalf of Lead Plaintiff and members of the class and litigated and settled those claims among Lead Plaintiff, the Debtors, and the Equity Committee, resulting in the aforementioned production of 20.4 million pages of documents supporting the Third Amended Complaint; (4) twice opposed motions to dismiss by Defendants, the second of which resulted in the Court's April 14, 2020 opinion substantially denying the motions; (5) served more than 10 subpoenas, in addition to the 30 subpoenas served by Defendants, on non-parties including sporting goods manufacturers and retailers, the Company's auditor KPMG, and Kohlberg &

Company ("Kohlberg," a significant minority investor in PSG following its 2014 U.S. IPO), which resulted in the production of nearly 743,000 additional pages of documents, which Lead Plaintiff reviewed and analyzed; (6) filed and fully briefed a motion for class certification and defended a motion to strike the opinion and testimony of Lead Plaintiff's class certification expert; (7) negotiated the scope of Lead Plaintiff's document production, and reviewed and produced documents to Defendants; (8) prepared for and defended the deposition of the Lead Plaintiff 's designee and class certification expert, participated in the depositions of the Lead Plaintiff's investment manager and the four confidential witnesses cited in the TAC, and prepared for and deposed Defendants' class certification expert; (9) participated in the depositions of a former PSG director and partner at Kohlberg, and PSG's former controller; (10) participated in two extensive mediation sessions conducted by Robert A. Meyer, Esq., of Judicial Arbitration and Mediation Services ("JAMS"), an experienced and highly-respected mediator, a process which was preceded by the exchange of detailed written mediation statements by the Settling Parties (Gilden Decl., Ex. A ¶ 4 (Declaration of Robert A. Meyer in Support of Lead Plaintiff's Motion for Final Approval of Proposed Settlement); (11) negotiated and drafted appropriate documentation of the Settlement, including a memorandum of understanding ("MOU"), the Stipulation, a motion for preliminary approval of the Settlement, and the Notices to be issued to potential Settlement Class Members; and (12) supervised the dissemination of the Notice and Proof of Claim Form and Summary Notice to Settlement Class Members in accordance with the procedures set out in the Stipulation, and prepared final documentation of the Settlement, including the motion papers filed contemporaneously herewith. Gilden Decl. ¶ 4.

Moreover, the reaction of the Settlement Class to the Settlement and the request for attorneys' fees and expenses has been overwhelmingly positive. Pursuant to the Court's July 14,

2022 Preliminary Approval Order that preliminarily approved the Settlement and Notice to the Class (ECF No. 285) (the "Preliminary Approval Order"), copies of the Notice and Proof of Claim Form have been mailed or emailed to 19,582 potential Settlement Class Members or their nominees, the Notice and Proof of Claim Form was published on the DTC Legal Notice System on July 22, 2022, the Summary Notice was published in the *Investor's Business Daily* on August 15, 2022 and disseminated on *PR Newswire* the same day, and posted on a dedicated settlement website and on Lead Counsel's website. *See* Gilden Decl. ¶ 37 and Ex. B ¶¶ 8, 10, 12 (Declaration of Josephine Bravata Concerning: (A) Mailing the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections) ("SCS Declaration" or "SCS Decl."). The Notice and Proof of Claim Form advised potential Settlement Class Members that Lead Counsel would seek fees of up to 28% of the Settlement Fund and 28% of the Bankruptcy Settlement Fund, and reimbursement of Litigation Expenses in an amount not to exceed $900,000. *See* Gilden Decl., Ex. B, SCS Decl., Ex. A ¶ 6. No objection to Lead Counsel's application for fees and expenses has been filed to date. The deadline for filing such objections is October 28, 2022. Lead Counsel will address any objection received after the filing of this brief in reply papers.

## HISTORY AND BACKGROUND OF THE CASE

In order to avoid undue repetition, the Court is respectfully referred to the Gilden Declaration for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation conducted, the substantial motion practice and discovery undertaken, and the settlement negotiations, as well as the numerous risks and uncertainties presented in this litigation.

## ARGUMENT

**I.  The Requested Fee Would Be Reasonable Under Either the Percentage or Lodestar Method**

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).[3] Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In this case, the requested fee award—28% of the Settlement Fund and 28% of the Bankruptcy Settlement Fund, translating to a lodestar "multiplier" of 0.52—is well supported under either the "percentage" or "lodestar" method.

*A.  The Requested Fees Are Reasonable Under the Percentage-of-the-Fund Method*

The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger*, 209 F.3d at 48-49 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results

---

[3] Internal citations and quotations are omitted unless otherwise stated.

in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").

The 28% fee requested by Lead Counsel for both settlements is well within the range of percentage fees awarded within the Second Circuit in comparable class actions achieving significant recoveries. *See In re JPMorgan Precious Metals Spoofing Litig.*, No. 18-CV-10356, slip. op., at *3 (S.D.N.Y. July 7, 2022) (awarding 33.3% of $60 million settlement); *Skiadas v. Acer Therapeutics, Inc.*, No. 19-CV-06137, 2022 WL 80458, at *1 (S.D.N.Y. Jan. 7, 2022) (awarding 33.3% of $2.7 million settlement); *In re Deva Concepts Prods. Liability Litig.*, No. 20-CV-01234, 2022 WL 3716541, at *2 (S.D.N.Y. Jan. 3, 2022) (awarding 33.3% of $5 million settlement as reasonable); *Christine Asia Co., Ltd. v. Yun Ma*, No. 15-MD-02631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (awarding 25% of $250 million settlement as reasonable); *Gonqueh v. Leros Point to Point*, No. 14-cv-5883, 2016 WL 791295, at *1 (S.D.N.Y. Feb. 26, 2016) (awarding 33.3% of $725,000 settlement as reasonable); *In re OSG Sec. Litig.*, No. 12-cv-07948, slip op. at 1 (S.D.N.Y. Dec. 2, 2015) (awarding 30% of $31.6 million settlement); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 12-cv-01203, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) (awarding 30% of $33 million settlement); *In re Celestica Inc. Sec. Litig.*, No. 07-cv-00312, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% of $30 million settlement); *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456, slip. op. at 9 (S.D.N.Y. Feb. 13, 2015)

(awarding 25% of $14 million settlement); *In re Salomon Analyst Metromedia Litig.*, No. 02-7966, slip op. at 1 (S.D.N.Y. Feb. 27, 2009) (awarding 27% of $35 million settlement).

Further, in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 443 (E.D.N.Y. 2014), Judge Gleeson reviewed the fee awards in "large class cases with court-set fees" and concluded that applying a graduated fee schedule, settlements of the same magnitude as the instant Action would receive fees of approximately 30% because courts generally awarded 33% of the first $10 million and decreased the marginal percentage of recovery to 30% of the settlement value between $10 million and $50 million.. Lead Counsel's requested percentage of 28% falls well within this graduated scale.

### B.   The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

The Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Lead Counsel spent more than 12,267 hours of attorney and other professional staff time litigating the case from inception through October 12, 2022. *See* Gilden Decl. ¶ 41. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $6,887,732.50. *Id.*

In addition, Lead Counsel engaged Lowenstein Sandler ("Lowenstein") to act as special bankruptcy counsel to Lead Plaintiff and the proposed Settlement Class in connection with PSG's voluntary chapter 11 bankruptcy petitions filed in the United States Bankruptcy Court for the District of Delaware along with filings for protection under the Companies' Creditors Arrangement Act ("CCAA") in the Ontario Superior Court of Justice (collectively the "Bankruptcy

Proceedings"), to protect the interests of Lead Plaintiff and the proposed Settlement Class in the Bankruptcy Proceedings regarding their claims and rights, including their rights as against the non-debtor defendants in the Action. *See* Declaration of Michael S. Etkin in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, Filed on Behalf of Lowenstein Sandler LLP, attached as Exhibit D to the Gilden Declaration ("Etkin Decl.") ¶¶ 3-4. In connection with these services, Lowenstein spent 754.1 hours of attorney time and other professional staff time representing Lead Plaintiff and the proposed Settlement Class in the Bankruptcy Proceedings and this Action. Lowenstein's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $765,839. Gilden Decl., Ex. D, Etkin Decl. ¶ 6. Thus, the total lodestar for Lead Counsel and Lowenstein is $7,653,571.5.

The requested fee of 28% of the Settlement Fund and 28% of the Bankruptcy Settlement Fund therefore represents a multiplier of 0.52 of the total lodestar of both firms. This "negative" multiplier is well below multipliers regularly awarded in securities class actions and other complex class litigation both within and outside of this District. *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Bankrate*, No. 13-cv-7183, slip op. at 2 (S.D.N.Y Nov. 25, 2014) (awarding 1.8 multiplier); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable); *In re Deutsche Telekom*, *AG Sec. Litig.*, No. 00-cv-9475, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 28% of $120 million settlement, a 3.96 multiplier); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758, slip op. at 4 (S.D.N.Y. July 18, 2011) (awarding fee equal to a 4.7 multiplier); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, "well within the range awarded by courts in this Circuit"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587,

589-90 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement, a 6.96 multiplier); *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (awarding fee equal to a 4.7 multiplier).

In fact, fees representing multiples above a lodestar are often awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").

Lead Counsel's and Lowenstein's lodestar are based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience, and reputation. Lead Counsel's rates here range from $775 to $1,150 for partners, $725 to $850 for of counsel and $475 to $585 for associates. Gilden Decl. ¶ 41. The rates for staff attorneys and contract attorneys who focused on document review and assisted with deposition preparation, range from $495 to $585 for staff attorneys, and $385 to $475 for contract attorneys. *Id.* The rates for in-house investigators range from $450 to $535 and for paralegals from $270 to $335. *Id.* Further, Lowenstein's rates range from $860 to $1,290 for partners, $625 to $885 for of counsel, and $345 for paralegals. Gilden Decl., Ex. D, Etkin Decl. Ex. 1.

Here, Lead Counsel carefully staffed the Action from the beginning. The result of this staffing by Lead Counsel was that associates with lower hourly rates performed much of the day-

to-day work on the case, as opposed to partners who focused on the more strategic and more demanding higher-level matters. Additionally, the staff attorneys and contract attorneys assisting Lead Counsel on this matter were skilled attorneys who made meaningful, substantive contributions, beyond solely conducting document review, including assisting with the preparation of deposition and/or mediation materials. *Id.* ¶¶ 4, 27.

Moreover, the complex issues in PSG's Bankruptcy Proceedings required the expertise of seasoned, experienced bankruptcy attorneys, and for this reason was also appropriately staffed.

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

In sum, Lead Counsel's requested fee award is well within the range of what courts regularly award in comparable class actions, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### C. The Requested Fee Is Fair and Reasonable When Applying the Second Circuit's Factors

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Lead Counsel's requested fee is reasonable.

10

1. <u>The Time and Labor Expended</u>

The substantial time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Gilden Declaration, Lead Counsel, among other things:

- conducted a thorough investigation of the claims and potential claims against PSG and the other Defendants, with the assistance of an investigator and multiple experts;

- navigated the PSG bankruptcy proceeding and secured a settlement that provided Lead Counsel with more than 20 million pages of documents on which Lead Plaintiff relied in formulating the TAC's allegations;

- successfully opposed Defendants' motions to dismiss which required Lead Plaintiff to address and refute each of the arguments relating to falsity, materiality, and loss causation and damages;

- fully briefed multiple motions, including a motion for class certification and a motion to exclude Lead Plaintiff's expert;

- undertook a comprehensive approach to gathering information and documents from a number of third parties in addition to defending Lead Plaintiff, which resulted in the production of nearly 743,000 additional pages of documents;

- prepared for and defended the deposition of the Lead Plaintiff designee, as well as participated in the deposition of its investment manager, and the four confidential witnesses cited in the Third Amended Complaint, prepared for and defended Lead Plaintiff's class certification expert and deposed defendants' class certification expert, and participated in the depositions of a former PSG director and partner at Kohlberg, and PSG's former controller; and

- participated in two extensive mediation sessions, which process was preceded by the exchange of detailed written mediation statements by the Settling Parties, and negotiated and drafted settlement documents including a memorandum of understanding, the Stipulation, a motion for preliminary approval of the Settlement, and the Notices to be issued to potential Settlement Class Members.

Gilden Decl. ¶¶ 4, 6, 12-24, 27. As noted above and further detailed in the Gilden Declaration, Lead Counsel expended more than 12,267 hours prosecuting this Action with a lodestar value of $6,887,732.50. *Id.* ¶ 41. At all times, Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

As noted above and further detailed in the Etkin Declaration, Lowenstein expended more than 750 hours prosecuting this Action with a lodestar value of $765,839. Lowenstein had primary responsibility for identifying and addressing bankruptcy-related issues that might affect the rights, interests, and claims of Lead Plaintiff and the proposed class in the Bankruptcy Proceedings and in the Action. Gilden Decl., Ex. D, Etkin Decl. ¶ 3.

2.   The Magnitude and Complexity of the Action Support the Fee

The magnitude and complexity of the Action also support the requested fee. Courts have long recognized that even garden variety securities class action litigation is "notably difficult and notoriously uncertain." *In re FLAG Telecom*, 2010 WL 4537550, at *15 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). Prosecuting this Action required obtaining and analyzing tens of millions of pages of documents, the retention of experts, and taking and defending a number of depositions. Gilden Decl. ¶¶ 4, 16-17, 20-22, 27, 47. In addition, the Bankruptcy Proceedings added a layer of complexity not typically seen in securities fraud litigation. The complexity was also substantial following the bankruptcy stage and as the case entered formal discovery. *Id.*; *see also* Gilden Decl., Ex. D, Etkin Decl. ¶¶ 3-4. Moreover, the issues of materiality, falsity, loss causation, and damages were, and would continue to be, complex and contentious issues in this Action as is evidenced by the vast differences between the positions taken by the Settling Parties and their respective experts. Gilden Decl. ¶¶ 27-30, 46-47.

The magnitude and complexity of the legal issues are evidenced by the extensive filings already in the record, and particularly complicated because of the Bankruptcy Proceedings in Delaware and Canada. Gilden Decl. ¶¶ 4, 46-47; *see also generally* Ex. D, Etkin Decl.  The Settlement was achieved only after Lead Counsel investigated and drafted three detailed amended complaints; defeated Defendants' motions to dismiss (in substantial part); navigated PSG's Bankruptcy Proceedings; fully briefed multiple motions, including a motion for class certification

and a motion to exclude Lead Plaintiff's expert; and defended and took a number of depositions.

Gilden Decl. ¶¶ 4, 12-24, 46-47.

    3.  <u>Risks Assumed in Pursuing the Action</u>

Courts within the Second Circuit have long recognized that the risk associated with a case

undertaken on a contingency basis is an important factor in determining an appropriate fee award:

> Lead Counsel undertook this Action on a wholly contingent-fee
> basis, investing a substantial amount of time and money to prosecute
> the Action without a guarantee of compensation or even the
> recovery of expenses. Unlike counsel for Defendants, who is paid
> substantial hourly rates and reimbursed for their expenses on a
> regular basis, Lead Counsel has not been compensated for any time
> or expenses since this case began, and would have received no
> compensation or expenses had this case not been successful.

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132,  2014 WL 1883494, at *14 (S.D.N.Y.

May 9, 2014). The "contingent nature, risks and complexity" and specifically the "significant risk

that Class Plaintiffs and the Settlement Class may have recovered less or nothing" favor larger fee

percentages in class action cases. *In re JPMorgan*, No. 18-CV-10356, at *2. "Little about litigation

is risk-free, and class actions confront even more substantial risks than other forms of litigation."

*Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3

(S.D.N.Y. May 14, 2004); *City of Providence*, 2014 WL 1883494, at *14 (same); *In re Am. Bank

Note Holographics, Inc. Sec. Litig.*, 127 F. Supp.2d 418, 433 (S.D.N.Y. 2001) (concluding it is

"appropriate to take this [contingent fee] risk into account in determining the appropriate fee to

award"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997)

("Numerous courts have recognized that the attorney's contingent fee risk is an important factor

in determining the fee award."). This risk encompasses not only the risk of no payment, but also

the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992)

(reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. As the court in *Xcel Energy*, 364 F. Supp. 2d at 994, recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." Even plaintiffs who survive and succeed at procedural hurdles as contentious and as heavily litigated as motions to dismiss and a motion for class certification—even summary judgment or trial itself—may find their judgment overturned on appeal. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 964 F. Supp. 2d 1115 (N.D. Cal. 2013) (class certification granted in part, affirmed on appeal and rehearing *en banc*, then reversed by U.S. Supreme Court after a decade of litigation, then denied by district court upon resubmission).

Here, Lead Counsel pursued Lead Plaintiff's claims against Defendants in this complex litigation with no guarantee of ever being compensated for the investment of time and money that the case would require. In undertaking this responsibility, Lead Counsel dedicated substantial attorney and professional resources to the prosecution of the litigation and paid the considerable expenses which a case such as this entails. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. As set forth below, Lead Counsel received no compensation and, in total, incurred $854,857.83 in expenses in prosecuting this Action for the benefit of the Settlement Class. Lead Counsel also bore the risk that no recovery would be achieved. As discussed herein, this Action presented a number of risks

14

and uncertainties which could have prevented any recovery whatsoever. Despite the vigorous and competent efforts of Lead Counsel, success in contingent-fee litigation, such as this, is never assured.

Both the Settlement of $13,000,000 (plus interest) and the Bankruptcy Settlement of $1,150,000 provide the Settlement Class an immediate and substantial benefit and eliminate the significant risks of continued litigation under circumstances where a favorable outcome could not be assured. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-MDL-01695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007). Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See In re FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

4. The Quality of Representation Supports the Requested Fee

The quality of the representation here is evidenced most clearly by the result obtained. *See Goldberger*, 209 F.3d at 55; *In re Veeco Instruments*, 2007 WL 4115808, at *7; *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Lead Counsel specializes in complex securities litigation and has a successful track record in cases throughout the country. *See* Gilden Decl. ¶ 48; Gilden Decl. Ex. E (Cohen Milstein firm resume). The quality of Lead Counsel's efforts in the litigation to date, together with its substantial experience in securities class actions and its commitment to the litigation, provided Lead Counsel with the ability to negotiate the $13,000,000 Settlement and the $1,150,000 as part of the Bankruptcy Settlement. *See Tchrs.'*

15

*Ret. Sys. of La.*, 2004 WL 1087261, at \*6 (the skill and prior experience of counsel in the field is relevant to determining fair compensation). Additionally, Lead Plaintiff's bankruptcy counsel specializes in investor litigation in a bankruptcy context and high-stakes Chapter 11 issues. *See* Gilden Decl., Ex. D, Etkin Decl. Ex. 2.

Moreover, the quality of the opposition faced by Lead Counsel should also be taken into consideration in assessing the quality of counsel's performance.[4] Here, Defendants in this Action were represented by very skilled counsel who vigorously defended their clients. The Defendants were represented by highly respected firms, each of which has significant experience in defending complex litigation in general and securities litigation in particular: Baker & Hostetler LLP and Friedman Kaplan Seiler & Adelman LLP. In the face of this capable defense team, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that are favorable to the Class.

5. <u>Second Circuit Precedent Supports the 28% Fee as a Reasonable Percentage of the Total Recovery</u>

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech. Inc. Sec. Litig.*, 2010 WL 2653354 at \*3. As discussed in detail in Part I.A. above, the requested 28% fee is well within the range of percentage fees that courts in this District have awarded in comparable cases.

---

[4] *See, e.g.*, *In re Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *In re Veeco Instruments*, 2007 WL 4115808, at \*7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work.") (citation omitted).

6.   Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See In re FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *see also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted). This is particularly true here where Lead Counsel, along with Lead Plaintiff's bankruptcy counsel, had undertaken significant and risky work. Nevertheless, Lead Counsel has obtained a $13,000,000 all-cash Settlement Fund that will compensate investors who have purchased PSG common stock on a U.S. stock exchange between January 15, 2015 and October 28, 2016, inclusive, provided they also purchased at least one share of PSG stock from January 15, 2015 through March 14, 2016, inclusive, and a $1,150,000 all-cash Bankruptcy Settlement Fund that will compensate investors who have purchased PSG common stock on a U.S. stock exchange between January 15, 2015 and March 14, 2016, inclusive. This factor supports Lead Counsel's fee and expense application.

**D.  *The Approval of Lead Plaintiff, as Well as the Reaction of the Class to Date, Support the Requested Fee***

Lead Plaintiff was actively involved in the prosecution and settlement of this Action and fully supports the requested fee. *See* Gilden Decl., Ex. C, UANPF Decl. ¶¶ 6, 10-12 ("UANPF respectfully requests that the Court approve in full […] Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses"). Lead Plaintiff is the type of

sophisticated and financially interested institutional investor that Congress envisioned serving as a fiduciary for the Settlement Class when it enacted the PSLRA.[5] Thus, Lead Plaintiff's endorsement of the fee request supports its approval as fair and reasonable. *See, e.g.*, *In re Veeco Instruments*, 2007 WL 4115808, at *8 ("public policy considerations support the award in this case because the Lead Plaintiff …– a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

The reaction of the Settlement Class to date also supports the requested fee. As of today, the Claims Administrator has mailed or emailed 19,582 copies of the Notice and Proof of Claim Form to potential Settlement Class Members (Gilden Decl., Ex. B, SCS Decl. ¶ 8), which informed them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 28% of the Settlement Fund and the Bankruptcy Settlement Fund. Gilden Decl., Ex. B, SCS Decl. Ex. A ¶ 6. To date, no objection to this fee request has been received. Gilden Decl. ¶ 54.

## II.  Lead Counsel's Expenses Are Reasonable and Should Be Approved

Lead Counsel requests reimbursement of Litigation Expenses reasonably incurred on behalf of the Settlement Class that are properly recovered by counsel. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011)

---

[5] The PSLRA was intended to encourage institutional investors like Lead Plaintiff to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests.

(in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted). Lead Counsel incurred $854,857.83 in Litigation Expenses. The expenses for which Lead Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of expenses in an amount not to exceed $900,000. Gilden Decl., Ex. B., SCS Decl. Ex. A ¶ 6. To date, there has been no objection to the reimbursement request, and reimbursement should be approved. Gilden Decl. ¶ 60.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 28% of the Settlement Fund, 28% of the Bankruptcy Settlement Fund, and reimbursement of $854,857.83 in Litigation Expenses Lead Counsel reasonably and necessarily incurred to prosecute and resolve the Action.

Dated: October 14, 2022 (*refiled October 25, 2022*

Respectfully submitted,

 *Carol V. Gilden*
COHEN MILSTEIN SELLERS & TOLL PLLC
Carol V. Gilden
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369

Steven J. Toll (*pro hac vice*)
S. Douglas Bunch (SB-3028)
1100 New York Avenue, N.W. │ Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

*Attorneys for Lead Plaintiff United Association National Pension Fund and Lead Counsel for the Class*

O'DONOGHUE & O'DONOGHUE LLP
Louis P. Malone III
5301 Wisconsin Ave. N.W.
Suite 800
Washington, DC 20015
Tel.: (202) 362-0041
Fax: (202) 362-2640

*Additional Attorneys for Lead Plaintiff United Association National Pension Fund and Lead Counsel for the Class*